# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Andrew B. Bloomer, P.C.
To Call Writer Directly:
(312) 862-2482
andrew.bloomer@kirkland.com

300 North LaSalle
Chicago, Illinois  60654

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

July 14, 2014

The Honorable Jesse M. Furman
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

>   Re:   *In re: General Motors LLC Ignition Switch Litigation,*
>         14-MD-2543 (JMF); 14-MC-2543

Dear Judge Furman:

Counsel for defendants have conferred and submit this joint letter pursuant to Section IX.B of the Court's Order No. 1. General Motors LLC ("New GM"), Delphi Automotive Systems, LLC, Delphi Automotive PLC, Don McCue Chevrolet, Inc., Continental Automotive Systems, Inc., and AutoFair Chevrolet, LLC (the "Defendants")[1] provide this letter to assist the Court in its consideration of the matters set forth in Section IX of Order No. 1, and also to address certain points in the letters submitted by Temporary Lead Counsel ("TLC") (Case 1:14-md-02543-JMF, ECF Nos. 31 and 41), Pribanic & Pribanic (ECF No. 33-1), Podhurst Orseck (ECF No. 32), the Becnel firm (ECF No. 37), Wiggins Childs (ECF No. 38), and Wolf Haldenstein (ECF No. 40).

A.   **The Court Should Await A Ruling By The Bankruptcy Court On New GM's Motion To Enforce Before Appointing Lead And Liaison Counsel.**

As the Court knows, on April 21, 2014, General Motors LLC ("New GM") filed in the United States Bankruptcy Court for the Southern District of New York a Motion to Enforce that Court's July 5, 2009 Sale Order and Injunction (the "Motion to Enforce" or "Motion"). The Motion seeks to bar, in whole and/or in large part, the claims asserted against New GM by the vast majority, if not all, of the plaintiffs in MDL 2543. At present, there are 95 putative class and individual actions, filed by or on behalf of 351 plaintiffs, whose transfer to MDL 2543 has been finalized. Plaintiffs in 87 of these actions (representing 91.5% of all cases in this MDL), allege economic damage claims based on vehicles and parts manufactured by General Motors

---

[1]   Defendant DPH-DAS LLC, DPHDAS LLC, and DPH-DAS LLC (collectively, "Old Delphi"), as well as the Wilmington Trust Company, take no position on the matters in Section IX.B of the Court's Order No. 1.

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
July 14, 2014
Page 2

Corporation ("Old GM"), the entity that filed for Chapter 11 bankruptcy, and thus are the subject of GM's Motion to Transfer. Stated differently, and as several plaintiffs recognize, Judge Gerber's resolution of New GM's Motion will likely affect nearly every plaintiff in this MDL. (*See* Wolf Haldenstein letter (ECF No. 40) at 2 ("the most crucial" liability issues "are being heard by the Bankruptcy Court in the early fall after an expedited briefing schedule").)[2]

TLC acknowledge that they and other plaintiffs' counsel "are coordinating the response in bankruptcy court on pending issues." (ECF No. 31 at 5; ECF No. 41 at 3 n.9.) In that regard, in May 2014, the Bankruptcy Court entered a Scheduling Order agreed to and jointly submitted by New GM and various plaintiffs (including those represented by TLC), which established the process for adjudicating New GM's Motion to Enforce. (*See* 5/16/14 Sched. Order, Tab A hereto.) Under the Scheduling Order, no discovery is allowed with respect to New GM's Motion and related filings, including a class action adversary proceeding filed by the *Groman* plaintiffs, unless ordered by the Bankruptcy Court. (*Id.* at 2.)

Last Friday, the Bankruptcy Court entered a Supplemental Scheduling Order also agreed to and jointly submitted by New GM and plaintiffs represented by TLC and other plaintiffs' counsel. (*See* 7/11/14 Suppl. Sched. Order, Tab B hereto.) Under the Supplemental Scheduling Order, the parties shall exchange proposed factual stipulations by July 18, 2014, and then meet and confer in order to provide agreed-upon stipulations to the Bankruptcy Court by August 8, 2014; no discovery is permitted but any party may seek the Bankruptcy Court's authorization to conduct discovery and Judge Gerber will hold a hearing on any such requests on August 18; briefing on New GM's Motion is scheduled to be complete by September 30; and the Bankruptcy Court is scheduled to hold a hearing on the Motion on or after October 10. (*Id.* at 4-5.) At the July 2 hearing, Judge Gerber emphasized his "obligation to the system and to Judge Furman to keep this train moving on schedule and to try to reach an expeditious resolution here." (Case No. 09-50026 (REG), Adv. Pro. No. 14-01929 (REG), 7/2/14 Hr'g Tr. at 13:12-14; *see id*. at 57:25-58:2 ("So we're going to do as much as we can to keep things moving forward as quickly as possible consistent with getting the result that's just.").)

