UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To All Actions*
------------------------------------------------------------------------x

14-MD-2543 (JMF)
14-MC-2543 (JMF)

ORDER NO. 5

JESSE M. FURMAN, United States District Judge:

The Court issues this Order to adopt a structure for Plaintiffs' Lead and Liaison Counsel, to establish a procedure for selecting counsel for that structure, and to mandate record-keeping requirements for any attorney who may seek an award of attorneys' fees and reimbursement of costs in a class action. The Court thanks Temporary Lead Counsel for their efforts to confer with all plaintiffs' counsel and to formulate a near-consensus proposal, and thanks all counsel who submitted letters on the issues for their thoughtful submissions.

## I.     ADOPTION OF PLAINTIFFS' COUNSEL STRUCTURE

After due consideration of all those submissions (14-MD-2543, Docket Nos. 31, 32, 33 Ex. A, 37, 38, 40, 41, 57), the Court finds that it is appropriate to proceed with the adoption of a structure for lead and liaison plaintiffs' counsel, and to appoint counsel to those positions, at this time, notwithstanding, among other things, the ongoing litigation in the United States Bankruptcy Court for the Southern District of New York and the administrative claims process established by General Motors. Having Lead and Liaison Counsel in place sooner rather than later will facilitate the Court in deciding — among other things — whether, and to what extent, discovery and the litigation can and should proceed now as opposed to awaiting a ruling from the Bankruptcy Court or any other development. The Court may revisit or modify the structure and/or specific appointments in the event that a ruling by the Bankruptcy Court (or any other

1

development, including but not limited to any increase in the number of personal injury or wrongful death cases that form part of the multidistrict litigation ("MDL")) materially affects the present litigation.

The Court agrees with Temporary Lead Counsel that a centralized framework that avoids the disadvantages of an overly elaborate infrastructure, provides ample resources for vigorous prosecution, delivers strong and flexible leadership, and encourages counsel to avoid unnecessary duplication of efforts and to control fees and expenses is appropriate in this litigation. To those ends, the Court finds that a modified version of Temporary Lead Counsel's proposal is called for, and that plaintiffs' counsel should be structured as follows:

A. *Lead Counsel Committee*

The Court establishes a Lead Counsel Committee for all economic loss and injury/wrongful death cases, consisting of three (3) Co-Leads.[1] Lead Counsel will have the

---

[1] The Court notes that differences between consumer and non-consumer economic loss plaintiffs, differences in plaintiffs' vehicle models, differences in recalls, and differences in damages, as well as differences between when certain plaintiffs' acquired or leased their vehicles (pre- or post-GM bankruptcy) may require representation of both types of plaintiffs in the leadership, but multiple representation does not appear, at this time, to create a conflict. Courts have regularly permitted counsel to represent different types of claimants within a class or subclasses. *See, e.g.*, Order No. 2: Adoption of Organization Plan and Appointment of Counsel, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10ML02151 JVS, (C.D. Cal. May 14, 2010) (Docket No. 169); *In re Medtronic, Inc.*, Nos. 05-MDL-1726 (JMR/AJB), 07-CV-1546 (JMR/AJB), 2008 WL 3895933, at *3 (D. Minn. Aug. 15, 2008); *Moreno v. Autozone, Inc.*, 251 F.R.D. 417, 425 (N.D. Cal. 2008); *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 238 (S.D. W.Va. 2005); *see also Seijas v. Republic of Argentina*, 606 F.3d 53, 57 (2d Cir. 2010) (affirming ruling that, although class counsel also represented individual plaintiffs in non-class actions and "all of these plaintiffs [were] theoretically in competition with one another to recover on their judgments," that "the potential conflicts of interest would threaten the damages phase of the proceedings, not the liability phase," that it would "revisit the damages issue if necessary, recognizing its continuing obligation to do so"); *Sriram v. Pittore*, No. 92 Civ. 5244 (JSM), 1992 WL 367106, at *1 (S.D.N.Y. Nov. 24, 1992) ("[The] defendants' sole objection [to the motion for class certification] is an alleged conflict arising from the fact that counsel is also counsel for a class of plaintiffs suing some of the same

duties outlined in the MANUAL FOR COMPLEX LITIGATION (FOURTH) ("MCL Fourth") Section 10.221, which include formulating (in consultation with other counsel) and presenting positions on substantive and procedural issues during the litigation.

Co-Lead Counsel are charged with acting for all plaintiffs — either personally or by coordinating the efforts of others — in presenting written and oral arguments and suggestions to the Court, limiting the number of plaintiffs' counsel who appear at hearings, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, retaining experts, arranging for support services, and seeing that schedules are met.  Lead Counsel will also have the power to appoint sub-committees at their discretion focusing on substantive areas such as class certification, defect and economic experts, RICO, trial, discovery (including GM, suppliers, and third-party discovery), dealer and wholesaler claims, death/injury claims, bankruptcy, and any other issues that Lead Counsel deem necessary as the case progresses.

