UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To All Actions*
------------------------------------------------------------------------x

14-MD-2543 (JMF)
14-MC-2543 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

This multi-district litigation ("MDL"), familiarity with which is presumed, relates to defects in certain General Motors-brand vehicles and associated vehicle recalls. Before the Court is General Motors LLC's ("New GM") request for an order limiting the scope and duration of the upcoming deposition of Anton Valukas — the chairperson of the law firm Jenner & Block LLP ("Jenner"), which New GM hired to conduct an internal investigation into both the defects and the delays in recalling affected vehicles — on privilege grounds. For the reasons explained below, New GM's request is GRANTED in large part.

## BACKGROUND

The relevant factual background is described in detail in an Opinion and Order entered on January 15, 2015 (the "Privilege Opinion"), which also concerned privilege issues relating to the Valukas investigation, and need be stated only briefly here. *See In re General Motors LLC Ignition Switch Litig.*, — F. Supp. 3d —, No. 14-MD-2543 (JMF), 2015 WL 221057 (S.D.N.Y. Jan. 15, 2015) ("*Privilege Opinion*"). In February 2014, New GM announced the first of many recalls of vehicles based on a defect in the ignition switch. *See id.* at *1. Shortly thereafter, the Government announced a criminal investigation, and New GM retained Jenner "to investigate the circumstances that led up to the recall of the Cobalt and other cars due to the flawed ignition

1

switch." *Id.* (internal quotation marks omitted).  That investigation — which involved the collection and review of more than 41 million documents and interviews with more than 200 New GM current and former employees — culminated in a written report (the "Valukas Report" or the "Report"), which New GM provided to Congress and the Department of Justice, among others.  *See id.* at *1-2.  New GM has also made that Report available to Plaintiffs in this MDL, although it has disclaimed any intention to use the report offensively.  *See id.* at *2, 11.  Despite New GM's disclosure of the Report itself, it has refused to disclose the materials, such as interview notes and related memoranda, created in connection with the underlying investigation.  *See id.* at *2.

On October 15, 2014, Plaintiffs moved to compel New GM to produce those documents.  *See id.* at *2.  This Court denied that motion on January 15, 2015, finding, among other things, that (1) Jenner attorneys' communications with current and former employees were protected by the attorney-client privilege; (2) documents prepared by Jenner attorneys in connection with the investigation were protected by the attorney work product doctrine; and (3) New GM did not waive its privilege with respect to the underlying investigation by releasing the Valukas Report.  *See id.* at *1.  In April 2015, the Court entered Order No. 46, which governs "the depositions of a number of witnesses who are present or former employees or officers of [GM] . . . or their outside counsel."  (Order No. 46 (Docket No. 812) at 1).  That Order provides that, if Plaintiffs show a deponent certain "Outside Counsel Reports," including the Valukas Report, New GM "will not instruct the witness not to answer questions, on the basis of privilege, concerning (i) the text of the Outside Counsel Reports (or the disclosures in the text of another Outside Counsel Report or Rule 502(d) Document that is also shown to the witness); and/or (ii) the witness's personal knowledge regarding the accuracy of facts set forth in the text of Outside Counsel

Reports." (Order No. 46 at 4). Further, "[i]f an examiner shows a deponent portions of Outside Counsel Reports that reference, quote, or excerpt a portion of a privileged communication, New GM will not instruct the witness not to answer, on the basis of privilege, questions about the remainder of that disclosed communication." (*Id.*). Significantly, the Order provides that "nothing in [the] Order is intended to or should be construed to modify, supersede, or otherwise alter the Court's January 15, 2015 Order and Opinion." (*Id.* at 7).

## DISCUSSION

Plaintiffs now seek to depose Valukas. More specifically, they have indicated that they intend to ask Valukas about: "(1) the facts, evidence, conclusions, and recommendations discussed in the text of the Valukas Report and (2) the evidence considered by Mr. Valukas in forming the conclusions and recommendations contained in the Report." (Pls.' July 22, 2015 Ltr. (Docket No. 1200) ("Pls.' Ltr.") 3). New GM responds that questions about the documents and materials that Valukas considered, as well as those about the bases for his conclusions in the Report, call for the disclosure of privileged information. (New GM July 22, 2015 Ltr. (Docket No. 1201) ("New GM Ltr.") 2-4).[1] In arguing otherwise, Plaintiffs rely heavily on Order No. 46. They believe that questions about "the bases of [Valukas's] conclusions and the evidence he considered in reaching them" are fairly encompassed in the Order's authorization of questions about the "text" of the Report and about Valukas's "personal knowledge regarding the accuracy

