```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------x
IN RE:
                                                              14-MD-2543 (JMF)
GENERAL MOTORS LLC IGNITION SWITCH LITIGATION                 14-MC-2543 (JMF)

This Document Relates To:                                     OPINION AND ORDER
Fleck, et al. v. General Motors LLC, 14-CV-8176
---------------------------------------------------------------------------x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/18/2016

JESSE M. FURMAN, United States District Judge:

**[Regarding the Parties' Remaining Motions *in Limine*]**

The next bellwether trial in this multidistrict litigation ("MDL"), brought by Plaintiff Stephanie Cockram and familiarity with which is presumed, is scheduled to begin on September 12, 2016. (*See* Order No. 100, Docket No. 2836). The parties filed twelve motions *in limine*, three of which were previously decided. *See In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2016 WL 4077117, at *1 (S.D.N.Y. Aug. 1, 2016); *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 3996243, at *1 (S.D.N.Y. July 22, 2016). The Court here addresses the parties' remaining motions, to wit:

- New GM's Motion *in Limine* No. 25 (Docket No. 2961) — which seeks to preclude certain medical and law enforcement personnel who responded to Cockram's crash from offering lay opinions regarding airbag deployment, ignition switch rotation, or Cockram's use of a seatbelt;

- New GM's Motion *in Limine* No. 26 (Docket No. 2966) — which seeks to preclude Cockram's parents from testifying as to the position in which her father found her car's ignition switch immediately following her accident;

- New GM's Motion *in Limine* No. 27 (Docket No. 2975) — which seeks to preclude Cockram from introducing evidence or argument "regarding the availability of the recall repair parts, the availability of loaner vehicles, and the sufficiency or adequacy of the applicable recall notice";

- New GM's Motion *in Limine* No. 28 and Cockram's Motion *in Limine* No. 8 (Docket Nos. 2983 and 2987) — which pertain to evidence concerning the GM Ignition Switch

>     Compensation Claims Resolution Facility generally and Cockram's claim to the Resolution Facility specifically;
>
> - Cockram's Motion *in Limine* Nos. 3 and 5 (Docket Nos. 2962 and 2973)— which seek to preclude evidence of Cockram's tobacco and drug use;
>
> - Cockram's Motion *in Limine* No. 6 (Docket No. 2978) — which seeks to preclude certain of Cockram's employment records; and
>
> - Cockram's Motion *in Limine* No. 7 (Docket No. 2982) — which seeks to preclude certain of Cockram's school records.

For the reasons explained below, New GM's twenty-seventh and twenty-eighth motions *in limine*, and Cockram's third and sixth motions *in limine* are GRANTED; New GM's twenty-fifth and twenty-sixth motions *in limine*, and Cockram's fifth motion *in limine* are GRANTED in part and DENIED in part; Cockram's eighth motion *in limine* is DENIED; and Cockram's seventh motion *in limine* is GRANTED in part and DEFERRED to trial in part.

## DISCUSSION

District courts have discretion to determine evidentiary issues presented in motions *in limine* in advance of trial.  *See, e.g.*, *United States v. Dupree*, 706 F.3d 131, 135 (2d Cir. 2013); *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010).  Under Rule 402 of the Federal Rules of Evidence, "relevant" evidence is admissible unless prohibited by rule, statute, or constitutional provision.  *See* Fed. R. Evid. 402.  Pursuant to Rule 401, evidence is relevant if it "has any tendency to make a [consequential] fact more or less probable than it would be without the evidence."  Fed. R. Evid. 401(a).  Finally, to the extent relevant here, Rule 403 prevents the admission of otherwise relevant evidence whose "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  A district court's balancing under Rule 403 will not be overturned unless "there is a clear showing of abuse of

discretion or that the decision was arbitrary or irrational." *United States v. Bermudez*, 529 F.3d 158, 161-62 (2d Cir. 2008) (internal quotation marks omitted).

