USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _05/29/2018____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

15-CV-8432 (JMF)
16-CV-0098 (JMF)
16-CV-0501 (JMF)
16-CV-0512 (JMF)
IN RE:                                                                              17-CV-6083 (JMF)
                                                                                       17-CV-6088 (JMF)
MOTORS LIQUIDATION COMPANY                                      17-CV-6196 (JMF)
                                                                                       17-CV-6284 (JMF)
                                                                                       17-CV-6289 (JMF)
                                                                                       17-CV-6120 (JMF)
                                                                                       17-CV-8294 (JMF)


                                                                                OPINION AND ORDER
------------------------------------------------------------------------x

JESSE M. FURMAN, United States District Judge:

## [Regarding Certain Plaintiffs' and New GM's Bankruptcy Appeals]

In February 2014, General Motors LLC ("New GM") announced the recall of certain

vehicles that had been manufactured with a defective ignition switch by New GM's predecessor,

General Motors Company ("Old GM"). Within months of that recall, New GM recalled millions

more vehicles, some for ignition switch-related defects and some for other defects. Not long

after, this Court began presiding over multidistrict litigation ("MDL") arising from, and related

to, those recalls. That litigation, which involves thousands of individual claims for personal

injuries and wrongful deaths as well as a massive putative class action for economic loss, is

complicated in its own right. But it is made more complicated by the fact that Old GM filed for

bankruptcy in 2009 and New GM, in purchasing most of the assets of Old GM pursuant to

Section 363 of the Bankruptcy Code, agreed to assume only certain liabilities of its predecessor.

The result has been parallel — and continuing — litigation in the United States Bankruptcy

Court for the Southern District of New York with respect to whether and to what extent plaintiffs

may, consistent with bankruptcy law, bring claims against New GM. That litigation has yielded a number of rulings by the Bankruptcy Court, some in reference to individual cases and some with broader application. One of those rulings was certified and appealed directly to the United States Court of Appeals (which reversed in part and affirmed in part). Many others have been appealed to this Court and accepted as related to the MDL proceedings.

This Opinion and Order resolves eleven such appeals. Several of those appeals concern individual cases brought against New GM and are unlikely to have broad effect on the MDL proceedings. But the others relate to rulings that apply to the putative class action or to broad swaths of the cases now pending before this Court (or both). They include appeals addressing (1) whether plaintiffs may bring claims against New GM for fraudulent concealment of the right to file a claim against Old GM in the bankruptcy proceedings; (2) whether plaintiffs may pursue punitive damages against New GM based on the conduct of Old GM; and (3) whether plaintiffs who purchased used GM vehicles after Old GM's bankruptcy can bring claims against New GM based on the conduct of Old GM. For reasons that will be explained, this Court agrees with some of the Bankruptcy Court's rulings on these issues and disagrees with others. Accordingly, it affirms the Bankruptcy Court's orders and judgments in part and vacates and remands in part.

## BACKGROUND

The nearly decade-long procedural history leading to these appeals is, to put it mildly, somewhat convoluted. The Court need not provide an exhaustive summary of that history, but instead focuses on the developments most relevant to the issues presented here.

On June 1, 2009, Old GM filed for bankruptcy in the Southern District of New York. In short order, Old GM took steps, pursuant to Section 363 of the Bankruptcy Code, to sell substantially all of its assets, "free and clear" of most of its liabilities, to an entity that was owned primarily by the United States Department of Treasury ("Treasury") and that later became New

GM. Specifically, on June 26, 2009, Old GM and the entity that later became New GM entered into a sale agreement (the "Original Sale Agreement"), defining the liabilities assumed by the new entity (the "Assumed Liabilities") to include "all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property . . . which arise directly out of accidents, incidents or other distinct and discreet [sic] occurrences that happen on or after" July 10, 2009, defined as the "Closing Date" (the "Product Liabilities"). (15-CV-8432, Docket No. 10-1 ("Pillars Appendix"), at A-85). Four days later, the parties entered an amended Sale Agreement (the "Amended Sale Agreement"), which defined Product Liabilities more narrowly to mean "all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property . . . which arise directly out of death, personal injury or other injury to Persons or damage to property caused by accidents or incidents first occurring on or after the Closing Date." (*Id.* at A-163). Notice of the proposed sale was mailed to interested parties, and publication notice appeared in major national publications. *See In re Motors Liquidation Co.* ("*April 2015 Decision*"), 529 B.R. 510, 531 (Bankr. S.D.N.Y. 2015). The Honorable Robert E. Gerber, the United States Bankruptcy Judge for the Southern District of New York to whom the case was assigned, received and considered approximately 850 objections to the proposed sale. *Id.* at 520-21. On July 5, 2009, Judge Gerber entered an order (the "Sale Order") approving the terms of the Amended Sale Agreement (the "363 Sale"). *In re General Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y 2009).

Beginning in February 2014, New GM disclosed to the National Highway Traffic Safety Administration ("NHTSA") serious defects in certain General Motors vehicles that permitted the vehicles' ignition switches to rotate from "run" to "off" too easily, disabling critical safety features of the vehicles, such as the airbags. New GM initially recalled a range of vehicles manufactured by Old GM, including certain model years of Chevrolet Cobalts and HHRs, Saturn

Ions and Skys, and Pontiac G5s and Solstices.  Between February and October 2014, New GM issued a total of approximately sixty recalls, relating to both ignition-switch defects and other defects.  Thereafter, a slew of plaintiffs filed actions against New GM asserting, among other things, successor liability claims premised on Old GM conduct.  Those claimants included — but were by no means limited to — plaintiffs claiming various harms arising from defective ignition switches in recalled GM vehicles.

New GM sought to enjoin many of those claims by moving in the Bankruptcy Court to enforce the "free and clear" provisions of the Sale Order.  The parties to the proceedings agreed to "Stipulated Facts," adopted by Judge Gerber in August 2014.  To the extent relevant here, the parties defined "Ignition Switch" to mean "an ignition switch designed and/or sold by Old GM in the Subject Vehicles that may unintentionally move out of the 'run' position, resulting in a partial loss of electrical power and turning off the engine" and defined "Subject Vehicles," in turn, to include a limited list of vehicles: "(1) 2005-2007 Chevrolet Cobalt and Pontiac GS, 2003-2007 Saturn Ion, 2006-2007 Chevrolet HHR, 2005-2006 Pontiac Pursuit (Canada), 2006-2007 Pontiac Solstice and 2007 Saturn Sky vehicles; and (2) 2008-2010 Pontiac Solstice and G5; 2008-2010 Saturn Sky; 2008-2010 Chevrolet Cobalt; and 2008-2011 Chevrolet HHR vehicles." *See In re: Motors Liquidation Co.* ("*July 2017 Threshold Issues Opinion*"), 571 B.R. 565, 572 (Bankr. S.D.N.Y. 2017).

## A.  The April 2015 Decision

In a decision entered on April 15, 2015 (the "April 2015 Decision"), Judge Gerber addressed New GM's motions to enforce the Sale Order with respect to two sets of plaintiffs: (1) "Economic Loss Plaintiffs," defined as a subset of plaintiffs with the "Ignition Switch Defect" seeking damages for "losses to consumers . . . alleged to have resulted from the Ignition Switch Defect" that were *not* "accident claims involving post-sale deaths, personal injury, and

property damage"; and (2) "Pre-Closing Accident Plaintiffs," a subset of plaintiffs with the

"Ignition Switch Defect" bringing claims "with respect to actual accidents" that occurred prior to

July 10, 2009, the Closing Date of the 363 Sale. *See April 2015 Decision*, 529 B.R. at 521-22.

Each category was defined in reference to the term "Ignition Switch Defect," which itself was

defined to mean "serious defects in ignition switches that had been installed in Chevy Cobalts

and HHRs, Pontiac G5s and Solstices, and Saturn Ions and Skys . . . , going back to the 2005

model year." *Id.* at 521. Judge Gerber held off on resolving New GM's motions to enforce

against "Non-Ignition Switch Plaintiffs," a category he defined as individuals who had "brought

actions asserting Economic Loss claims as to GM branded cars that *did not have* Ignition Switch

Defects, including cars made by New GM and Old GM alike" and who "contend[ed] . . . that the

Ignition Switch Defect caused damage to 'the brand.'" *Id.* at 522-23.

The Bankruptcy Court agreed with New GM that "most of the claims now asserted

against" the company fell within the scope of the Sale Order bar. *Id.* at 523. As a matter of due

process, however, the Court concluded that the Sale Order bar could not be enforced against

debtors of Old GM who had lacked notice "reasonably calculated, under all the circumstances to

apprise people of the pendency of any proceeding that may result in their being deprived of any

property" and who had been prejudiced by the deprivation of such notice. *Id.* at 523, 525-26

(internal quotation marks omitted). The Court held that because a number of Old GM engineers,

senior managers, and attorneys had been aware of the defective ignition switches at the time of

the 363 Sale, Old GM had a known, and unsatisfied, recall obligation by the Closing Date.

Owners of GM cars with the Ignition Switch Defect were therefore known creditors of Old GM

and had been entitled to — and deprived of — actual, personalized notice of the 363 Sale. *Id.* at

525, 538, 556-60. At the same time, Judge Gerber found that such Plaintiffs would not be

entitled to relief unless they could also demonstrate that they had been prejudiced by the

inadequate notice. *Id.* at 560-65. With respect to the Sale Order's bar on successor liability claims, the Bankruptcy Court found that Plaintiffs had not been prejudiced by lack of notice because the legal arguments they raised had been made, and overruled by the Court, at the time of the 363 Sale. *See id.* at 566-68. Judge Gerber rejected Plaintiffs' alternative argument — that public outrage and political pressure might have resulted in a modification of the Amended Sale Agreement by Old GM, New GM, and Treasury — as unduly speculative. *See id.*

By contrast, Judge Gerber agreed with the Economic Loss Plaintiffs that the Sale Order was overly broad to the extent that it purported to preclude claims against New GM premised solely on New GM's *own* misconduct "and not based on any kind of successor liability or any other act by Old GM." *Id.* at 527, 568-70. Judge Gerber reasoned that "New GM would have such liability not because it had assumed any Old GM liabilities, or was responsible for anything wrong that Old GM did, but only because it had engaged in independently wrongful, and otherwise actionable, conduct on its own." *Id.* at 528. As relevant here, the Court also found that "Used Car Purchasers," a subset of the Economic Loss Plaintiffs, had also been denied the requisite notice. *See id.* at 571. The Court concluded that Used Car Purchasers were prejudiced, however, only insofar as their predecessors in interest had been prejudiced, because "the successor in interest to a person or entity cannot acquire greater rights than his, her, or its transferor" and thus New GM should "receive the same protection from Used Car Owners' successor liability claims that it had from their assignors'." *Id.* at 570-72. The Court granted leave to file late claims that were premised only on New GM misconduct rather than based on successor liability for claims against Old GM, but cautioned that "[c]laims premised in any way on Old GM conduct are properly proscribed under the Sale Agreement and the Sale Order, and by reason of the Court's other rulings, the prohibitions against the assertion of such claims

stand." *Id.* at 528.  In June 2015, Judge Gerber entered judgment on the April 2015 Decision and certified the judgment for direct review by the Second Circuit (the "June 2015 Judgment").