Currently, plaintiffs in 87 cases in this MDL, including plaintiffs represented by TLC and the other firms that have submitted letters to the Court, have voluntarily entered into and executed Stay Stipulations that stay "all proceedings" in their cases pending further order of the Bankruptcy Court, with the limited exception of transfer proceedings before the Judicial Panel on Multidistrict Litigation ("JPML") and, if this Court so chooses, the appointment of liaison counsel and steering/coordinating committees in the MDL. (*See* Tab A ¶ 5(a), at 5 (describing

---

[2] Eight actions in the MDL (seven alleging personal injuries) are not currently the subject of New GM's Motion.

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
July 14, 2014
Page 3

Stay Stipulation).)[3]  As it stands, nearly every plaintiff in this MDL has agreed to temporarily stay their actions, including any discovery, until the Bankruptcy Court ends or grants relief from the stay after September 1, 2014.  (*See* Wolf Haldenstein letter (ECF No. 40) at 2 ("all Plaintiffs have been temporarily stayed by the Bankruptcy Court (99% of them voluntarily) ….").)

In light of these facts, the Defendants respectfully submit that this Court should await the Bankruptcy Court's ruling on New GM's Motion to Enforce before appointing, or entering an order concerning, lead and liaison counsel in this MDL.  The Bankruptcy Court will decide whether the claims of the vast majority of plaintiffs in this litigation are subject to and barred by that Court's Sale Order and Injunction.  Judge Gerber's ruling on the Motion, in turn, will determine the scope of these MDL proceedings and the nature of the claims subject to coordinated pretrial proceedings, including discovery relating to those claims.

TLC contend that "this Court should proceed now to appoint counsel and commence common discovery, which primarily involves [New] GM's post-bankruptcy conduct, rather than awaiting a ruling by the Bankruptcy Court" (ECF No. 31 at 5), and that "merits discovery will be necessary to resolve threshold issues in the Bankruptcy Court, which should be conducted in this action [*i.e.,* the MDL] …."  (ECF No. 41.)  This position, however, directly conflicts with the Stay Stipulations entered into by TLC, their clients, and almost every other plaintiff in the MDL.  It also contravenes the Bankruptcy Court's May 16 Scheduling Order and July 11 Supplemental Scheduling Order, both of which were agreed to by TLC and other plaintiffs' counsel.

Equally important, TLC's request to start discovery based on New GM's alleged "conduct" overlooks that the Bankruptcy Court will necessarily decide in the context of interpreting its Sale Order and Injunction whether the "conduct" at issue in plaintiffs' actions is that of New GM or Old GM.  Whether claims exist against Old GM or New GM has been designated by the Bankruptcy Court as a threshold issue in the Supplemental Scheduling Order, and will be fully briefed by the end of September.  (*See* Tab B at 3.)  Defendants submit that discovery should not proceed before (i) the parties and this Court know what claims, if any, remain to be litigated after Judge Gerber's ruling on the Motion to Enforce, and (ii) there is a set of "comprehensive master pleadings," which TLC concede are necessary.  (ECF No. 31 at 3.)  Discovery in the MDL is premature at this point and creates conflicts with the ongoing proceedings in the Bankruptcy Court.  It would also create confusion, risk unnecessary or duplicative work, and increase costs to the parties and the judiciary in these matters.  Several plaintiffs in this MDL recognize that these and similar issues counsel against a headlong rush into discovery.  (*See* Wolf Haldenstein letter (ECF No. 40) at 2; Becnel letter (ECF No. 37) at 2.)

---

[3]  Under the Stay Stipulation, any party may, after September 1, 2014, request that the Bankruptcy Court modify or terminate the stay for cause shown.  (*See* 5/16/14 Sched. Order (ECF No. 12697) ¶ 5(b), at 6.)

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
July 14, 2014
Page 4

      TLC also argue that discovery should proceed now because of "what New GM recently acknowledged in the NHTSA consent decree is a safety issue and a matter of pressing concern, to literally millions of GM owners, regardless of the vintage of their vehicles, and to the travelling public at large." (*Id.* at 5.) NHTSA, however, has addressed this safety concern. (*See* 5/6/14 letter from Sec. of Transp. Anthony R. Foxx to Sen. Edward J. Markey, available at http://www.autonews.com/assets/PDF/CA9453057.PDF.) According to the Secretary of Transportation, NHTSA "thoroughly evaluated the interim guidance that GM has issued to all affected vehicle owners," and "NHTSA engineers examined the geometry and physics of the ignition key, switch, and steering column" of the recalled vehicles as well as "reviewed testing data, drawings, and specifications submitted by GM related to the vehicle key, ignition switch, and steering column …." (*Id.* at 1.) NHTSA concluded as follows:

> Based on the Agency's engineering expertise, our consideration of the nature of the ignition switch defect, and the testing conducted, NHTSA is satisfied that for now, until the permanent remedy [of the recall repair] is applied, the safety risk posed by the defect in affected vehicles is sufficiently mitigated by GM's recommended action.