### B. *Executive Committee*

The Court establishes an Executive Committee consisting of ten (10) counsel, who will be responsible for assisting Co-Lead Counsel with consolidated pleadings and motion practice; document management and review; electronic discovery issues; discovery issues generally;

---

defendants in [a separate lawsuit].  [The] Defendants allege that since they do not have sufficient funds to pay judgments in both actions, counsel will have a conflict of interest.  Here, the benefits to the class of having the same counsel involved where the issues of fact overlap far outweigh any danger of prejudice to the class members from the alleged conflict." (citation omitted)).  There is no basis for reaching a different conclusion here at this time.  As in the Toyota litigation, "[t]here will be other, more appropriate opportunities to revisit the issue, such as the Court's consideration of the adequacy of counsel on motions for class certification." Order No. 2: Adoption of Organization Plan and Appointment of Counsel at Section III.A, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10ML02151 JVS, (C.D. Cal. May 14, 2010) (Docket No. 169).

depositions; liaison with government actions and proceedings; expert witnesses; damages; bankruptcy coordination; non-GM defendants; communication with class members and coordination with personal injury/wrongful death actions; trial; and other issues as needs arises.

### C. *Plaintiff Liaison Counsel*

The Court will appoint a single Plaintiff Liaison Counsel, who will have offices in New York and will be responsible for facilitating communications with the Court and counsel in this action, as well as with counsel and the Court in the Bankruptcy proceedings. Liaison counsel will also assist all counsel in complying with the rules and procedures of this Court.

### D. *Federal/State Liaison Counsel*

The Court will appoint a single Federal/State Liaison Counsel, who will be charged with communications between the Court and other counsel with similar actions pending in state courts, including convening meetings of counsel, advising parties of developments, and otherwise assisting in the coordination of federal/state activities, as recommended in Section 20.313 of the MCL Fourth.

## II.     METHOD AND SCHEDULE FOR APPOINTMENTS

The Court strenuously agrees that an open application process is appropriate. As the Court noted in Order No. 1, the appointment of Temporary Lead Counsel was not a precursor of future appointments, but simply a means to initiate the process. (14-MD-2543, Docket No. 19 at 7). All counsel, including Temporary Lead Counsel, should, and will, have an equal opportunity to apply for leadership positions.

Accordingly, any attorney who has filed an action in this litigation, including Temporary Lead Counsel, may apply for a Lead Counsel, Liaison Counsel, or Executive Committee position. All applicants for any position are required to file with the Court a submission not to

exceed five (5) pages (no attachments) detailing their qualifications and commitment to serve on or before **July 28, 2014**.  Applicants will have the opportunity, if requested, to address the Court briefly in person (five minutes or less) at the **August 11, 2014** Initial Conference.  Any applicant wishing to appear for that purpose **shall so indicate in his or her application** so the Court can plan the probable length of the hearing.  All applications should be filed in 14-MD-2543, but **not in 14-MC-2543**, and need not be "spread" to member cases.

No later than **August 1, 2014**, Temporary Lead Counsel may file a letter, not to exceed five pages, making recommendations (not nominations) (1) for the two Liaison Counsel positions; (2) for all ten (10) Executive Committee positions; and (3) more broadly, for the composition of the Executive Committee as a whole (*e.g.*, whether any particular kinds of cases, types of counsel, or specific interests should be represented on the Executive Committee).  That letter should also be filed in 14-MD-2543, but **not in 14-MC-2543**.

In reviewing applications, the Court will consider the following criteria, among others: (1) knowledge and experience in prosecuting complex litigation, including MDLs and class actions; (2) willingness and ability to commit to a time-consuming process; (3) willingness and ability to work cooperatively with others; (4) access to resources to prosecute the litigation in a timely manner; (5) the work counsel has done in identifying, investigating, or prosecuting potential claims in the action; (6) counsel's knowledge of applicable law; and (7) geographic diversity.  Applicants should address those criteria, and any other considerations that they believe qualify them for a leadership position, in their applications.

All applications will be considered by the Court at the **August 11, 2014** Initial Conference.  All appointments are the decision of the Court and will be made as promptly as practicable.

### III.     ATTORNEY'S FEES AND TIME RECORDS

Any plaintiffs' counsel who intend to apply for fees in a class action must maintain contemporaneous records that show the name of the attorney or para-professional, the time spent on each discrete activity, and the nature of the work performed, as provided in Section 14.213 of the MCL Fourth.  Counsel must report the foregoing information on a monthly basis to Lead Counsel for work in the class actions.  No common benefit, class action-related work will be considered for compensation unless the assignment has been authorized by Lead Counsel.  The ultimate determination of common benefit and/or class counsel fees will be made by the Court pursuant to further orders and the applicable Federal Rules.

SO ORDERED.

Dated: July 18, 2014
        New York, New York

_____
JESSE M. FURMAN
United States District Judge