---

[1] As an initial matter, Plaintiffs argue that the Court need not resolve the dispute at this time, on the ground that it is fully covered by Order No. 46. (*See* Pls.' Ltr. 1). But the parties' dispute is clearly presented, and there is no reason to wait until after a deposition in which Valukas will be instructed not to answer most or all questions. Indeed, as Lead Counsel themselves recognized (June 16, 2015 Tr. (Docket No. 1087) 32 (stating that "hopefully" the issue could be "ruled on" by the next status conference)), it is in the interests of the parties and the Court to address the dispute now.

of facts set forth" in the Report.  (Pls.' Ltr. 2, 4).  That interpretation of Order No. 46, however, is barred by the Court's Privilege Opinion.  (*See* Order No. 46, at 7 (stating that the Order does not "modify, supersede, or otherwise alter" the Privilege Opinion)).  New GM has already agreed to disclose "every New GM Document cited in the Report, including otherwise privileged documents."  *Privilege Opinion*, 2015 WL 221057, at *1.  Much of the additional factual information that Plaintiffs could want is therefore likely to come from witness interviews, which the Court has already held are privileged.  *See id.*

Further, to the extent that Plaintiffs intend to ask whether Valukas considered certain documents or facts in preparing the Report (*see* New GM Ltr. 3), those questions would invariably reveal Valukas's "mental impressions [and] personal beliefs," *Hickman v. Taylor*, 329 U.S. 495, 511 (U.S. 1947), and therefore run afoul of the work product doctrine, *see, e.g.*, *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1326 (8th Cir. 1986) ("[W]here, as here, the deponent is opposing counsel and has engaged in a selective process of compiling documents from among voluminous files in preparation for litigation, the mere acknowledgment of the existence of those documents would reveal counsel's mental impressions, which are protected as work product."); *McDaniel v. Freightliner Corp.*, No. 99-CV-4292 (RMB) (FM), 2000 WL 303293, at *4 (S.D.N.Y. Mar. 23, 2000) ("Many lower courts in this circuit and elsewhere have similarly concluded that discovery requests which seek to pry into counsel's selection of certain documents as particularly important or relevant violate the attorney work product doctrine in the absence of a showing of compelling need."); *cf. Kodak Graphic Commc'ns Canada Co. v. E.I. du Pont de Nemours & Co.*, No. 08-CV-6553 (MWP), 2012 WL 413994, at *5 (W.D.N.Y. Feb. 8, 2012) (recognizing that the Second Circuit has applied the work product doctrine to attorney compilations of documents and noting that "where the requesting party already has 'all relevant,

non-privileged evidence,' its demand that the opposing party disclose its attorney's selection and compilation of certain documents is often a thinly-veiled effort 'to ascertain how counsel intends to marshal the facts, documents and testimony in his possession, and to discover the inferences that counsel believes properly can be drawn from the evidence it has accumulated.'" (quoting *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 410 (S.D.N.Y. 2009)). Plaintiffs argue that the "thought processes, considerations, analyses [and] judgments that New GM agreed to disclose publicly through the Report are fair game." (Pls.' July 29, 2015 Ltr. (Docket No. 1220) ("Pls.' Response") 2 (internal quotation marks and citations omitted)). That may well be true, but Plaintiffs' proposed topics of inquiry go well beyond the judgments actually disclosed in the Report; instead, they pertain, at least in part, to Valukas's *undisclosed* reasoning in deciding what to include and not include in the Report.

Plaintiffs' contentions that they are entitled to such information because New GM "has held the Valukas Report out to the world as the definitive account of what happened at GM," are unavailing. (Pls.' Ltr. 4; *see also* Pls.' Response 1 ("The Valukas Report is not a private document that is only obtaining life and relevance because Plaintiffs are pursuing the deposition of its author. It is a significant public document, released with much fanfare, that New GM has set forth as a definitive account of what went wrong.")). Whether or not New GM has held the Valukas Report out to the world as a definitive account (something that New GM has disputed), it has repeatedly committed to not holding the Report out at all in these proceedings, and the Court will hold New GM to that commitment. (*See* New GM Ltr. 7; New GM's July 29, 2015 Ltr. (Docket No. 1221) ("New GM's Response") 2). Accordingly, the Report's contents will not be introduced as evidence unless Plaintiffs themselves choose to do so. New GM is not required to disclose privileged information simply because it would be helpful to Plaintiffs should they

5

decide to use the Report as evidence. *See Privilege Opinion*, 2015 WL 221057, at *12 (noting that "discovery was hardly intended to enable a learned profession to perform its functions on wits borrowed from the adversary" (quoting *Hickman*, 329 U.S. at 516)). Further, to the extent Plaintiffs argue that the public release of the Report waives New GM's attorney-client and work product protection with respect to undisclosed information related to the Valukas investigation, the Court has already rejected that argument in the Privilege Opinion. *See Privilege Opinion*, 2015 WL 221057, at *11.