## A.  New GM's Motion *in Limine* No. 25

New GM's twenty-fifth motion *in limine* concerns the testimony of Lester Harrell, an Emergency Medical Technician ("EMT") and the first responder to Cockram's crash scene; James Cline, a Virginia State Trooper who also responded to Cockram's crash and wrote a report regarding his investigation of the scene; and Jonathan Clark, the Sergeant responsible for reviewing Cline's crash report. Each of those witnesses opined that he would have expected the airbags to have deployed in Cockram's accident. EMT Harrell testified that "from my point of view in the wrecks that I've run and the damage that I've seen to cars, I would have expected the airbags to been deployed." (Mem. Law Supp. New GM's Mot. *In Limine* No. 25 (Docket No. 2964) ("New GM's Twenty-Fifth Mem."), Ex. 2, at 47). Trooper Cline did not recall viewing the crash scene, but testified, after reviewing his report and pictures of the vehicles, that "generally from looking at this, I would say I would expect them to deploy, from the damage." (*Id.*, Ex. 3, at 82). And Sergeant Clark, reviewing the same report, testified that the "type of damage could have typically caused an air bag to deploy, yes" and that the crash seemed consistent with ignition switch rotation. (*Id.*, Ex. 4, at 66, 89). In its motion *in limine*, New GM seeks to exclude the portions of each witness's testimony that "constitute[] . . . improper lay opinions regarding whether plaintiff's airbag should have deployed or whether non-deployment was caused by ignition switch rotation." (*Id.* at 1). Additionally, New GM seeks to exclude testimony from Harrell it describes as "improper speculation about whether plaintiff may have unbuckled her seatbelt prior to the arrival of first responders on the accident scene." (*Id.*).

Rule 701 of the Federal Rules of Evidence provides that lay witnesses may offer opinions only if they are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." The first requirement "is the familiar requirement of first-hand knowledge or observation." Fed. R. Evid. 701 advisory committee's note to 1972 Proposed Rules. The purpose of the third requirement "is to prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702 and the pre-trial disclosure requirements set forth in . . . [Federal Rule of Civil Procedure] 26." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005). As a result, if the purported lay opinion "rests in any way upon scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701." *Id.* (quoting 4 *Weinstein's Federal Evidence* § 701.03[1]). Courts have, however, permitted lay witnesses to offer opinions based on particularized knowledge acquired in their professional experience. For example, lay witnesses may testify "that a substance appeared to be a narcotic, so long as a foundation of familiarity with the substance is established," but if "that witness were to describe how a narcotic was manufactured, or to describe the intricate workings of a narcotic distribution network, then the witness would have to qualify as an expert under Rule 702." Fed. R. Evid. 701 advisory committee's note to 2000 Amendments; *see also id.* (noting, as another example, that courts have allowed lay opinions regarding "the value or projected profits" of a business where they were based on "the particularized knowledge that the witness has by virtue of his or her position in the business," rather than "experience, training or specialized knowledge within the realm of an expert").

New GM is on firm ground in seeking to exclude the lay opinion testimony at issue here. To start, Sergeant Clark's opinions do not even meet Rule 701's first requirement; the closest he came to the accident was reviewing Officer Cline's report, and he thus lacks the requisite personal knowledge. *See* Fed. R. Evid. 701(a); *see, e.g.*, *Garcia*, 413 F.3d at 212-13 (holding that a law enforcement agent's lay opinion testimony is inadmissible where it relies on "information gathered in an investigation" by someone *other than* the witness, because the witness "is not presenting the jury with the unique insights of an eyewitness's personal perceptions"); *accord United States v. Mitchell*, — F. App'x —, No. 15-46-CR, 2016 WL 3409662, at *2-3 (2d Cir. June 21, 2016).  In addition, all three witnesses' opinions run afoul of the requirement in Rule 701(c).  Wisely, Cockram herself does not seem to contest the fact that "issues surrounding defective design of airbags are beyond the ken of the average layman." *Sanyal v. Toyota Motor N. Am., Inc.*, No. 1:14CV960 (JCC/TCB), 2015 WL 3650725, at *5 (E.D. Va. June 11, 2015) (internal quotation marks omitted); *see Caudill v. Toyota Motor Corp.*, No. CIV.A. 04-333-DLB, 2005 WL 3149311, at *2 (E.D. Ky. Nov. 23, 2005) ("[T]he deployment or non-deployment of air bags is not a matter within the common knowledge of lay persons.  To the contrary, Defendant's expert has opined that deployment is a function of several factors . . . ."); *Wood v. Toyota Motor Corp.*, 134 Md. App. 512, 517-18 (Md. App. Ct. 2000) (agreeing with the trial judge that "[a]ir bag technology is highly specialized," that "other jurisdictions have required an expert in air bag deployment and defect cases," and finding that "the issue of whether an air bag was defectively designed is well beyond the ken of the average layman").  And both Cockram and the three witnesses themselves "all concede that they cannot offer scientific or technical assessments."  (Pl.'s Response Opp'n New GM's Mot. *In Limine* No. 25 (Docket No. 3034) ("Pl.'s Twenty-Fifth Opp'n") 7).