**B.  The Pillars Decision and Denial of Reconsideration**

To the extent relevant here, the Bankruptcy Court next considered an argument from Plaintiff Benjamin Pillars that his claims against New GM should proceed notwithstanding the Sale Order.  Pillars, the widower of Kathleen Ann Pillars and representative of her estate, brought an action in Michigan state court alleging that his wife had died as a result of a 2005 accident caused by an ignition switch defect in her 2004 Pontiac Grand Am.  Significantly, although the accident occurred in 2005, before the Closing Date, the decedent did not die until 2012, well after the Closing Date.  (15-CV-8432, Docket No. 11, at 2).  New GM removed the suit to the United States District Court for the Eastern District of Michigan and filed its answer. (*Id.* at 3).  In both its notice of removal and its answer, New GM emphasized the "narrow band of certain liabilities" it had assumed in the 363 Sale, quoting the Sale Agreement as providing that the company would assume "all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property . . . which arise directly out of accidents, incidents or other distinct and discreet [sic] occurrences that happen on or after the Closing Date."  (Pillars Appendix A-201 n.1, A-234-35).  Notably, though, the language New GM quoted came from the Original Sale Agreement — not from the Amended Sale Agreement that had been approved by the Bankruptcy Court in the Sale Order.  At the same time, New GM appended to its notice of removal the Amended Sale Agreement.  (Notice of Removal, Ex. C, *Pillars v. General Motors LLC*, No. 15-CV-11360 (E.D. Mich. Apr. 14, 2015), ECF No. 1-4, at 165).

Before the Bankruptcy Court, Pillars argued that by quoting from the Original Sale Agreement in its notice of removal and answer, New GM had conceded that its Assumed Liabilities with respect to Pillars's case — and his case alone — included all "accidents,

incidents *or other distinct and discreet* [sic] *occurrences* that happen on or after the Closing Date." (*See, e.g.*, Pillars Appendix A-584-92 (emphasis added)). Pillars contended that his wife's death constituted such an "occurrence" and that his claims against New GM should therefore proceed. (*See id.*). In an oral ruling (the "Pillars Decision"), Judge Gerber agreed. He did not buy Pillars's argument that New GM had deliberately inserted the Original Sale Agreement language into its notice of removal and answer because "parties can and do quite often waive defenses or arguments that they may otherwise have" or the related contention that New GM's opposition was just "buyer's remorse on their part now that . . . the consequences of their position has [sic] become apparent." (*Id.* at A-584-85, A-589-90). Instead, Judge Gerber found that New GM's use of the Original Sale Agreement language was "plainly" a mistake and that the relevant question was "who should bear the consequences of that mistake." (*Id.* at A-595). Judge Gerber noted that "when people answer complaints we hold people to what they say" and remarked that New GM "[o]bviously . . . has the ability to ensure that its counsel do their jobs, and it's not too much to hold GM for the consequences of what its counsel, who is plainly an agent, did." (*Id.* at A-595, A-605). On those bases, Judge Gerber found that New GM had judicially admitted that the Original Sale Agreement applied to Pillars's suit. (*Id.* at A-605). Further, Judge Gerber interpreted the word "occurrences" in that Agreement to include Pillars's wife's death and, thus, permitted Pillars's suit to proceed. (*Id.* at A-605; *see also id.* at A-577).

Following the Pillars Decision, the Michigan District Court granted New GM's motion to amend its notice of removal and answer to replace the language from the Original Sale Agreement with the more limited language from the Amended Sale Agreement. (*Id.* at A-817). New GM then returned to the Bankruptcy Court seeking reconsideration of the Pillars Decision in light of the amended pleadings. (*Id.*). Judge Gerber denied the motion, ruling that the amended pleadings were not "new evidence" for which relief could be granted because the

"mistaken references to the [Original Sale Agreement] in New GM's initial pleadings were clearly discoverable by New GM prior to the July 16 Hearing, and New GM in fact had knowledge of such mistakes prior to that hearing."  (*Id.* at A-819-20).

## C.  The November 2015 Imputation Decision

In November 2015, Judge Gerber issued another opinion (the "November 2015 Imputation Decision") in his capacity as the "gatekeeper" responsible for deciding which claims and allegations against New GM could proceed.  *See In re Motors Liquidation Co.* ("*November 2015 Imputation Decision*"), 541 B.R. 104, 110 (Bankr. S.D.N.Y. 2015).  First, he held as a general matter that knowledge could be imputed to New GM based on the knowledge of particular New GM employees or information contained in documents New GM possessed, even if those employees had derived that knowledge while employed by Old GM or those documents had originated with Old GM.  *Id.* at 114-16.  New GM's knowledge of a particular issue or at a given point in time could not be decided in the abstract, he explained, but rather had to be evaluated in the context of individualized allegations and factual determinations.  *Id.* at 115. Imputation of knowledge to New GM based solely on Old GM knowledge as a matter of successorship alone was impermissible.  *Id.*  Instead, Judge Gerber found that it was sufficient to state those general principles by which knowledge could be imputed and leave individual findings on knowledge to the non-bankruptcy courts reviewing substantive claims and allegations against New GM.  *Id.* at 114.

Next, the Bankruptcy Court turned to whether punitive damages were available to the Post-Closing Accident Plaintiffs.[1]  Parsing the Amended Sale Agreement, Judge Gerber found

---

[1]     The term "Post-Closing Accident Plaintiffs" was not defined in the November 2015 Imputation Decision.  In a subsequent decision, however, the Bankruptcy Court defined "Post-Closing Accident Plaintiffs" to mean "plaintiffs asserting claims based on an accident or incident that occurred on or after the Closing Date."  *In re: Motors Liquidation Co.*, 571 B.R. at 578.

that New GM had not contractually assumed liability for punitive damages arising from post-Closing Date accidents based on Old GM conduct. *Id.* at 116-21. But "on Product Liabilities Claims and Independent Claims alike," he concluded, "New GM may be held responsible, on claims for both compensatory and punitive damages, for its *own* knowledge and conduct." *Id.* at 122.[2] The Court noted that New GM might be determined to have acquired such knowledge either by (1) inheriting it from Old GM via Old GM employees who came to work for New GM or Old GM documents that came into New GM's possession, or (2) obtaining it independently after the 363 Sale. *Id.* The Court then applied those principles to various hypotheticals in which punitive damages might be sought for post-Closing Date accidents. *See id.* at 122-26. The Court concluded that, in cases involving Old GM-manufactured vehicles, punitive damages could generally be sought against New GM based only on New GM knowledge or conduct. *See id.* By contrast, the Court noted that claims arising from New GM-manufactured vehicles were not covered by the Sale Order and that plaintiffs in such actions could seek punitive damages against New GM premised on either New GM or Old GM knowledge or conduct, to the extent permitted under nonbankruptcy law. *See id.*

Finally, the Court addressed "the propriety of particular allegations in particular complaints, as objected to by New GM," generally striking allegations to the extent that they sought to hold New GM responsible for liabilities it did not assume as a matter of successor

---

This is consistent with the definition of "Product Liabilities" in the Amended Sale Complaint, which provided that New GM had assumed "all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles . . . manufactured, sold or delivered by Sellers . . . , which arise directly out of death, personal injury or other injury to Persons or damage to property caused by accidents or incidents first occurring on or after the Closing Date." (Pillars Appendix A-163).

[2]     The November 2015 Imputation Decision defined "Independent Claims" to mean "claims based solely on New GM's alleged wrongful conduct." 541 B.R. at 109.

liability or for punitive damages based on Old GM conduct or knowledge. *Id.* at 126-43. Judge

Gerber also struck allegations that "mudd[ied] the distinctions between Old GM and New GM."

*Id.* at 133. Perhaps most important for present purposes, the Bankruptcy Court sustained New

GM's objections to "claims alleging that New GM committed fraud in connection with *Old*

*GM's* bankruptcy — more specifically, that if New GM had not engaged in fraudulent

concealment of ignition switch defects, class members would have filed claims before the Bar

Date." *Id.* at 133-36. The Court opined that those claims (the "Fraudulent Concealment

Claims") impermissibly sought "to impose liability based, in material part, on Old GM conduct,

and assert[ed] forbidden successor liability claim[s] dressed up to look like something else. And

they rest[ed] on duties that do not exist under bankruptcy law." *Id.* at 133 (second alteration in

original) (internal quotation marks omitted). The Bankruptcy Court further found that Plaintiffs'

failure-to-warn claims were assumed by New GM under the Amended Sale Agreement and, thus,

could pass through the bankruptcy gate. *Id.* at 128-29.

In December 2015, the November 2015 Imputation Decision was memorialized in a

judgment (the "December 2015 Judgment"). *See In re Motors Liquidation Co.*, No. 09-50026

(REG), 2015 WL 11070293 (Bankr. S.D.N.Y. Dec. 4, 2015). Significantly, no party appealed

from the November 2015 Imputation Decision or the December 2015 Judgment.

**D. The Second Circuit Opinion**

Four groups of plaintiffs (the "Groman Plaintiffs," Ignition Switch Plaintiffs, a handful of

Non-Ignition Switch Plaintiffs represented by attorney Gary Peller, and Pre-Closing Accident

Plaintiffs) appealed the April 2015 Decision directly to the Second Circuit. The Court of

Appeals resolved those appeals in a July 2016 opinion (the "Second Circuit Opinion"). *See In re*

*Motors Liquidation Co.* ("*Second Circuit Opinion*"), 829 F.3d 135 (2d Cir. 2016). Most relevant

for present purposes, the Second Circuit ruled on the Bankruptcy Court's jurisdiction over New

GM's motions to enforce, the scope of the Sale Order and the claims it purported to bar, and the procedural due process concerns addressed in the April 2015 Decision. The Circuit first confirmed that the Bankruptcy Court had jurisdiction to interpret the Amended Sale Agreement and its own prior orders and to enjoin claims against New GM that were inconsistent with the Sale Order. *See id.* at 152-54. The Bankruptcy Court's decision interpreting and enforcing the Sale Order, the Circuit reasoned, was a proper exercise of its "arising in" jurisdiction under the Bankruptcy Code. *Id.* (citing 28 U.S.C. § 157(a)).