(*Id.*; *see also Silvas v. General Motors LLC*, No. 2:14-cv-00089 (S.D. Tex.) (consolidated in MDL 2543), 4/17/14 Order (ECF No. 55) at 5 (denying plaintiffs' motion for an emergency preliminary injunction to require New GM to issue a "park it now" alert to owners of recalled vehicles; "NHTSA has proceeded substantially into the recall process with respect to the defective ignition switches in GM vehicles.").)

      New GM's recall is ongoing and replacement parts are being supplied to perform the necessary repairs. Although TLC contends that "[c]onsumer complaints regarding the pace and progress of the recalls is widespread" (ECF No. 31 at 3), they offer no supporting evidence and that has not been New GM's experience. Moreover, as New GM has made clear publicly from the start of the recall, any affected customer who is concerned about operating their vehicle may request courtesy transportation, at no expense, in the form of a rental or loaner vehicle until parts are available to repair the customer's vehicle. (*See* Ignition Recall Safety Info., Frequently Asked Questions, available at http://www.gmignitionupdate.com/faq.html#R5.) Immediate discovery is not warranted based on any alleged safety concern or consumer complaint.

      **B.**    **The Bankruptcy Court's Decision Will Materially Advance The Litigation And Aid The Court And Parties.**

      Defendants defer to the Court regarding the proper structure for lead and liaison counsel, but respectfully suggest that an appropriate structure ultimately will depend on the claims to be adjudicated in the MDL and the resulting shape and scope of these proceedings. The Bankruptcy

## KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
July 14, 2014
Page 5

Court's decision on New GM's Motion will clarify these issues. The overly complex structure proposed, for example, by TLC—involving three Lead Counsel, one Liaison Counsel, an Executive Committee of 10 additional counsel, various sub-committees to be appointed by Lead Counsel, as well as Federal/State Liaison Counsel (ECF No. 31 at 1-2)—may or may not be a proper structure for this litigation; it is simply too early to tell. With the assistance and planning of the parties, the Bankruptcy Court proceedings are occurring expeditiously and Judge Gerber has made clear that he intends to address the issues before him in a timely, efficient, and effective manner. For these reasons, Defendants submit that the Court and parties are best served by addressing the lead and liaison counsel structure with the benefit of the Bankruptcy Court's forthcoming resolution.

Finally, with respect to the proper method for appointing lead and liaison counsel, various plaintiffs' counsel have urged that any such process should be open and transparent, and Defendants believe those views are worthy of consideration. (*See, e.g.,* Podhurst Orseck letter (ECF No. 32); Becnel letter (ECF No. 37); Wiggins Childs letter (ECF No. 38); and Wolf Haldenstein letter (ECF No. 40).)[4] Defendants do not believe, however, that the Court should or needs to enter an appointment-related order at this time. In particular, TLC's proposed order, which purports to address the representation of both "consumer and non-consumer economic loss plaintiffs," as well as other uncommon issues, and concludes that "multiple representation does not create a conflict" (ECF No. 41-1 at 1 n.1), raises substantive legal issues that have not been briefed, are not proper for determination, and which underscore why it is premature to proceed with any appointment now. For the same reasons, the proposed order's attorney fee provision for purported "common benefit, class action-related work" (*id.* at 4-5) is unnecessary in light of this Court's Order No. 1. (*See* Order No. 1 § 9.C.)

                                                Respectfully submitted,

                                                Richard C. Godfrey, P.C.
                                                Andrew B. Bloomer, P.C.

                                                *Counsel for Defendant General Motors LLC*

---

[4] Both TLC's and Wolf Haldenstein's letters address *Andrews v. General Motors LLC*, No. 5:14-cv-1239 (C.D. Cal.), which the JPML transferred to this MDL on July 10, 2014. (*See* ECF No. 40 at 3; ECF No. 41 at 3.) Defendants submit that the claims in *Andrews* will involve discovery and other substantive issues and proceedings that substantially overlap with the various actions centralized before this Court, and thus *Andrews* properly belongs in this MDL.