New GM's commitment not to make offensive use of the Valukas Report also undermines Plaintiff's argument that they are entitled to ask about the bases for Valukas's conclusions because "multiple MDL deponents interviewed by Mr. Valukas have disputed his account of their interviews." (Pls.' Response 2; *see also* Pls.' Ltr. 4). As New GM points out, "[b]ecause New GM will not offer the Valukas Report as evidence or call Mr. Valukas to testify, any alleged discrepancy between the Valukas Report and any witness's testimony is irrelevant." (New GM's Response 2). Plaintiffs can call whatever witnesses they believe will help their case, and New GM will not be permitted to contradict those witnesses' testimony with the information contained in the Valukas Report. Accordingly, the Court agrees with New GM that Plaintiffs may not question Valukas about what documents and materials he considered in connection with preparation of the Valukas Report or about the bases for conclusions contained in the Report.[2]

---

[2] In light of the Court's conclusion, it need not reach New GM's arguments that the identified lines of questioning are also barred by Order No. 70, which provides, in relevant part, that "Plaintiffs do not have a 'right of access to ongoing government investigations or [an] entitlement] to the work of criminal and regulatory investigators.'" (*See* New GM Ltr. 3-4; Order No. 70 (Docket No. 1188) at 1).

New GM also requests that the Court limit any deposition of Valukas to two hours. (New GM's Ltr. 7). The Court declines to do so at this time, as it is unclear whether and to what extent Plaintiffs propose to question Valukas on other, non-privileged topics. The Court agrees with New GM, however, that it is in the interests of the parties and the Court to resolve any remaining disputes about the scope of the Valukas deposition in advance of the deposition, if possible. *Cf. Alliance Indus., Inc. v. Longyear Holding, Inc.*, No. 08-CV-490S, 2010 WL 4323071, at \*4 (W.D.N.Y. Mar. 19, 2010) (requiring the plaintiff to identify and establish the relevance of material sought in advance of a deposition of the defendant's president and chief executive officer). Accordingly, no later than **August 21, 2015**, the parties shall meet and confer with respect to whether Plaintiffs are still seeking to depose Valukas, and, if so, the scope and length of that deposition. Further, in order to facilitate that process, Plaintiffs shall, no later than noon on **August 18, 2015**, identify the general topics on which it currently intends to question Valukas.[3] If the parties cannot agree on the permissible scope of the deposition, they must raise such disagreement with the Court, in letter briefs not to exceed five pages, no later than noon on **August 25, 2015**.[4]

---

[3] Plaintiffs argue that they should not have to reveal the subject of the deposition in advance because doing so would reveal their litigation strategy to New GM and "force[] [them] to prepare for their depositions on New GM's Timetable." (*See* Pls.' Response 3; Pls.' Ltr. 1). But the mere disclosure of general topics will not give New GM a significant strategic advantage, let alone one that outweighs the interest in resolving the parties' disputes. Further, although Plaintiffs should strive to identify topics of interest prior to the required meet and confer, Plaintiffs' good faith failure to anticipate a certain line of inquiry in advance shall not "foreclose[] [Plaintiffs] from inquiring about late-identified topics." (Pls.' Response 3).

[4] New GM asks the Court to issue an Order providing that "Mr. Valukas'[s] answers to any deposition questions do not constitute offensive use of the Valukas Report, and do not waive the attorney-client privilege or work product protection." Order No. 46, however, already contains a provision to that effect, so an additional order is unnecessary. (*See* Order No. 46 at 5-6).

Finally, Plaintiffs submitted their initial letter in redacted form and an accompanying exhibit under seal because New GM has designated the information as "highly confidential." (Docket No. 1199). The mere fact that information is subject to a confidentiality agreement between litigants, however, is not a valid basis to overcome the presumption in favor of public access to judicial documents. *See, e.g.*, *Dandong v. Pinnacle Performance Ltd.*, No. 10-CV-8086 (JMF), 2012 WL 6217646, at *2 (S.D.N.Y. Dec. 3, 2012) ("The consent of the parties is not a valid basis to justify sealing, as the rights involved are the rights of the public." (internal quotation marks omitted)); *Vasquez v. City of N. Y.*, No. 10-CV-6277 (LBS), 2012 WL 4377774, at *3 (S.D.N.Y. Sept. 24, 2012) (similar). Accordingly, the parties shall meet and confer about the propriety of maintaining those documents under seal or in redacted form. If any party believes that the papers should remain under seal or be filed publicly in redacted form, it must submit a letter brief, not to exceed five pages and no later than **August 21, 2015**, addressing the propriety of doing so. *See, e.g.*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006) (discussing the presumption in favor of public access).

## CONCLUSION

For the reasons stated above, New GM's request for an order limiting the scope of any deposition of Valukas is GRANTED, but the Court defers decision on whether to limit the length of the deposition. The Clerk of Court is directed to terminate 1199.

SO ORDERED.

Dated: August 11, 2015
      New York, New York

JESSE M. FURMAN
United States District Judge

8