Nevertheless, Cockram opposes New GM's motion, contending that the witnesses, two of whom have viewed "hundreds" of crash scenes, "are capable of applying their experiential knowledge to the facts presented to them in the course of their employment" and thus offer opinions related to the non-deployment of Cockram's airbags. (Pl.'s Twenty-Fifth Opp'n 5-6). But, as New GM rightly notes (Reply Supp. New GM's Mot. *In Limine* No. 25 (Docket No. 3088) 2-3), responding to and viewing crash scenes (or reports describing crash scenes) where airbags did or did not deploy is a far cry from determining whether airbags *should* have deployed, let alone *why* they did not. *Cf.* Fed. R. Evid. 701 advisory committee's note to 2000 Amendments (contrasting the permissible lay opinion that "a substance appeared to be a narcotic" with the impermissible lay opinion regarding "how a narcotic was manufactured"). That is, the witnesses' familiarity with crash scenes, however great, does not equip them (as they themselves concede) to offer opinions on the complex, technical, and multi-factored question of whether Cockram's airbags should have deployed, or the potentially even more complicated question of what caused their non-deployment; such questions plainly fall "within the realm of an expert." Fed. R. Evid. 701 advisory committee's note to 2000 Amendments; *see also Gauthreaux v. United States*, 694 F. Supp. 2d 460, 465 (E.D. Va. 2009) ("[I]n a products liability action, proof of causation must ordinarily be supported by expert testimony because of the complexity of the causation facts."). Notably, the parties themselves have conducted this litigation assuming as much: Each party in each bellwether trial has retained experts to opine on these exact topics. In fact, in connection with an earlier bellwether trial, counsel for Plaintiff even objected to New GM's "us[ing] a fact witness to backdoor what amounts to undisclosed expert testimony," noting that the parties had "retained accident reconstruction and airbag experts to opine on what caused airbag non-deployment here" and arguing that "any testimony

6

related to this issue is scientific and technical in nature." (Docket No. 2160, at 2). Accordingly, New GM's motion must be and is granted with respect to the lay opinions of Harrel, Cline, and Clark concerning airbag non-deployment.

By contrast, the Court is unpersuaded by New GM's objections to Harrel's seatbelt-related testimony. Harrel testified that, when he responded to the scene of Cockram's accident, he did not observe "any chest deformities," leading him to conclude "that more likely [Cockram's] chest never hit the steering wheel." (Pl.'s Twenty-Fifth Opp'n, Ex. 1, at 44). Additionally, when asked if Cockram "was in a state where she could have unbelted her seat belt" when he arrived at the scene, Harrel answered: "Maybe. It's hard to say. I'm not there right away. . . . I've run some [accidents] where they're unresponsive and the seat belt was removed. So initially after the impact she could have, but she may not have been wearing it. I can't make that decision. I can't make that call." (*Id.* at 45). Contrary to New GM's assertions (New GM's Twenty-Fifth Mem. 8-9), that testimony is based on Harrel's personal knowledge (derived from his observations of the crash scene and his prior experiences), and is not improperly speculative. Notably, Harrel did not speculate that Cockram *was* wearing her seatbelt; instead, conceding the limits of his knowledge, he merely testified (in effect) that, based on what he observed at the scene and his experiences in prior cases, he could not rule out the possibility that she was wearing her seatbelt. Although less than definitive, that testimony could be helpful to the jury in evaluating whether Cockram was wearing her seatbelt at the time of the accident. And given that Harrel himself made clear that he could not say one way or another whether Cockram actually was wearing her seatbelt, there is little or no danger of unfair prejudice to New GM. Accordingly, New GM's motion is denied with respect to Harrell's seatbelt-related testimony.