The Circuit then analyzed the scope of the Sale Order to evaluate which claims were barred and which fell outside its coverage. Noting that Section 363(f) of the Bankruptcy Code permits a debtor to sell its assets "free and clear of any interest in such property," the Circuit concluded that successor liability claims like the Plaintiffs' might qualify as "interests," but could only be precluded by the Sale Order if they also constituted "claims" that could be barred under Chapter 11 more generally. *Id.* at 154-56. The Circuit defined a claim as "(1) a right to payment (2) that arose before the filing of the [bankruptcy] petition" and opined that, "[i]f the right to payment is contingent on future events, the claim must instead result from pre-petition conduct fairly giving rise to that contingent claim." *Id.* at 156 (internal quotation marks omitted). A claim could not, the Court reasoned, "be extended to include claimants whom the record indicates were completely unknown and unidentified at the time the debtor filed its petition and whose rights depended entirely on the fortuity of future occurrences." *Id.* (ellipsis and brackets omitted). Both "practical and constitutional" considerations require a "minimum contact or relationship that makes identifiable the individual with whom the claim does or would rest" before a claim can be barred in a sale pursuant to Section 363. *Id.* (citations omitted) (internal quotation marks omitted).

With those principles in hand, the Second Circuit turned to whether the Sale Order purported to bar "(1) pre-closing accident claims, (2) economic loss claims arising from the ignition switch defect or other defects, (3) independent claims relating only to New GM's conduct, and (4) Used Car Purchasers' claims." *Id.* The Circuit found that the first two categories of claims were subject to the Sale Order bar, as pre-closing accident claims were, by definition, tort claims that arose before the 363 Sale and the economic loss claims were contingent claims that could not be brought at the time of the Sale only because Old GM had not disclosed the Ignition Switch Defect to the public. *Id.* at 156-57. By contrast, the Circuit held that the third and fourth categories of claims fell outside the scope of the "free and clear" provision of the Sale Order. With respect to "independent claims relating only to New GM's conduct," the Circuit determined "[t]hese sorts of claims," by their nature, "are based on New GM's *post*-petition conduct, and are not claims that are based on a right to payment that arose before the filing of petition or that are based on pre-petition conduct." *Id.* at 157. The claims of the Used Car Purchasers (defined by the Circuit as those "Ignition Switch Plaintiffs" who purchased used Old GM cars after the Closing Date, *id.* at 151) were not covered by the Sale Order because those Plaintiffs "purchased Old GM cars *after* the closing, without knowledge of the defect or possible claim against New GM" and "[t]here could have been no contact or relationship — actual or presumed — between Old GM and these specific plaintiffs, who otherwise had no awareness of the ignition switch defect or putative claims against New GM." *Id.* at 157. Accordingly, the Circuit affirmed (albeit on different grounds) Judge Gerber's decision not to enjoin "independent claims" and reversed his decision to enjoin the Used Car Purchasers' claims. *Id.* at 158.

The Circuit then turned to the Bankruptcy Court's due process analysis. The Circuit found no clear error in the Bankruptcy Court's conclusion that "because Old GM knew or

reasonably should have known about the ignition switch defect prior to bankruptcy, it should have provided direct mail notice to vehicle owners." *Id.* at 159. Nevertheless, assuming without deciding that the Bankruptcy Court correctly required a showing of prejudice, the Circuit found that it could not "say with fair assurance that the outcome of the § 363 sale proceedings would have been the same had Old GM disclosed the ignition switch defect and these plaintiffs voiced their objections to the 'free and clear provision.'" *Id.* at 163. Because "there was a reasonable possibility that plaintiffs could have negotiated some relief from the Sale Order," the Court of Appeals reversed the April 2015 Decision "insofar as it enforced the Sale Order to enjoin claims relating to the ignition switch defect." *Id.* at 166. Noting that "many of the peculiar facts discussed apply with less force to the Non-Ignition Switch Plaintiffs, who assert claims arising from other defects," and that the Bankruptcy Court had not ruled on Old GM's knowledge of other defects, the Court of Appeals vacated the Bankruptcy Court's decision "[a]s to claims based in non-ignition switch defects" and remanded for further proceedings. *Id.*

**E. The Pitterman Opinion**

While the appeals were pending before the Second Circuit, Judge Gerber retired from the bench, and responsibility for the Old GM bankruptcy proceedings was assumed by Bankruptcy Judge Martin Glenn. On June 7, 2017, he issued the next decision relevant to these appeals (the "Pitterman Opinion"), relating to *Pitterman v. General Motors LLC* (the "Pitterman Action"), a lawsuit pending in the United States District Court for the District of Connecticut. *See In re Motors Liquidation Co.* ("*Pitterman Opinion*"), 568 B.R. 217 (Bankr. S.D.N.Y. 2017). In a December 13, 2016 Order to Show Cause (the "December 2016 Order to Show Cause"), Judge Glenn had set forth five outstanding threshold issues with respect to claims asserted against New GM involving vehicles manufactured by Old GM (the "2016 Threshold Issues"), and provided that any plaintiffs served with the Order to Show Cause would be bound by the Bankruptcy

Court's subsequent rulings on the 2016 Threshold Issues. *Id.* at 220. (*See also* 17-CV-6120, Docket No. 17-1 ("Pitterman Appendix"), at A-4163). One of those five issues concerned the Pitterman Action, in which the administrator of the estate of a child killed in an accident involving a GM vehicle brought suit against New GM, alleging that the vehicle's defective automatic transmission caused the accident. *See Pitterman Opinion*, 568 B.R. at 221. The Plaintiffs in the action (the "Pitterman Plaintiffs") alleged claims for failure to recall or retrofit and failure to warn, predicated both on Old GM's conduct and on New GM's own conduct. *Id.* The Bankruptcy Court was tasked with evaluating whether claimants such as the Pitterman Plaintiffs, who alleged vehicular defects unrelated to the ignition switch, were barred by either the Sale Order or the law of the case from pursuing claims against New GM premised on New GM's own alleged misconduct.

Judge Glenn began by addressing the availability of the two categories of claims against New GM premised on Old GM's conduct: failure to warn and failure to recall or retrofit. In light of New GM's concession that the failure-to-warn claims based on the conduct of Old GM were Assumed Liabilities under the Amended Sale Agreement, he permitted such claims through the bankruptcy gate. *Id.* at 229. By contrast, Judge Glenn noted that Judge Gerber had previously concluded that New GM had *not* assumed liability for product liability claims arising from Old GM's failure to recall or retrofit, and he declined to revisit "this decision as a matter of contract interpretation." *Id.* at 229-30. Next, Judge Glenn determined that Judge Gerber had not previously ruled on the availability of failure-to-warn and failure-to-recall or failure-to-retrofit claims based solely on New GM conduct and had addressed only the extent to which "Independent Claims" were available to "Ignition Switch Plaintiffs" in his relevant decisions. *Id.* at 223-27, 230. Judge Glenn found that the Second Circuit's conclusion that "truly independent claims necessarily are not 'claims' that can be barred by a section 363 sale order" applied equally

to plaintiffs without the Ignition Switch Defect, including the Pitterman Plaintiffs, and ruled that such claims could proceed so long as they were truly premised on New GM conduct alone. *Id.* at 230-31. To the extent certain allegations in the Pitterman complaint impermissibly muddied the distinction between the conduct and knowledge of Old GM and those of New GM, counsel for the Pitterman Plaintiffs offered to amend their failure-to-recall and failure-to-retrofit claims to remove references to Old GM. *Id.* at 231. Judge Glenn left the question of whether to permit such an amendment to the District Court hearing the underlying litigation. *Id.* at 231.[3]

After the Connecticut District Court permitted the Pitterman Plaintiffs to amend their complaint over New GM's objections and held that the Plaintiffs raised a valid failure-to-warn claim under nonbankruptcy law, (Pitterman Appendix A-5935-53), New GM renewed its motion to enforce. The Bankruptcy Court struck a reference in the Pitterman amended complaint to a 2006 bulletin promulgated by Old GM, but otherwise allowed the Pitterman Action to proceed,

---

[3]    In its briefing, New GM mischaracterizes the Bankruptcy Court's decision with respect to failure-to-warn and failure-to-recall or failure-to-retrofit claims based solely on New GM's own wrongful conduct. (*See* 17-CV-6120, Docket No. 17 ("New GM Pitterman Br."), at 19). New GM claims that "Judge Glenn held that the Pitterman Plaintiffs' claims against New GM for failure to recall and to warn were improperly based on the alleged wholesale imputation of knowledge from Old GM — and were not based, as previous rulings had required, 'solely on New GM's post-closing wrongful conduct.'" (*Id.*). In fact, the Bankruptcy Court held that "Non-Ignition Switch Plaintiffs may bring claims against New GM based solely on New GM's post-closing wrongful conduct" and specifically permitted the Pitterman Plaintiffs to proceed with "failure to recall and retrofit [claims], based solely on New GM's conduct." *Pitterman Opinion*, 568 B.R. at 230-31. Judge Glenn did identify "several paragraphs" of the Pitterman Plaintiffs' complaint in which allegations were based "on generalized knowledge of both Old GM and New GM," and he stated that, "[t]o pass the bankruptcy gate, a complaint must clearly allege that its causes of action are based solely on New GM's post-closing wrongful conduct." *Id.* at 231. Noting that counsel for the Pitterman Plaintiffs had "offered to amend the complaint to remove any allegations alleging independent claims based on Old GM's conduct," the Bankruptcy Court stated only that "[w]hether to permit the Pitterman Plaintiffs to amend their complaint to comport with this ruling is up to the Connecticut District Court hearing that action." *Id.* Nowhere in the Pitterman Opinion did Judge Glenn find that the failure-to-recall and failure-to-retrofit claims as a whole were "improperly based on the alleged wholesale imputation of knowledge from Old GM." (New GM Pitterman Br. 19).

leaving the question of whether the complaint properly stated claims against New GM under nonbankruptcy law for the District Court to decide. (*Id.* at A-5970-71). The Pitterman Action then proceeded to trial before a jury, which rendered a verdict in favor of the Pitterman Plaintiffs on July 19, 2017. *Pitterman v. General Motors LLC*, No. 14-CV-0967, slip op. at 2 (D. Conn. Apr. 18, 2018). New GM filed a Renewed Motion for Judgment as a Matter of Law After Trial, which the District Court denied on April 18, 2018. *Id.*[4]

**F. The July 2017 Threshold Issues Opinion**

On July 12, 2017, Judge Glenn issued a Memorandum Opinion and Order resolving the remaining 2016 Threshold Issues (the "July 2017 Threshold Issues Opinion"). *See* 571 B.R. 565. First, Judge Glenn addressed whether a plaintiff must have owned a "Subject Vehicle" to qualify as an "Ignition Switch Plaintiff" within the meaning of the Second Circuit's decision. The definition of that term was critical because the Second Circuit had held that Ignition Switch Plaintiffs could proceed with their claims notwithstanding the Sale Order. *See Second Circuit Opinion*, 829 F.3d at 166. By contrast, the Second Circuit did not reach whether plaintiffs without the Ignition Switch Defect could proceed with their claims. Instead, the Court left it to the Bankruptcy Court to determine in the first instance whether *Non*-Ignition Switch Plaintiffs could also establish a due process violation that would entitle them to proceed. *See id.*[5]

---

[4] New GM has filed a notice of appeal with respect to various decisions in the Pitterman Action, including the orders denying its motion and renewed motion for judgment as a matter of law, rulings denying its motion to certify questions to the Connecticut Supreme Court, and the Court's Judgment, the Jury Charge, and the Jury Verdict. (Notice of Appeal, *Pitterman v. General Motors LLC*, No. 14-CV-0967 (D. Conn. May 17, 2018), ECF No. 329).