**B.  New GM's Motion *In Limine* No. 26**

New GM's Motion *in Limine* No. 26 seeks to preclude Cockram from calling her parents, Mary and Danny Cockram, to testify regarding the position of her ignition switch immediately after the accident.  (Mem. Law Supp. New GM's Mot. *In Limine* No. 26 (Docket No. 2968) ("New GM's Twenty-Sixth Mem.")).  With respect to Mrs. Cockram, New GM's motion is unopposed, as "Plaintiff does not intend to introduce testimony from her mother regarding the position of the key."  (Pl.'s Mem. Opp'n New GM's Mot. *In Limine* No. 26 (Docket No. 3035) 1).  With respect to Mr. Cockram, however, New GM's motion borders on frivolous.  When asked if he had told his wife that the ignition switch was in the "crank" position after the accident, Mr. Cockram answered: "I told her it was in between there, because I didn't see no lights or nothing.  I really didn't look, but I didn't see nothing."  New GM's Twenty-Sixth Mem., Ex. 1 ("D. Cockram Dep. Tr."), at 41).  Citing Rule 602 of the Federal Rules of Evidence, New GM argues that Mr. Cockram lacks personal knowledge of the position of the ignition switch.   (New GM's Twenty-Sixth Mem. 4-5); Reply Supp. New GM's Mot. *In Limine* No. 26 (Docket No. 3083) 2-3).  Citing Rule 403, New GM also contends that Mr. Cockram's deposition testimony "reflects a fundamental misunderstanding of the positions [of the ignition switch]" and is thus "inherently contradictory and hopelessly confusing."  (New GM's Twenty-Sixth Mem. at 5).  But Mr. Cockram spent approximately seven minutes trying to remove the key from the ignition switch immediately after the accident (*see* D. Cockram Dep. Tr. 44), so he is plainly competent to testify as to its position.  Any inconsistencies in his testimony or confusion about the positions of the ignition switch go to weight, not admissibility.  *Cf. SCS Commc'n, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 344 (2d Cir. 2004) (holding that arguments regarding the reliability or meaning of evidence "go to the weight to be given to [the evidence]

8

by the jury, not to [its] admissibility" (alteration in original)).  Accordingly, New GM's Motion *in Limine* No. 26 is granted in part and denied in part.

### C.  New GM's Motion *In Limine* No. 27

New GM's Motion *in Limine* No. 27 seeks to preclude Cockram rom introducing evidence or argument "regarding the availability of the recall repair parts, the availability of loaner vehicles, and the sufficiency or adequacy of the applicable recall notice."  (Mem. Law Supp. New GM's Mot. *In Limine* No. 27 (Docket No. 2977) 1).  In response, Cockram indicates that she "does not intend to offer" such evidence at trial.  (Pl.'s Response New GM's Mot. *In Limine* No. 27 (Docket No. 3036) 1).  Thus, New GM's Motion *in Limine* No. 27 is granted as unopposed.

### D.  New GM's Motion *in Limine* No. 28 and Cockram's Motion *in Limine* No. 8

New GM's twenty-eighth motion *in limine* and Cockram's eighth motion *in limine* both concern the GM Ignition Switch Compensation Claims Resolution Facility, a voluntary settlement program run by Kenneth Feinberg (the "Feinberg Program" or "Program").  (*See* Mem. Law Supp. New GM's Mot. *In Limine* No. 28 (Docket No. 2985) ("New GM's Twenty-Eighth Mem."); Pl.'s Mem. Law Supp. Mot. *In Limine* No. 8 (Docket No. 2988) ("Pl.'s Eighth Mem.")).  New GM argues that it should be permitted to introduce evidence of the Feinberg Program generally in the event that Cockram is permitted to seek punitive damages (and in light of the Court's recent ruling on New GM's motion for partial summary judgment, Cockram *is* so permitted, *see In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2016 WL 4367959 (S.D.N.Y. Aug. 15, 2016)), but seeks to preclude Cockram from offering evidence concerning her own claim and communications with the Program.  (*See* New GM's Opp'n Pl.'s Mot. *In Limine* No. 8 (Docket No. 3047) ("New GM's Eighth Opp'n") 1-3).  Cockram contends that *all* evidence concerning the Feinberg Program (including evidence concerning her own

9

claim and communications) should be excluded. (*See* Pl.'s Eighth Mem. 5-7). In the alternative, Cockram contends that, if New GM is allowed to offer evidence of the Program generally, she should be permitted to introduce evidence concerning her own claim and communications with the Program, including the fact that the Program gave her a settlement offer. (*See* Pl.'s Eighth Mem. at 1, 6 & n.3). The Court agrees with New GM.

First, in light of the Court's ruling that Cockram may seek punitive damages, the Court agrees with New GM that evidence concerning the Feinberg Program is admissible. (*See* New GM's Eighth Opp'n 1-3). Under Virginia law, "[t]here is no rigid standard for measuring punitive damages; the amount of such an award is largely a matter within the discretion of the fact finder." *Hamilton Dev. Co. v. Broad Rock Club, Inc.*, 445 S.E.2d 140, 144 (Va. 1994); *accord Baldwin v. McConnell*, 643 S.E.2d 703, 707 (Va. 2007). Furthermore, courts have held that post-accident conduct may be considered. *See, e.g.*, *Norris v. Doe*, No. L97-1659, 1998 WL 34175675 (Va Cir. Ct. Sept. 16, 1998). Given those parameters, and the likelihood that Cockram will ask the jury to award punitive damages to punish New GM for putting millions of drivers at risk, the Court concludes that New GM should be entitled to show that it attempted to make amends after the recalls were announced by voluntarily establishing a settlement program with lower burdens of proof than the judicial system and paying out close to $600 million as part of that program. Such evidence is particularly probative with respect to the amount of punitive damages to award (if they are awarded), as the jury could conclude that there is less need for punishment and deterrence. *See Hamilton Dev. Co.*, 445 S.E.2d at 143 (commenting that the purpose of punitive damages "is not so much to compensate the plaintiff but to punish the wrongdoer and warn others" and "may be recovered only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of

10

others" (internal quotation marks omitted)). Allowing New GM to introduce evidence of the Feinberg Program would also have the salutary effect of providing an incentive for a company facing a crisis like the ignition switch scandal to do what New GM did — attempt to get ahead of the problem by setting up a system to swiftly and efficiently settle cases extra-judicially.