[5] In the July 2017 Threshold Issues Opinion, Judge Glenn made clear that the question of whether Non-Ignition Switch Plaintiffs could make out a due process violation was not before him. *See July 2017 Threshold Issues Opinion*, 571 B.R. at 574 ("Whether plaintiffs whose vehicles were the subject of other recalls may yet be able to prove that their due process rights were violated — or whether it is too late for them to do so — is not a question currently before

To determine the meaning of "Ignition Switch Plaintiff," Judge Glenn looked to the Stipulated Facts agreed to by the parties — specifically, at the definitions of "Ignition Switch" (which was limited to Subject Vehicles) and "Subject Vehicles" set forth therein. He noted that "[t]his Court and the parties defined the Ignition Switch Defect according to the Stipulated Facts; in other words, the Ignition Switch Defect is the defect in the Subject Vehicles that gave rise to" the first recall by New GM ("NHTSA Recall No. 14v047"), and thus concluded that it was "clear from the April [2015] Decision that Judge Gerber used the terms 'Ignition Switch Defect' to mean *only* the defect in the Subject Vehicles that gave rise to NHTSA Recall No. 14v047." *Id.* at 572. Looking at the Second Circuit Opinion, the Bankruptcy Court further found that the Second Circuit "framed the issue just as the Bankruptcy Court had" and that it was "clear from the context of the opinion . . . that the Second Circuit's use of the terms 'ignition switch' and 'ignition switch defect' refer to the Ignition Switch Defect in the Subject Vehicles as defined by Judge Gerber in the April Decision and June Judgment." *Id.* at 573-74.

Next, the Bankruptcy Court addressed the extent to which "Used Car Purchasers" were bound by the Sale Order and the applicability of the Second Circuit Opinion to purchasers of used GM vehicles that did not have the Ignition Switch Defect ("Threshold Issue Three"). Judge Glenn noted that, in the April 2015 Decision, Judge Gerber had defined "Used Car Purchasers" as a subset of Ignition Switch or Economic Loss Plaintiffs; "Economic Loss Plaintiffs," in turn, comprised individuals claiming financial losses "alleged to have resulted from the Ignition Switch Defect." *Id.* at 574. Judge Gerber had found that while Used Car Purchasers, like the broader category of Ignition Switch Plaintiffs, had been denied due process by the 363 Sale, they

---

this Court."). The parties in the MDL disagree with respect to whether and to what extent that question remains open. (*See* 14-MD-2543, Docket Nos. 5340, 5341, 5368, 5388).

had not been prejudiced. *Id.* Judge Glenn noted Judge Gerber's holding that "the successor in interest to a person or entity cannot acquire greater rights than his, her, or its transferor." *Id.* Judge Glenn then described the Second Circuit Opinion as holding that Used Car Purchasers — "individuals who had purchased Old GM cars secondhand after the § 363 sale closed" who were "[i]ncluded within the Ignition Switch Plaintiffs," *Second Circuit Opinion*, 829 F.3d at 151 — "had been prejudiced by the lack of actual notice of the 363 Sale, and were therefore not bound by the Sale Order." *July 2017 Threshold Issues Opinion*, 571 B.R. at 575. Because Judge Glenn determined that the Second Circuit had "reversed Judge Gerber's determination that the Used Car Purchasers had not shown that they were prejudiced, but did not disturb Judge Gerber's ruling that owners of used cars cannot acquired more rights than the seller had," he concluded that the latter ruling was the law of the case and thus binding. *Id.* at 575, 579.

Finally, the Bankruptcy Court returned to the issue of punitive damages. Judge Glenn noted that Judge Gerber had ruled as a matter of contract interpretation that New GM did not assume liability for punitive damages based on Old GM's conduct. *Id.* at 575-76 (citing *November 2015 Imputation Decision*, 541 B.R. at 108). Because the November 2015 Imputation Decision was never appealed, he continued, the Sale Order's bar on punitive damages remained the law of the case. *See id.* Assuming without deciding that Post-Closing Accident Plaintiffs were future claimants whose punitive damages claims against New GM predicated on Old GM conduct could not be barred by the Sale Order, the Bankruptcy Court further held that such damages were inconsistent with bankruptcy law. *Id.* at 576-77. As Judge Glenn explained, any punitive damages claims against New GM based on Old GM conduct were necessarily successor liability claims, for which New GM could be held liable only to the same extent as its predecessor. *Id.* at 579. And, under the federal bankruptcy priority scheme, Old GM would never have been liable for punitive damages because it was "deeply insolvent" and could not

even satisfy its higher priority claims, including general unsecured claims. *Id.* at 580. That is, Judge Glenn concluded, punitive damages claims would have been categorically barred as a matter of bankruptcy law. *Id.* at 580.

## G. The Reichwaldt Decision

The final decision relevant to these appeals, entered on August 31, 2017, pertains to the complaint filed by Kaitlyn Reichwaldt. *See In re Motors Liquidation Co.* ("*Reichwaldt Order*"), 576 B.R. 313 (Bankr. S.D.N.Y. 2017). Reichwaldt sued New GM after the fuel tank of a 1984 Chevrolet pickup truck exploded in a 2015 impact with her own vehicle, making her a "Non-Ignition Switch Post-Closing Accident Plaintiff." In Reichwaldt's complaint, she raised claims predicated on negligence and strict liability, reckless and wanton conduct, and failure to warn, and she sought compensatory and punitive damages. New GM filed a motion to enforce the Sale Order against Reichwaldt, claiming that allegations in her complaint impermissibly sought punitive damages on (1) Assumed Liabilities, for which punitive damages are unavailable, and (2) claims for which Reichwaldt impermissibly relied on Old GM conduct.

The Bankruptcy Court concluded that Reichwaldt's failure-to-warn claim impermissibly sought punitive damages against New GM based on Old GM conduct and conflated the two entities and, thus, did not qualify as an "Independent Claim." *Id.* at 322-23. It similarly held that Reichwaldt's complaint alleged misconduct only on the basis of "generalities" that were "insufficient" to identify "specific New GM conduct upon which to base an Independent Claim." *Id.* Finally, the Court precluded Reichwaldt from challenging the punitive damages holdings of the November 2015 Imputation Decision and the July 2017 Threshold Issues Opinion, noting that her arguments were barred by both *res judicata* and law of the case because she had received notice of the December 2016 Order to Show Cause, had not participated in briefing on the July

2017 Threshold Issues Opinion, and had not joined in any appeals of the aspect of that decision addressing punitive damages. *Id.* at 323-24.

**DISCUSSION**

This Opinion and Order addresses eleven separate appeals — by plaintiffs and by New GM — from the foregoing rulings of the Bankruptcy Court, including appeals relating to the claims of Pillars, the Pitterman Plaintiffs, and Reichwaldt, and appeals from the Bankruptcy Court's July 2017 Threshold Issues Opinion. The Court addresses the appeals together, where possible, and individually, where necessary. In doing so, it reviews the Bankruptcy Court's findings of fact for clear error and its legal conclusions, including its textual constructions of bankruptcy documents and orders, *de novo*. *See, e.g.*, *In re Duplan Corp.*, 212 F.3d 144, 151 (2d Cir. 2000); *In re Chemtura Corp.*, 505 B.R. 427, 429-30 (S.D.N.Y. 2014). The Court reviews mixed questions of fact and law *de novo* as well. *See, e.g.*, *Chemtura Corp.*, 505 B.R. at 430.

**A. Appeals Relating to Pillars's Claims (15-CV-8432 and 17-CV-6196)**

New GM and Pillars both appeal from decisions of the Bankruptcy Court relating to Pillars's claims. First, New GM appeals from Judge Gerber's decision holding that Pillars could pursue his claims because they fell within the definition of Assumed Liabilities that New GM included in its notice of removal and original answer. (15-CV-8432, Docket No. 10 ("New GM First Pillars Br.")). Second, Pillars appeals from Judge Glenn's decision construing the meaning of "Ignition Switch Defect" as that term was used by the Second Circuit. (17-CV-6196, Docket No. 7 ("Pillars Second Br.")). The upshot is that Pillars argues there are two independent bases to allow his claims through the bankruptcy gate. First, he argues that this Court should affirm the Bankruptcy Court's determination that New GM admitted to having assumed liability for Pillars's claims. Second, he asserts that, contrary to the Bankruptcy Court's determination, he is

an "Ignition Switch Defect" Plaintiff, as that phrase was used by the Second Circuit, and that he has therefore already established a due process violation. Neither argument is persuasive.

The Court begins with the judicial admission question, which is unique to Pillars's case. It is well established that "[a] pleading prepared by an attorney is an admission by one presumptively authorized to speak for his principal." *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter*, 32 F.2d 195, 198 (2d Cir. 1929). Accordingly, "admissions in the pleadings are generally binding on the parties and the Court." *PPX Enters., Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir. 1984). That is, where a party expressly concedes an issue in a pleading and does not claim fraud or mistake, such a judicial admission is "conclusive" against the party as to that issue. *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121-22 (2d Cir. 1990). But to constitute a judicial admission, a statement must be "unequivocal," *Meehancombs Glob. Credit Opportunities Master Fund, LP v. Caesars Entm't Operating Co.*, 162 F. Supp. 3d 200, 212 & n.72 (S.D.N.Y. 2015), and have "sufficient formality or conclusiveness," *Berner v. British Commonwealth Pac. Airlines, Ltd.*, 346 F.2d 532, 542 (2d Cir. 1965); *see also MacDonald v. General Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997) ("In order to qualify as judicial admissions, an attorney's statements must be deliberate, clear and unambiguous."). A lower court's determination that a statement is a judicial admission is reviewed on appeal for abuse of discretion. *MacDonald*, 110 F.3d at 340.