That said, Cockram is undoubtedly correct in arguing that allowing evidence concerning the Feinberg Program would risk causing prejudice to her. (*See* Pl.'s Eighth Mem. 5-7; Pl.'s Mem. Law Opp'n New GM's Mot. *In Limine* No. 28 (Docket No. 3038) ("Pl.'s Twenty-Eighth Opp'n") 2-3).[1] Given the substantial probative value of the evidence, however, the answer to those concerns is not categorical exclusion pursuant to Rule 403 of the Federal Rules of Evidence. *See* Fed. R. Evid. 403 (stating that relevant evidence may be excluded "if its probative value is *substantially outweighed* by a danger of . . . unfair prejudice" (emphasis added)). Nor is the answer to allow Cockram to introduce evidence of her own claim and communications with the Feinberg Program (let alone its settlement offer to her), evidence that would plainly run afoul of Rule 408's prohibition on introduction of settlement evidence to prove the validity of a claim. Fed. R. Evid. 408; *see generally In re Gen. Motors LLC Ignition Switch Litig.*, 14-MD-2543 (JMF), 2015 WL 7769524, at *3 (S.D.N.Y. Nov. 30, 2015) (noting that settlement evidence can be relevant and admissible for purposes other than proving the validity of the claim). Instead, the answer is to employ protective measures, including appropriate limiting instructions to the jury (perhaps telling the jury that the law of evidence precludes evidence of settlement discussions between the parties by way of explaining why the jury should not speculate one way or another

---

[1]   Cockram initially raised a hearsay objection to the evidence as well, but she appears to have withdrawn that argument for now. (*See* Pl.'s Eighth Mem. 7; Pl.'s Reply Mem. Law Supp. Mot. *In Limine* No. 8 (Docket No. 3089) 3). Cockram may make specific hearsay objections to individual exhibits at the appropriate time.

about whether Cockram submitted a claim, let alone what the Program's response might have been) and, possibly, bifurcation of the punitive damages phase of the trial.  *See* Fed. R. Civ. P. 42(b) (providing for bifurcation to avoid prejudice); *Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 283 (2d Cir. 1990) (noting that the preference among courts in the Second Circuit "has been to favor bifurcation of the amount of punitive damages," but that the mode of trial is left "ultimately to the discretion of the district judge").

The Court will not decide now what protective measure or measures should be employed to address evidence concerning the Feinberg Program as those issues have not been fully briefed.[2]  Instead, the parties are directed to meet and confer with respect to appropriate remedies and, if necessary, submit simultaneous letter briefs — **no later than August 29, 2016**, and not to exceed five pages — on the issue of remedies, including the issue of bifurcation.

### E.  Cockram's Motions *in Limine* Nos. 3 and 5

Cockram's third and fifth motions *in limine* seek to exclude evidence of (1) her history of marijuana and tobacco use and (2) her employment-related drug test results, termination, and rehabilitation.  (*See* Pl.'s Mem. Law Supp. Mot. *In Limine* No. 3 (Docket No. 2963) 1; Pl.'s Mem. Law Supp. Mot. *In Limine* No. 5 (Docket No. 2974) 1).  In opposing the motions, New GM concedes that evidence of tobacco and drug use is irrelevant to the cause of the accident, but contends that such evidence is relevant to questions of damages — namely, Cockram's life expectancy and her post-accident physical and mental symptoms.  (*See* General Motors LLC's Combined Mem. Law Opp'n Pl.'s Mots. *In Limine* (Docket No. 3043) ("New GM's Third & Fifth Opp'n") 1-2).  The Court agrees with New GM that Cockram's tobacco use is relevant and

---

[2]  In light of that, New GM's request to file a sur-reply brief with respect to Cockram's eighth motion addressing the issue of bifurcation is denied as premature.  (*See* Docket No. 3131).