Applying those standards here, the Court is compelled to conclude that the Bankruptcy Court abused its discretion in finding that New GM's reference to the Original Sale Agreement in its notice of removal and answer constituted a judicial admission that New GM had assumed liability for Pillars's claim. As an initial matter, judicial admissions are generally limited to admissions of *fact*, *see, e.g.*, *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985), and it is far from clear that New GM's quotation of language from a superseded legal

document constitutes such an admission. But in any event, the Bankruptcy Court made no reference to the standard for identifying a judicial admission. It did not determine that New GM's use of the Original Sale Agreement was an unequivocal, deliberate, clear, or unambiguous admission that New GM had assumed liability for Pillars's claim. In fact, the Bankruptcy Court expressly determined — despite Pillars's arguments to the contrary — that New GM's use of language from the Original Sale Agreement in the notice of removal and the answer was "plainly" a mistake on the part of New GM's counsel. (Pillars Appendix A-595; *see also id.* at A-583 ("New GM used the wrong language as far as I can tell.")). Thus, the Bankruptcy Court misapplied — or, more to the point, failed to apply — the standard by which courts are intended to gauge whether something is a judicial admission. Instead of assessing whether New GM had actually admitted liability for "accidents, incidents or other occurrences" under the governing legal standards, the Bankruptcy Court simply held that New GM should be held accountable "for the consequences of" its counsel's mistake. (*Id.* at A-605). That was error.

This Court agrees with the Bankruptcy Court's original assessment of New GM's use of the Original Sale Agreement language in the notice of removal and answer: It was a mistake rather than a deliberate or unequivocal admission that the Original Sale Agreement should apply. There is no indication that counsel for New GM intentionally or even knowingly inserted the language from the Original Sale Agreement; nor is there any plausible reason New GM might have wanted to agree to be bound by an earlier iteration of the Sale Agreement than the one eventually approved by the Court. Indeed, New GM actually attached the Amended Sale Agreement to its notice of removal, (Notice of Removal, Ex. C, *Pillars v. General Motors LLC*, No. 15-CV-11360 (E.D. Mich. Apr. 14, 2015), ECF No. 1-4, at 165; *see also* Pillars Appendix A-163), even as it quoted from the wrong version, (Pillars Appendix A-234-35), belying Pillars's conclusory assertion that New GM might have made a tactical decision to be bound by the earlier

version of the Sale Agreement. (15-CV-8432, Docket No. 11, at 8 n.4). Moreover, even if use

of the Original Sale Agreement language had been "deliberate," relying on the wrong version of

the Sale Agreement is a far cry from unequivocally admitting that New GM had assumed

liability for Pillars's accident. In fact, in the same paragraph in its answer in which New GM

erroneously quoted the Original Sale Agreement, it simultaneously "denie[d] the subject accident

[wa]s an assumed liability pursuant to the Sale Order and Injunction." (Pillars Appendix A-234-

35). In short, the Bankruptcy Court abused its discretion in ruling that this mistake constituted a

judicial admission, and Pillars cannot pass through the bankruptcy gate on that ground.[6]

Pillars's second argument — that the Bankruptcy Court erred in limiting the definition of

"Ignition Switch Defect" to defective ignition switches found in "Subject Vehicles" and, thus, in

excluding Pillars's claims from the Second Circuit's prejudice holding — fares no better. Judge

Gerber first adopted the parties' Stipulated Facts in August 2014, and the Bankruptcy Court

relied upon those stipulations in defining important terms in its myriad decisions in the

bankruptcy proceedings. In the Stipulated Facts, the parties agreed that *only* Subject Vehicles

contained a defective "Ignition Switch" and limited the universe of Subject Vehicles to certain

Chevrolets, Pontiacs, and Saturns — a universe that did not include Pillars's wife's 2004 Pontiac

Grand Am. In its first pertinent decision in this matter, the Bankruptcy Court defined "Ignition

Switch Defect" to mean "serious defects in ignition switches that had been installed in Chevy

Cobalts and HHRs, Pontiac G5s and Solstices, and Saturn Ions and Skys . . . , going back to the

2005 model year." *April 2015 Decision*, 529 B.R. at 521. In the June 2015 Judgment, Judge

---

[6]     In light of the Court's conclusion that the Bankruptcy Court abused its discretion in
finding that New GM had assumed liability for Pillars's claim, it is unnecessary to reach New
GM's alternative argument that the Bankruptcy Court further erred by refusing to reconsider that
decision after New GM amended its answer in the Eastern District of Michigan. (New GM First
Pillars Br. 16-18).

Gerber similarly defined the term "Ignition Switch Plaintiff" to mean a plaintiff who had "commenced a lawsuit against New GM asserting economic losses based on or arising from the Ignition Switch in the Subject Vehicles (each term as defined in the [Stipulated Facts])." (Pillars Appendix A-304 n.1 (citation omitted)). These definitions delineated the scope of the Court's rulings with respect to the Ignition Switch Defect and limited the holdings to defective "Subject Vehicles." And it was these decisions that were on appeal before the Second Circuit. Because Pillars's wife's vehicle was not among the cars that could by definition have an Ignition Switch Defect according to the April 2015 Decision and June 2015 Judgment, Pillars's case falls outside the purview of the Second Circuit's holding, and he cannot benefit directly from the Second Circuit Opinion reversing the Sale Order bar as to plaintiffs alleging an Ignition Switch Defect.

Pillars asserts that the Second Circuit Opinion extends more broadly than the April 2015 Decision and June 2015 Judgment it reviewed. Thus, he contends, in reversing the prejudice holding of the Bankruptcy Court and allowing certain claims to proceed, the Second Circuit swept in plaintiffs like Pillars. (Pillars Second Br. 11-16). It is hard to imagine, however, that the Second Circuit would, without comment, use the same terms used by the Bankruptcy Court, but mean something materially different. And the Second Circuit gave no indication in its lengthy opinion that it was construing the relevant terms differently than the Bankruptcy Court had. Moreover, the scope of appellate review is generally delimited by the scope of the lower court's opinion; courts of appeals typically may not rule on matters or expand the record beyond the decision under review, as they have "no jurisdiction save to correct errors." *Dictograph Prod. Co. v. Sonotone Corp.*, 231 F.2d 867, 867 (2d Cir. 1956) (per curiam). Here, the April 2015 Decision and June 2015 Judgment were restricted to Subject Vehicles, setting outer bounds for the record the Second Circuit considered and, thus, for the scope of the Second Circuit's holding, regardless of the breadth of the language the Court used in its opinion.

Taking a different tack (and perhaps a cue from his earlier success with such arguments), Pillars asserts that the Bankruptcy Court erred in refusing to hold New GM to its "judicial admission" that his claim is "identical" to those of the Ignition Switch Pre-Closing Accident Plaintiffs. (Pillars Second Br. 6-11). Judge Gerber, however, did not abuse his discretion in concluding that New GM's statement — "that Pillars, *like* the Ignition Switch Pre-Closing Accident Plaintiffs, was barred from asserting claims against New GM" — is "not the same as stating the two sets of plaintiffs are one and the same." *July 2017 Threshold Issues Opinion*, 571 B.R. at 577 (emphasis added). New GM's argument against Pillars's claim proceeding was not that he *was* an Ignition Switch Pre-Closing Accident Plaintiff, but rather that the June 2015 Judgment should bar claims of *all* plaintiffs, "like Movant, who were involved in accidents that occurred prior to the closing of the 363 Sale." (*See* Pillars Second Br. 8-9). In other words, New GM was arguing, by analogy, that the Bankruptcy Court's April 2015 Decision and June 2015 Judgment should apply to a broader category than the Ignition Switch Pre-Closing Accident Plaintiffs, a category that included Pillars; there is no basis to read its statements in context to deliberately and intentionally admit that Pillars *was* an Ignition Switch Pre-Closing Accident Plaintiff and therefore *already* bound by those decisions.

Alternatively, Pillars points to language in New GM's briefing before this Court in an earlier appeal, in which the company argued as follows:

> [T]he Bankruptcy Court confirmed on two separate occasions that any claim based on a pre-363 Sale accident — like the claims asserted by [Pillars] — cannot be asserted against New GM, and is proscribed by the Sale Order and Injunction. Specifically, the June Judgment expressly held as follows: "Any claims and/or causes of action brought by the Ignition Switch Pre-Closing Accident Plaintiffs that seek to hold New GM liable for accidents or incidents that occurred prior to the closing of the 363 Sale are barred and enjoined pursuant to the Sale Order."

(Pillars Second Br. 8). Pillars asserts that this statement should be read as an admission that he *is* an Ignition Switch Pre-Closing Accident Plaintiff. But in the quoted language, New GM again

argued that *all* claims based on pre-Closing Date accidents were barred by the Sale Order, citing the April 2015 Decision and June 2015 Judgment as support. Taken to its logical conclusion, Pillars's argument would suggest that New GM judicially admitted that *all* Pre-Closing Accident Plaintiffs were "Ignition Switch Pre-Closing Accident Plaintiffs," which is plainly not what New GM intended. Indeed, the remainder of the paragraph to which Pillars cites reveals that New GM was merely arguing that Pillars's "claims arise from a pre-363 Sale accident and, under the Bankruptcy Court's orders, should be barred." (New GM First Pillars Br. 12-13). In short, the Bankruptcy Court did not abuse its discretion in rejecting Pillars's argument that New GM admitted that he is an Ignition Switch Pre-Closing Accident Plaintiff.

In short, Pillars's suit may not pass through the bankruptcy gate on the basis of either of the arguments he presents to this Court, because New GM did not judicially admit liability for his claims and his action against New GM did not arise from a Subject Vehicle containing the Ignition Switch Defect. Accordingly, the Court vacates the Bankruptcy Court's determination that New GM judicially admitted liability for Pillars's claim, affirms its conclusion that only plaintiffs with the Ignition Switch Defect in a Subject Vehicle are Ignition Switch Plaintiffs, and remands Pillars's case for further proceedings consistent with this Opinion.