admissible for those purposes, but agrees with Cockram that evidence of her drug use would be minimally probative, at best, and substantially prejudicial.

Cockram appears to concede that evidence of her tobacco use is relevant to her life expectancy, and accordingly to her claims for future medical expenses, but argues that the evidence is only relevant on cross-examination or in rebuttal. (*See* Pl.'s Reply Mem. Supp. Mot. *In Limine* Nos 3 & 5 (Docket No. 3090) ("Pl.'s Third & Fifth Reply") 4-5). Cockram also argues that New GM may only admit the life expectancy evidence if supported by expert testimony. (*See id.* at 5). Both of these arguments are premature. If and when New GM seeks to introduce evidence of Cockram's tobacco use at trial, Cockram may make appropriate objections. New GM, for its part, agrees not to argue that Cockram's tobacco use during pregnancy is relevant to her character, unless Cockram somehow opens the door by testifying about her qualities as a parent. (*See* New GM's Third & Fifth Opp'n 1 n.1). Finally, Cockram objects to New GM's suggestion that her tobacco use is relevant to her post-accident injuries, and any difficulties she may have had in healing. (*See* Pl.'s Third & Fifth Reply 1-2). New GM, however, proffers evidence that smoking can be relevant to a variety of post-surgery complications, not just "non-union" or infection, and could therefore be at least minimally probative as to Cockram's post-accident symptoms. (*See* New GM's Third & Fifth Opp'n 6-7). Cockram provides no reasons why evidence of her tobacco use generally would be prejudicial, let alone so prejudicial as to substantially outweigh any probative value. *See* Fed. R. Evid. 403. Accordingly, while New GM may not introduce evidence of Cockram's smoking during pregnancy unless Cockram puts it in issue, New GM may introduce evidence of Cockram's tobacco use as relevant to the question of damages, subject to Cockram's objections at trial.

By contrast, New GM may not offer evidence of Cockram's drug use. Significantly, New GM does not contest Cockram's assertion that her drug use has been minimal and infrequent. (*See* Pl.'s Third & Fifth Reply 1). New GM argues that her drug use is nonetheless relevant as the potential reason that Cockram fell in the shower and hurt her hip shortly after the accident, and as a factor in her alleged memory loss and mental anguish following the accident. (*See* New GM's Third & Fifth Opp'n 8-10). Cockram's fall in the shower, and her temporary termination from work, may well be relevant to her damages claims, but there is no reason why those facts could not be introduced to the jury without reference to her alleged drug use. (*See* Pl.'s Third & Fifth Reply 2 n.1). Moreover, New GM offers no evidence that two isolated incidents of drug use (only one of which involved marijuana) could have a lasting effect on Cockram's mental health. (*See* Pl.'s Third & Fifth Reply 2-4; New GM's Third & Fifth Opp'n 8-10). Thus, evidence of Cockram's drug use has little or no probative value. On the other hand, such evidence could prove to be highly prejudicial. *See, e.g.*, *Nibbs v. Goulart*, 822 F. Supp. 2d 339, 345-46 (S.D.N.Y. 2011) (finding "that a significant risk of prejudice accompanies the introduction of evidence related to or the discussion of [the plaintiff's] marijuana use"). Accordingly, evidence of Cockram's drug use does not satisfy the Rule 403 balancing test, and must be excluded. Cockram's third motion *in limine* (concerning her drug use) is therefore granted, while her fifth motion *in limine* (concerning her tobacco use) is granted in part and denied in part, subject to Cockram's objections at trial.

## F. Cockram's Motion *in Limine* No. 6

Cockram's sixth motion *in limine* concerns some of her employment records. First, Cockram seeks to exclude employment records suggesting that she was "sleepy" at work due to her use of prescribed anti-anxiety medication, namely clonazepam. (Pl.'s Mem. Law Supp. Mot.