## B.  Appeals Relating to Fraudulent Concealment Claims (16-CV-0098, 16-CV-0501, and 16-CV-0512)

Next, the Ignition Switch Plaintiffs and the "Adams Plaintiffs" (the latter of whom are "individuals who have asserted claims against New GM for personal injuries and/or wrongful deaths suffered in pre-Sale accidents caused by the Ignition Switch Defect," (16-CV-0098, Docket No. 9 ("Fraudulent Concealment Pls.' Br."), at 1)) challenge the Bankruptcy Court's determination in the November 2015 Imputation Decision that their claims against New GM for "fraud by concealment of the right to file a claim against Old GM in bankruptcy" are not

properly pleaded "Independent Claims." *November 2015 Imputation Decision*, 541 B.R. at 133-36. As an initial matter, despite Plaintiffs' assertions to the contrary, the Bankruptcy Court plainly had jurisdiction to address the question of whether these claims were truly Independent Claims. Plaintiffs may be correct that "the Bankruptcy Court lacked jurisdiction to enjoin direct claims against New GM arising solely from its own post-Sale violations of its independent legal duties." (Fraudulent Concealment Pls.' Br. 3, 17-19). But that argument puts the cart before the horse. Judge Gerber correctly acknowledged that, "on Product Liabilities Claims and Independent Claims alike, New GM may be held responsible, on claims for both compensatory and punitive damages, for its *own* knowledge and conduct." *November 2015 Imputation Decision*, 541 B.R. at 122. The question he sought to answer, however, was whether Plaintiffs' claims were truly Independent Claims, in which case they could proceed, or rather "successor liability claim[s] 'dressed up to look like something else,'" in which case they could not. *Id.* at 133 (alteration in original). He clearly had jurisdiction to answer that question and, after concluding that the claims were actually successor liability claims, to enjoin them — as those tasks involved interpreting and enforcing the Sale Order. *See Second Circuit Opinion*, 829 F.3d at 152-54.

That said, the Court agrees with Plaintiffs that their Fraudulent Concealment Claims, as defined above, are properly pleaded Independent Claims that may pass through the bankruptcy gate. Put simply, the Ignition Switch and Adams Plaintiffs allege that New GM had knowledge of the Ignition Switch Defect; that it improperly concealed its knowledge of that defect, depriving Plaintiffs of notice of the defect; that it had a "duty to disclose the Delta Ignition Switch Defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts," as well as "monitoring and disclosure duties under the TREAD Act . . . that required the disclosure of the defect"; and that, because of this

fraudulent concealment, Plaintiffs lacked the opportunity to timely file proofs of claims against Old GM.  (*See, e.g.*, 14-MD-2543, Docket No. 3356, ¶¶ 1163-84; *see also* 14-MD-2543, Docket No. 4838, ¶¶ 1135-56).  Some loose language in Plaintiffs' briefing before the Bankruptcy Court aside, (*see* 16-CV-0098, Docket No. 9-1, at A-617); 16-CV-0098, Docket No. 10 ("New GM Fraudulent Concealment Br."), at 16, 19), Plaintiffs do not argue *as a matter of bankruptcy law* that New GM deprived them of notice, let alone seek on the basis of New GM's alleged concealment leave to file late proofs of claim.  Instead, they contend that New GM had a duty to disclose *under nonbankruptcy law* and that, by virtue of New GM's independent breach of that duty, they suffered *damages* because they could not file timely proofs of claim.  That is, the mere fact that they allege a form of injury relating to the bankruptcy proceedings does not mean that they allege a duty arising from those proceedings.  Whether or not Plaintiffs' theory is valid as a matter of nonbankruptcy law — a question the Court does not reach here, despite New GM's invitation to do so, (*see* New GM Fraudulent Concealment Br. 18-22) — the Court concludes that the Fraudulent Concealment Claims qualify as Independent Claims that may proceed. Accordingly, it vacates the Bankruptcy Court's decision to the contrary and remands for further proceedings consistent with this Opinion.

## C.  New GM's Appeal of the Pitterman Opinion (17-CV-6120)

In the next appeal, New GM challenges the Bankruptcy Court's determination that plaintiffs without the Ignition Switch Defect are not barred by the November 2015 Imputation Decision and December 2015 Judgment from pursuing Independent Claims against New GM as a general matter and that the Pitterman Plaintiffs assert valid Independent Claims against New GM.  For substantially the reasons stated by Judge Glenn in his thorough analysis of the issue, the Court concludes that the Bankruptcy Court had not previously barred Independent Claims against New GM brought by plaintiffs without the Ignition Switch Defect.  *See Pitterman*

*Opinion*, 568 B.R. at 224-27, 230.  Additionally, the Court notes that the law-of-the-case

doctrine is "a discretionary rule of practice . . . and does not preclude a court from reconsidering

its prior opinions, especially in light of an intervening change of controlling law, the availability

of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Scottish Air*

*Int'l v. British Caledonian Grp., PLC*, 152 F.R.D. 18, 24-25 (S.D.N.Y. 1993) (internal quotation

marks omitted).  Moreover, "[i]t is well established that . . . interlocutory orders and rulings . . .

are subject to modification by the . . . judge at any time prior to final judgment, and may be

modified to the same extent if the case is reassigned to another judge."  *In re "Agent Orange"*

*Prod. Liab. Litig.*, 733 F.2d 10, 13 (2d Cir. 1984).  Therefore, although the Court agrees with

Judge Glenn's interpretation of Judge Gerber's prior rulings on this front, Judge Glenn had

discretion to revisit the decisions of his predecessor in any event.  Finally, the Court agrees with

Judge Glenn — and New GM does not (and, in light of the Second Circuit Opinion, cannot)

really dispute — that "truly independent claims necessarily are not 'claims' that can be by barred

a section 363 sale order."  *Pitterman Opinion*, 568 B.R. at 230 (citing *Second Circuit Opinion*,

829 F.3d at 157).  Accordingly, the Bankruptcy Court appropriately applied the analysis from the

Second Circuit Opinion to the case of plaintiffs without the Ignition Switch Defect to conclude

that the Sale Order cannot be read, consistent with either due process or bankruptcy law, to

preclude Independent Claims predicated solely on New GM conduct.

      That leaves the question of whether the Bankruptcy Court correctly permitted the

Pitterman Plaintiffs' failure-to-warn claim to pass through the bankruptcy gate.[7]  Here, too, the

---

[7]      The Connecticut District Court did not submit the Pitterman Plaintiffs' failure-to-recall or retrofit claim to the jury, (17-CV-6120, Docket No. 29, at 1-2), so New GM's appeal is moot as to that claim.  Notwithstanding the argument by certain Post-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs to the contrary, (17-CV-6120, Docket No. 30, at 2 n.3), however, the appeal is not moot as to the failure-to-warn claim, even though the jury returned a verdict on it.  A case becomes moot "when the issues presented are no longer 'live' or the parties lack a

Court agrees with Judge Glenn. As amended, Paragraph 27 of the Pitterman Plaintiffs'
complaint alleges in its entirety: "Despite information and knowledge available and known to
defendant [New GM], including knowledge of numerous 'rollaway' incidents caused by the
defects described herein in which numerous people, especially children, were catastrophically
injured or killed, the defendant [New GM] took no steps after June 2009 to directly notify and/or
warn owners or the public of these defects." (17-CV-6120, Docket No. 29-1, at A-27). On its
face, therefore, the amended complaint alleges that New GM had independent knowledge of the
alleged defect *after* the Closing Date of the 363 Sale and that its duty to warn arose from that
knowledge; despite New GM's claims to the contrary, the amended complaint does not attempt
to "bootstrap" the knowledge or conduct of Old GM onto purportedly Independent Claims. (*See
id.* at A-59-60). New GM may ultimately be right in arguing that, given its lack of a relationship
with the Pitterman Plaintiffs and other factors, it did not have a post-sale duty to warn them.
(New GM Pitterman Br. 19, 30-31). But that is a question of *nonbankruptcy* law for the
Connecticut District Court to decide in the first instance (subject to appellate review). The sole
question for the Bankruptcy Court — and for this Court here — is whether the allegations in the
Pitterman Plaintiffs' amended complaint were sufficient to state an Independent Claim so as to
proceed through the bankruptcy gate. The Court concludes that they were.

---

legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013);
*see also, e.g.*, *Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298, 307 (2012) ("A case becomes moot
only when it is impossible for a court to grant any effectual relief whatever to the prevailing
party." (internal quotation marks omitted)). Here, the question of whether the Pitterman
Plaintiffs can bring their failure-to-warn claim as a matter of bankruptcy law is plainly not moot:
A ruling from this Court — or, ultimately, the Second Circuit — on that question would have an
effect on, and might eliminate the need entirely for, New GM's appeal from the Pitterman
Action, which is already pending before the Second Circuit.

**D. Appeals Relating to the Punitive Damages Claims of Post-Closing Accident Plaintiffs (17-CV-6083, 17-CV-6088, and 17-CV-8294)**

Next, various Post-Closing Accident Plaintiffs challenge Judge Glenn's refusal in the July 2017 Threshold Issues Opinion to allow punitive damages claims against New GM based on Old GM conduct to proceed. To the extent relevant here, Judge Glenn rested that refusal on two independent grounds. First, he ruled that the November 2015 Imputation Decision — in which Judge Gerber held that New GM did not contractually assume liability for punitive damages claims, *see* 541 B.R. at 116-21 — was the law of the case. *See July 2017 Threshold Issues Opinion*, 571 B.R. at 576. Second, Judge Glenn held that "punitive damages against New GM based on Old GM conduct are not available under federal bankruptcy law." *Id.* On appeal, Plaintiffs take issue with both rulings as well as Judge Gerber's conclusion that New GM did not contractually assume liability for punitive damages pursuant to the Sale Order. The Court need not reach the merits of the contractual argument, however, as it agrees with Judge Glenn's two other rationales for barring punitive damages based on Old GM's conduct.

First, the Court agrees that Judge Gerber's November 2015 Imputation Decision is law of the case. "Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation." *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991). Notably, Plaintiffs here do not argue as a general matter that the Bankruptcy Court abused its discretion in declining to disturb the earlier determination that New GM did not contractually assume liability for punitive damages. Instead, they contend that the doctrine does not preclude them from relitigating the issue because they were not parties to the November 2015 Imputation Decision. Plaintiffs, however, cite no precedent suggesting that a court is obligated to revisit a prior ruling on a question of law merely because certain parties did not participate in the earlier ruling or that it would be an abuse of

discretion not to do so. *Cf. Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe [sic] to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." (internal quotation marks omitted)). And indeed, courts have held that the law-of-the-case doctrine "applies to different adversary proceedings filed within the same main bankruptcy case." *In re Moise*, 575 B.R. 191, 205 (Bankr. E.D.N.Y. 2017); *see also, e.g.*, *In re Montagne*, No. 08-1024, 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("Since different adversary proceedings in the same main case do not constitute different 'cases,' it would follow that the law of the case doctrine as articulated in one adversary proceeding would apply in another adversary proceeding filed in the same case.").