*In Limine* No. 6 (Docket No. 2979) ("Pl.'s Sixth Mem.") 1, 5-7). In response, New GM effectively concedes that these records are admissible only "[t]o the extent evidence of plaintiff's pre-incident alcohol and clonazepam use are admissible." (New GM's Mem. Law Opp'n Pl.'s Mot. *In Limine* No. 6 (Docket No. 3041) ("New GM's Sixth Opp'n") 1 n.4). Given the Court's earlier ruling barring New GM from offering "any evidence or argument suggesting that Plaintiff was impaired by clonazepam at the time of her crash," *In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 4077117, at *4, it follows that her clonazepam-related employment records are inadmissible. Second, Cockram seeks to exclude employment records relating to her pre-accident work absences. (Pl.'s Sixth Mem. 3-5). New GM responds that it intends to use such materials only as potential rebuttal evidence. Specifically, New GM argues that "even though plaintiff is not claiming monetary damages for lost future wages, she may still testify regarding the impact of the accident or related pain on her ability to work." (New GM's Sixth Opp'n 6). The Court is hard pressed, however, to imagine any testimony or evidence that would make the fact that Cockram occasionally missed work before the accident relevant, let alone sufficiently probative to justify the waste of time and potential confusion that exploring the issue would entail. Accordingly, Cockram's sixth motion *in limine* is granted, subject to the right of New GM to seek reconsideration of the Court's ruling with respect to Cockram's pre-accident absences in the unlikely event that Cockram somehow opens the door to such evidence.

**G. Cockram's Motion *in Limine* No. 7**

Finally, in her seventh motion *in limine*, Cockram seeks to exclude "evidence or argument regarding her school records or learning disabilities." (Pl.'s Mem. Supp. Mot. *In Limine* No. 7 (Docket No. 2984) ("Pl.'s Seventh Mem.") 1). The school records at issue are:

15

- Cockram's community college transcripts from 2002, 2004, 2005, and 2006, reflecting poor academic performance (*see id.*, Ex. A);

- her community college's 2002 notification of disability status and accommodation, which provided Cockram with extended time on tests because she was "a person with a disability" (*see id.*, Ex. B);

- a 2002 vocational report from the Virginia Department of Rehabilitative Services discussing Cockram's "low academic skill levels" and "low numerical aptitude" (*see id.*, Ex. C); and

- school records from 1992 evaluating Cockram when she was in third grade, including a social worker's report describing her visit to Cockram's home (*see id.*, Ex. D).

Although Cockram has abandoned any claim for future lost earnings, New GM argues that these records are relevant "to medical causation and her other damages claims." (New GM's Mem. Law Opp'n Pl.'s Mot. *In Limine* No. 7 (Docket No. 3039) ("New GM's Seventh Opp'n") 1). Specifically, New GM argues that it may offer such evidence to "show that (1) plaintiff had pre-existing cognitive impairments, including memory loss; (2) plaintiff had a pre-existing risk of seizures; and (3) her reported frustration and anguish related to her educational pursuits is due to her poor academic record, not the accident." (*Id.*).

In light of Cockram's representations, New GM's arguments are without merit as to two categories of the records at issue. To begin with, there is hardly anything in the present record suggesting Cockram is pursuing damages for "frustration" of her "educational pursuits." (New GM's Seventh Opp'n 1). New GM's apparent suspicions rest entirely on a single, ambiguous sentence in the report of Cockram's lifecare planner, which states that Cockram "is frustrated and depressed over her ongoing health issues, and the threat to her work capacity *as well as her pursuits in education*, reporting that she had planned to become a registered nurse, but does not feel that is a possibility given the *physical* demands of that profession." (New GM's Seventh Opp'n, Ex. 3, at 27 (emphases added)). In her reply, however, Cockram confirms unequivocally

16

that she "is not raising any claim for damages based on frustration of her educational pursuits." (Pl.'s Reply Supp. Mot. *In Limine* No. 7 (Docket No. 3092) 5). It goes without saying that New GM may not introduce evidence to refute a claim that Plaintiff is not, in fact, making. As the probative value of the 2002 vocational report and Cockram's community college transcripts (which make no reference to Cockram's memory or any learning disabilities) is largely limited to that purpose, Cockram's motion is granted with respect to those records.

New GM has a stronger argument when it comes to Cockram's 2002 disability status notification and her third-grade school records, as Cockram appears to be claiming that the accident caused memory problems and a November 2013 seizure. (*See, e.g.*, New GM's Seventh Opp'n., Ex. 1, at 64 ("[M]y memory, since the accident, and especially since the seizure, has been awful. I can't remember things like I used to."); *id.*, at 137 ("Q. [A]re you claiming any emotional or mental injuries in the case? A. Yes. Because ever since the accident, my memory is not good at all."); *id.*, Ex. 2, at 20 ("Q. Do you have any understanding whether . . . your daughter is claiming the seizures that she is suffering from now are a result of the motor vehicle accident? THE WITNESS: As far as I know she is . . . ."); *id.*, Ex. 5, at 127 (testimony of Cockram's lifecare planner that her injuries had "consequences that are basically behavioral, affective, and cognitive in nature.")). There is certainly some basis to believe that the records, which reference memory loss and dyslexia, are probative of those claims. To the extent they are, New GM would be entitled to offer them to show that her poor memory and her seizure had causes unrelated to her accident. *See In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 7455569, at *2 (Nov. 23, 2015) ("New GM . . . is entitled to offer evidence of Plaintiff's prior injuries with respect to . . . loss of enjoyment as they are plainly relevant . . . . [I]f Plaintiff

17

introduces evidence that his shoulder was injured as a result of the crash, New GM may introduce evidence of his prior shoulder injury or injuries on the issue of causation.").