      *In re Manhattan Investment Fund Ltd.*, 310 B.R. 500 (Bankr. S.D.N.Y. 2002), and *In re Schultz*, 250 B.R. 22 (Bankr. E.D.N.Y. 2000), on which Plaintiffs rely, (17-CV-6088, Docket No. 14, at 32), do not suggest otherwise. *Manhattan Investment Fund* addressed whether a decision by the district court had in fact resolved an issue of law such that the issue was now "law of the case" on remand to the Bankruptcy Court. *See* 310 B.R. at 512. Because the Bankruptcy Court found that the district court had not reached the question, either expressly or by implication, the law of the case doctrine did "not preclude further determinations of different or new issues currently before the Court." *Id.* Plaintiffs quote language from *Manhattan Investment Fund* noting that the party against whom the law of the case doctrine was being asserted — "the Trustee" — "was not a party to [a prior] action" and therefore would not be bound by a ruling in that case, *id.* at 513, but that language provides no aid to Plaintiffs here. The earlier ruling described in *In re Manhattan* arose in an action to which the Trustee was not a party at all. The same was true in *Schultz*. *See* 250 B.R. at 33-35 ("[T]he law of the case

doctrine is inapplicable to the instant action.  This is not the same litigation or a different

litigation between the same parties.").  Here, the parties dispute whether the Post-Closing

Accident Plaintiffs were parties to the specific *hearing* that gave rise to the November 2015

Imputation Decision, but (with the sole possible exception of Reichwaldt, whose situation is

discussed below) the Post-Closing Accident Plaintiffs were parties to the *case* — that is, the

broader bankruptcy proceedings — from its inception and declined to appeal the November 2015

Imputation Decision to protect their rights with respect to punitive damages.

     In any event, assuming without deciding that the Sale Order could not preclude the

punitive damages claims of Post-Closing Accident Plaintiffs because they are "future claimants,"

the Court also agrees with Judge Glenn's independent conclusion: that punitive damages against

New GM based on Old GM conduct are barred by federal bankruptcy law.  By definition,

successor liability claims derive from the liability of the predecessor entity.  *See, e.g.*, *City of*

*Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d 274, 290 (N.D.N.Y. 2012) ("'[S]uccessor

liability' is not a separate cause of action but merely a theory for imposing liability on a

defendant based on the predecessor's conduct."); *see also Tindall v. H & S Homes, LLC*, No. 10-

CV-044 (CAR), 2012 WL 369286, at *2 (M.D. Ga. Feb. 3, 2012); *In re Fairchild Aircraft Corp.*,

184 B.R. 910, 920 (Bankr. W.D. Tex. 1995), *vacated on other grounds*, 220 B.R. 909 (Bankr.

W.D. Tex. 1998).  It follows that if claims cannot be brought against a predecessor entity, they

cannot be brought against the successor.  Substantially for the reasons explained by Judge Glenn,

punitive damages claims could not have gone forward against Old GM as a matter of bankruptcy

law — and, thus, are unavailable against New GM based solely on Old GM's conduct.  *See July*

*2017 Threshold Issues Opinion*, 571 B.R. at 576-77, 579-80.  Specifically, the Bankruptcy Code

provides for full repayment of the claims of general unsecured creditors before any punitive

damages may be paid.  *See* 11 U.S.C. § 726(a)(3)-(4); *see also Kitrosser v. CIT Grp./Factoring,*

*Inc.* 177 B.R. 458, 469 (S.D.N.Y 1995) (providing that the Section 726 prioritization scheme applies to Chapter 11 proceedings). Accordingly, punitive damages would never be available against a debtor, like Old GM, which was unable to repay its general unsecured claims in full. On top of that, barring punitive damages claims against a Section 363 buyer based on the conduct of an insolvent debtor is "consistent with the general purpose of punitive damages" — to "punish the actual wrongdoer and to deter him from acting illegally again." *July 2017 Threshold Issues Opinion*, 571 B.R. at 580. After all, "in the bankruptcy context, . . . 'there is no future conduct to deter' and 'the people guilty of the misconduct would not be punished for it.'" *Id.* (quoting *In re Motors Liquidation Co.*, No. 09-50026, 2012 WL 10864205, at *11 (Bankr. S.D.N.Y. Aug. 6, 2012)). In short, because Plaintiffs would have been unable to assert punitive damages claims against Old GM as a matter of bankruptcy law, Judge Glenn correctly concluded that there is no liability for such claims to be transferred to New GM and that those claims cannot be brought against New GM.

In arguing otherwise, Plaintiffs cite only two cases: *EEOC v. SWP, Inc.*, 153 F. Supp. 2d 911 (N.D. Ind. 2001), and *EEOC v. G-K-G, Inc.*, 39 F.3d 740 (7th Cir. 1994). (17-CV-6088, Docket No. 29, at 20). Those cases, however, do not help Plaintiffs' argument. First, neither case involved a bankruptcy, and thus neither implicated the Section 726 prioritization scheme in which punitive damages are categorically unavailable against a predecessor unable to fulfill its obligations to general unsecured creditors. Second, both cases involved the "special federal common law doctrine of successor liability" for employment discrimination judgments, which represents a "departure from the more limited approach of the common law generally." *G-K-G*, 39 F.3d at 748; *see also SWP*, 153 F. Supp. 2d at 917 ("Successor liability for employment discrimination judgments is broader than the common law exceptions."). And third, the Courts in *SWP* and *G-K-G* made clear that successor liability, even under the "broader" standard

applicable in the employment discrimination context, requires a showing that the purchaser had

prior notice of the claim, if not the judgment, against the predecessor. *See, e.g.*, *SWP*, 153 F.

Supp. 2d at 917-18. In fact, *SWP* and *G-K-G* ultimately reinforce the conclusion reached by

Judge Glenn in this case. Both decisions cite to a prior opinion, *Musikiwamba v. ESSI, Inc.*, 760

F.2d 740 (7th Cir. 1985), in which the Seventh Circuit emphasized that successor liability should

not normally be imposed where, as here, the "predecessor could have provided no relief

whatsoever" because doing so "is likely to severely inhibit the reorganization or transfer of assets

of a failing business." *Id.* at 750-51. As noted above, that concern applies even more strongly in

the Section 363 context. *See July 2017 Threshold Issues Opinion*, 571 B.R. at 580.

In short, the Court affirms the Bankruptcy Court's decision precluding punitive damages

claims against New GM based on Old GM conduct.

**E. Appeals Relating to the Claims of Non-Ignition Switch Used Car Purchasers (17-CV-6083, 17-CV-6088, 17-CV-6284, and 17-CV-6289)**

In deciding Threshold Issue Three from the December 2016 Order to Show Cause, the

Bankruptcy Court held that "used car purchasers without the Ignition Switch Defect are bound

by the Sale Order and may not bring claims against New GM based on Old GM conduct.

Because used car purchasers stand in the shoes of their predecessors in interest," Judge Glenn

reasoned, "if a plaintiff purchased a used Old GM vehicle with the Ignition Switch Defect, that

plaintiff is not barred by the Sale Order and may pursue a claim against New GM to the same

extent that other Ignition Switch Plaintiffs may do so." *July 2017 Threshold Issues Opinion*, 571

B.R. at 575. That conclusion was premised on Judge Glenn's view that the Second Circuit had

held only that "Used Car Purchasers" — a subset of *Ignition Switch* Plaintiffs who had purchased

their vehicles used after the Closing Date — had been prejudiced by entry of the Sale Order and

had left undisturbed Judge Gerber's earlier holding that the rights of used car purchasers were

coextensive with those of the sellers of their vehicles because "the successor in interest to a person or entity cannot acquire greater rights than his, her, or its transferor." *April 2015 Decision*, 529 B.R. at 571; *see also July 2017 Threshold Issues Opinion*, 571 B.R. at 575 ("The Second Circuit . . . reversed Judge Gerber's determination that the Used Car Purchasers had not shown that they were prejudiced, but did not disturb Judge Gerber's ruling that owners of used cars cannot acquire more rights than the seller had.  That ruling therefore remains law of the case.").  Accordingly, Judge Glenn found that the claims of purchasers of used GM vehicles *without* the Ignition Switch Defect were barred by the Sale Order to the same extent as the claims of their predecessors in interest.

This Court concludes otherwise.  First, although the Second Circuit did "limit[] its discussion of used car purchasers to those whose cars had the Ignition Switch Defect," *id.*, that does not mean that the Court of Appeals left undisturbed Judge Gerber's conclusion that the rights of buyers are inherently coextensive with those of their sellers.  The Second Circuit distinguished between the rights of the Ignition Switch Plaintiffs (the predecessors in interest) and the Used Car Purchasers (their successors in interest) in a critical way:  While the Ignition Switch Plaintiffs fell within the scope of the Sale Order (and only escaped its bar because their due process rights had been violated), the Used Car Purchasers were not subject to the Sale Order at all.  With respect to the latter, the Court explained, "[t]here could have been no contact or relationship — actual or presumed — between Old GM and these specific plaintiffs, who otherwise had no awareness of . . . putative claims against New GM." *Second Circuit Opinion*, 829 F.3d at 157.  It follows that, "consistent with bankruptcy law," the Sale Order could not be "read . . . to cover their claims." *Id.*  By necessary implication, therefore, the Court of Appeals rejected Judge Gerber's view that the rights of purchasers of used GM vehicles are limited to the rights possessed by their predecessors in interest. *See In re Coudert Bros. LLP*, 809 F.3d 94, 99

(2d Cir. 2015) (noting that an appellate decision is binding on a lower court as to both "matters expressly decided by the appellate court and . . . issues impliedly resolved by the appellate court[ ]" (alteration in original) (internal quotation marks omitted)); *Munro v. Post*, 102 F.2d 686, 688 (2d Cir. 1939) (noting that the "law of the case" doctrine, "when used to express the duty of a lower court to follow what has been decided by a higher court at an earlier stage of the case, applies to everything decided, either expressly or by necessary implication").