But New GM falls short — at least on the present record — when it comes to sufficiently connecting the records to the issues in dispute. With respect to Cockram's third-grade records, for example, New GM does not proffer any testimony — expert or otherwise — to lay a foundation for what was meant in 1992 by "some short term memory delay" or a "significant weakness in short term verbal memory." (Pl.'s Seventh Mem., Ex. D, at 4). Nor does New GM proffer expert testimony to support a link between those conditions in an eight-year-old child and the conditions Cockram allegedly experienced after the June 28, 2011 accident. With respect to the disability status report, on the other hand, New GM appears to rely exclusively on testimony from Cockram's treating neurologist to the effect that "'severe cognitive impairment or intellectual disability'" is "'a possible seizure risk factor.'" (New GM's Seventh Opp'n 3, 5-6 (quoting *id.*, Ex. 4, at 54)). But the neurologist did not opine that Cockram's learning disabilities, if any, rose to that level, let alone confirm that the 2002 records revealed conditions that put Cockram at risk for seizures. If New GM is able to lay a proper foundation at trial (either through the cross-examination of Cockram's witnesses or otherwise) and there is marginal probative value to the records themselves, Cockram's 2002 disability status notification and her third-grade school records may well be admissible. But the Court is not in a position to make that determination on the present record. Accordingly, to the extent that Cockram seeks to preclude those records, the Court reserves judgment.[3]

---

[3] That said, the records are certainly not admissible absent redactions, as they include some inadmissible hearsay and portions of the records are plainly irrelevant, prejudicial, or both. The parties shall meet and confer in an effort to agree upon appropriate redactions and shall raise any disagreements at least forty-eight hours before the records would be offered at trial.

## CONCLUSION

For the foregoing reasons, New GM's twenty-seventh and twenty-eighth motions *in limine* and Cockram's third and sixth motions *in limine* are granted; New GM's twenty-fifth and twenty-sixth motions *in limine* and Cockram's fifth motion *in limine* are granted in part and denied in part; Cockram's seventh motion *in limine* is granted in part and deferred in part; and Cockram's eighth motion *in limine* is denied.  More specifically, the Court holds as follows:

- New GM's twenty-fifth motion *in limine* is granted with respect to the lay opinions of Harrel, Cline, and Clark concerning airbag non-deployment, but denied with respect to Harrell's seatbelt-related testimony;

- New GM's twenty-sixth *in limine* is granted as unopposed with respect to Mrs. Cockram, but denied with respect to Mr. Cockram, who may offer testimony regarding the position of the ignition switch;

- New GM's twenty-seventh motion *in limine* is granted as unopposed;

- New GM's twenty-eighth motion *in limine* is granted and Cockram's eighth motion *in limine* is denied.  More specifically, New GM may introduce evidence of the Feinberg Program, but Cockram may not introduce evidence regarding her particular claim or settlement offer.  In addition, the parties are directed to meet and confer and, if necessary, submit simultaneous letter briefs — **no later than August 29, 2016**, and not to exceed five pages — on the issue of appropriate remedies, including the issue of bifurcation;

- Cockram's third motion *in limine* (concerning her drug use) is granted, while her fifth motion *in limine* (concerning her tobacco use) is granted in part and denied in part, subject to Cockram's objections at trial;

- Cockram's sixth motion *in limine* is granted, subject to the right of New GM to seek reconsideration of the Court's ruling with respect to Cockram's pre-accident absences in the unlikely event that Cockram somehow opens the door to such evidence; and

- Cockram's seventh motion *in limine* is granted to the extent that she seeks to preclude admission of her college transcripts and 2002 vocational report, and otherwise deferred to trial.

    The Clerk of Court is directed to terminate 14-MD-2543, Docket Nos. 2961, 2962, 2966, 2973, 2975, 2978, 2982, 2983, and 2987; and 14-CV-8176, Docket Nos. 424, 425, 429, 434, 436, 439, 443, 444, and 448.

    SO ORDERED.

Date:  August 18, 2016
         New York, New York

_____
JESSE M. FURMAN
United States District Judge