The question, then, is whether the claims of the Non-Ignition Switch Plaintiffs and Non-Ignition Switch Post-Closing Accident Plaintiffs who purchased used GM vehicles after the Closing Date may go forward. The Court concludes that they may. While the Second Circuit's *holding* was limited to "Used Car Purchasers," defined as a subset of *Ignition Switch* Plaintiffs, its *analysis* regarding the possible scope of the Sale Order has broader implications. For one, it compels the conclusion that the claims of Non-Ignition Switch Post-Closing Accident Plaintiffs who purchased their GM vehicles used may proceed.[8] As those Plaintiffs purchased GM vehicles and suffered accidents after the Closing Date, they fall squarely within the scope of the Second Circuit's holding that the Sale Order cannot be applied to those who "had no relation with Old GM prior to bankruptcy." *Second Circuit Opinion*, 829 F.3d at 157. Additionally, although it is a closer call, the Court concludes that Non-Ignition Switch Plaintiffs who

---

[8] Strictly speaking, it is far from clear that the Threshold Issue Three decision was even aimed at Post-Closing Accident Plaintiffs. The July 2017 Threshold Issues Opinion merely concluded that used car purchasers without the Ignition Switch Defect were bound by the Sale Order to the same extent as their predecessors in interest. *July 2017 Threshold Issues Opinion*, 571 B.R. at 575. New GM, pursuant to the Amended Sale Agreement, assumed liability for "the post-sale accidents involving both Old GM and New GM vehicles," *April 2015 Decision*, 529 B.R. at 521, and the Sale Order therefore did not purport to bar those claims. And while New GM does not expressly address the applicability of the decision on Threshold Issue Three to used car purchasers who are Post-Closing Accident Plaintiffs, it does acknowledge that "[t]o the extent the vehicle seller (*i.e.*, an Ignition Switch Plaintiff) is not bound by the Sale Order, neither would [sic] its assignee." (17-CV-6083, Docket No. 25, at 57 n.19).

purchased GM vehicles used after the Closing Date are also not bound by the Sale Order. It is possible that some economic losses relating to non-Ignition Switch Defects might have been incurred before the 363 Sale, and therefore it is not by definition true that the general public had "no awareness of the . . . defect or putative claims against New GM." *Second Circuit Opinion*, 829 F.3d at 157. Yet, as with the used car purchasers who are Post-Closing Accident Plaintiffs, the Non-Ignition Switch Plaintiffs who purchased used vehicles after the Closing Date necessarily "had no relation with Old GM prior to bankruptcy" and thus "[t]here could have been no contact or relationship — actual or presumed — between Old GM and these specific plaintiffs." *Id.* Accordingly, the Court vacates the Bankruptcy Court's decision with respect to Threshold Issue Three and remands for further proceedings consistent with this Opinion.

**F. Reichwaldt's Appeal (17-CV-8294)**

That leaves only Reichwaldt's appeal. Beyond the arguments raised by the other Plaintiffs appealing from the July 2017 Threshold Issues Opinion, discussed above, Reichwaldt raises a "narrow" additional issue: whether "New GM contractually assumed liability for . . . punitive damages as part of the § 363 Sale in Old GM's bankruptcy." (17-CV-8294, Docket No 15 ("Reichwaldt Br."), 2). Yet, in order to reach that "narrow" issue, the Court must first get past the Bankruptcy Court's determination that *res judicata* and the law-of-the-case doctrine bar Reichwaldt from relitigating earlier decisions precluding the pursuit of punitive damages against New GM based on Old GM conduct. Reichwaldt asserts that she is not bound by the Bankruptcy Court's earlier holdings because she was not a party to the bankruptcy proceedings when the November 2015 Imputation Decision was issued and because she did not have adequate notice pursuant to the December 2016 Order to Show Cause that the Bankruptcy Court might address the contractual assumption argument in the July 2017 Threshold Issues Opinion. As discussed, however, the law-of-the-case doctrine does not turn on whether all parties to a proceeding

participated in the earlier resolution of a legal issue, and the Bankruptcy Court was not required to revisit anew the contractual assumption question each time a new party joined the bankruptcy proceedings.

Moreover, Reichwaldt's arguments concerning her notice of the December 2016 Order to Show Cause are somewhat disingenuous. There is no dispute she received the Order. Instead, her argument rests on the fact that the Order did not expressly refer to contractual assumption of liability for punitive damages. (Reichwaldt Br. 15-19). But the primary means by which New GM could have successor liability for claims arising out of Old GM's conduct is through contractual assumption of liability. *See, e.g.*, *Am. Buying Ins. Servs., Inc. v. S. Kornreich & Sons*, 944 F. Supp. 240, 249 (S.D.N.Y. 1996) ("In general, successor liability will lie when . . . there is an express or implied agreement to assume the other company's debts and obligations . . . ."). Ultimately, there were no magic words the Bankruptcy Court was required to use in the Order to Show Cause to put parties to the bankruptcy proceedings on notice that it would address contractual assumption of liability in the July 2017 Threshold Issues Opinion. Informing the parties that the availability of "successor liability claims against New GM . . . seek[ing] punitive damages" would be decided among the 2016 Threshold Issues was sufficient. (Pitterman Appendix A-4165). That is particularly true given that the phrase Reichwaldt uses repeatedly — "Contractual Assumption Argument" — appears to be an invention of hers rather than a term of art used by courts or parties in these proceedings. Moreover, *other* parties to the bankruptcy proceedings understood that the July 2017 Threshold Issues Opinion might revisit the Bankruptcy Court's prior determination that New GM had not contractually assumed punitive damages claims pursuant to the Amended Sale Agreement. (*See* 17-CV-8294, Docket No. 16, at 10-11).

Reichwaldt further argues that the 2016 Threshold Issues "grew directly out of the Second Circuit's July 2016 opinion affirming in part and reversing in part the Bankruptcy Court's April 2015 Decision and June 2015 Judgment," which in turn "had nothing to do with Non-Ignition Switch Post Closing Accident Plaintiffs and did not consider the Contractual Assumption Argument." (Reichwaldt Br. 16-17). But while the 2016 Threshold Issues emerged from the aftermath of the Second Circuit Opinion, the Order to Show Cause did not indicate that it was limited to issues expressly reserved by the Second Circuit for consideration on remand by the Bankruptcy Court. Indeed, the Second Circuit Opinion did not address in any way the availability of punitive damages against New GM premised on Old GM conduct or of any category of claims brought by Post-Closing Accident Plaintiffs. *See Second Circuit Opinion*, 829 F.3d at 170. Thus, the Order to Show Cause was more than sufficient to put Reichwaldt on notice that the July 2017 Threshold Issues Opinion might address the availability to Post-Closing Accident Plaintiffs of punitive damages claims against New GM premised on Old GM conduct. Accordingly, Reichwaldt is bound by that decision and may not separately raise her "Contractual Assumption Argument."

In any event, parties who were dissatisfied with the Bankruptcy Court's July 2017 Threshold Issues Opinion were free to — and did — appeal all aspects of that decision, including the holding on contractual assumption grounds. Reichwaldt was not among those parties. As the Bankruptcy Court noted, "Reichwaldt (despite having received notice of the December 2016 [Order to Show Cause]) did not file any papers, appear at the hearing [on the Order to Show Cause] or appeal the decision. The *July 2017 Opinion* — including the ruling on punitive damages — is [thus] *res judicata* as to Reichwaldt." *Reichwaldt Order*, 576 B.R. at 321. In her reply brief on appeal, Reichwaldt argues for the first time that she *did* appeal from the July 2017 Threshold Issues Opinion, explaining that Goodwin Proctor LLP — which took the lead in

challenging that ruling on appeal here — is representing her "in the 2016 Threshold Issues Appeal along with other Butler Wooten & Peak, LLP . . . clients." (17-CV-8294, Docket No. 19, at 4). She attributes "New GM's apparent confusion" to "statements made by [Reichwaldt's] counsel" that "counsel from Goodwin Proctor had not been representing Appellant in connection with the 2016 Threshold Issues." (*Id.*). It is well established, however, that "arguments not made in an appellant's opening brief are waived even if the appellant . . . raised them in a reply brief." *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005). Moreover, given Reichwaldt's counsel's concessions and the steps she took to prosecute this appeal separately, the Bankruptcy Court's factual finding that Reichwaldt failed to appeal from the July 2017 Threshold Issues Opinion cannot be found clearly erroneous. *See, e.g.*, *In re Great Atl. & Pac. Tea Co., Inc.*, 538 B.R. 666, 670 (S.D.N.Y. 2015) ("A district court reviews a bankruptcy court's findings of fact for clear error . . . .").

In short, the Court affirms the Bankruptcy Court's decision precluding Reichwaldt from seeking punitive damages against New GM based on Old GM conduct.

## CONCLUSION

To summarize, the Court affirms the orders and judgments of the Bankruptcy Court in part and vacates and remands them in part. More specifically, the Court holds that:

- The Bankruptcy Court's conclusion that New GM judicially admitted liability for Pillars's claim by quoting from the Original Sale Agreement in its notice of removal and answer is VACATED, (15-CV-8432), and its determination that only plaintiffs with the Ignition Switch Defect in a Subject Vehicle are Ignition Switch Plaintiffs is AFFIRMED, (17-CV-6196);

- The Bankruptcy Court's holding that the Fraudulent Concealment Claims, as defined above, are not Independent Claims and therefore cannot pass through the bankruptcy gate is VACATED, (16-CV-0098, 16-CV-0501, and 16-CV-0512);

- The Bankruptcy Court's decision that plaintiffs without the Ignition Switch Defect are not barred by the November 2015 Imputation Decision and December 2015 Judgment from pursuing Independent Claims against New GM and that the

Pitterman Plaintiffs properly asserted Independent Claims against New GM is AFFIRMED, (17-CV-6120);

- The Bankruptcy Court's conclusions that it is law of the case that New GM did not contractually assume liability for punitive damages claims based on Old GM conduct and that punitive damages against New GM based on Old GM conduct are not available as a matter of federal bankruptcy law are AFFIRMED, (17-CV-6083, 17-CV-6088, and 17-CV-8294);

- The Bankruptcy Court's determination that used car purchasers without the Ignition Switch Defect are bound by the Sale Order to the same extent as their predecessors in interest and may not bring claims against New GM based on Old GM conduct is VACATED, (17-CV-6083, 17-CV-6088, 17-CV-6284, and 17-CV-6289); and

- The Bankruptcy Court's holding that Reichwaldt is barred by *res judicata* and law of the case from seeking punitive damages against New GM based on Old GM conduct is AFFIRMED, (17-CV-8294).

The parties to the MDL proceedings should be prepared to address the implications of these holdings on the MDL at the status conference on May 31, 2018 — or, to the extent that the parties need more time to digest the holdings, should be prepared, at a minimum, to discuss the means and schedule for addressing the implications of the Court's holdings.

The Clerk of Court is directed to docket this Opinion and Order in each case referenced in the caption as well as (given the significance of this ruling to the MDL generally) in 14-MD-2543 and 14-MC-2543. Additionally, the Clerk of Court is directed close the following cases: 15-CV-8432, 17-CV-6120, 17-CV-6083, 17-CV-6088, 17-CV-6284, 17-CV-6196, 17-CV-6289, 16-CV-0098, 16-CV-0501, 16-CV-0512, and 17-CV-8294.

SO ORDERED.

Dated: May 29, 2018
New York, New York

_____
JESSE M. FURMAN
United States District Judge