UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

14-MD-2543 (JMF)
14-MC-2543 (JMF)

MEMORANDUM OPINION
AND ORDER

------------------------------------------------------------------------------x

JESSE M. FURMAN, United States District Judge:

      As a general rule, litigants in the United States are required to shoulder the costs of litigating their own cases. In the main, this is a sensible rule because it means that those who may benefit from work are responsible for its costs. In aggregate litigation, however, the value of attorney work product is often widely dispersed, benefiting not only those who hired the attorneys, but also others who are similarly situated. If only a few were made to bear the costs of legal work that benefits many, high-quality legal work would be under-incentivized and, ultimately, under-produced. Where aggregate litigation proceeds as a class action, courts solve this classic free-rider problem by permitting class counsel to recover a percentage of the common fund obtained for the class, thereby spreading the costs among those who benefited from counsel's work. *See* Fed. R. Civ. P. 23(h); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). But where aggregate litigation does not proceed as a class action — as is the case in much multi-district litigation — solving the free-rider problem requires more creativity. In that context, many courts have entered orders imposing assessments on claimants' recoveries, which are then deposited into a "common benefit fund" and disbursed to counsel that conducted work for the common benefit. *See, e.g.*, *In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256 (E.D.N.Y. 2006); *see also In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*, 617 F. App'x 136, 141 (3d Cir. 2015); *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, No. 10-2772, 2012 WL 161194 (E.D. La. Jan. 18, 2012).

In this multidistrict litigation ("MDL") — arising from alleged defects in the ignition switches and other features of certain General Motors vehicles and general familiarity with which is assumed — the Court entered such an order. *See* ECF No. 743 ("Order No. 42"). Broadly speaking, the Court's Order established a common benefit fund (the "Common Benefit Fund" or "Fund") and promulgated certain requirements and procedures regarding payment into, and distribution from, that fund. For four and a half years, there were no disputes with respect to operation of the Common Benefit Fund. But on September 27, 2019, Langdon & Emison, LLC ("L&E"), a law firm representing many individuals with claims against General Motors LLC ("New GM") — some of whom have cases pending in this MDL, some of whom have cases pending in state court, and some of whom do not have cases pending in any court — moved for a declaratory judgment clarifying that recoveries obtained by their clients with cases pending in state courts or not filed in any court are not subject to assessments pursuant to Order No. 42. ECF Nos. 7204, 7205 ("L&E Mem."). Lead Counsel — appointed by the Court to represent the interests of all Plaintiffs in the MDL, *see* ECF No. 249 ("Order No. 8") — opposes L&E's motion, insisting that L&E's clients are required to pay assessments into the Common Benefit Fund even if their cases are not pending in the MDL. ECF No. 7272 ("Opp'n"). For the reasons that follow, the Court agrees with Lead Counsel and, thus, L&E's motion is DENIED.

## BACKGROUND

In February 2014, New GM announced the recall of certain General Motors vehicles that had been manufactured with a defective ignition switch — a switch that moved too easily from the "run" position to the "accessory" and "off" positions, causing moving stalls and disabling critical safety systems. In the months that followed, New GM recalled millions of other vehicles, some for reasons relating to the ignition switch and some for other reasons. Not surprisingly,

litigation followed, in both state and federal courts. The federal cases were ultimately consolidated in this Court by the Judicial Panel on Multidistrict Litigation.

On March 26, 2015, in Order No. 42, the Court established the Common Benefit Fund to ensure that the parties for whose benefit legal work is performed share the costs and expenses associated with that work. *See* Order No. 42, at 1. Pursuant to that Order, neither Plaintiffs nor their counsel are required to pay an up-front fee in order to receive and use work product intended to serve the plaintiffs' common benefit. *Id.* ¶ 4. Instead, the Order requires New GM to withhold an assessment of a specified amount from certain settlements and judgments and to deposit that sum into the Fund. *Id.* More specifically, New GM is required to withhold assessments only from amounts paid in "Common Benefit Actions," *id.* ¶¶ 4, 32, which include, as relevant here: (1) "all cases [then] pending, as well as any cases later filed in, transferred to, or removed to this Court and included as part of the [MDL]"; (2) "all Related Actions in which plaintiffs and their counsel voluntarily execute the Participation Agreement"; and (3) "all unfiled and tolled actions of clients of Participating Counsel that would be Related Actions if filed," *id.* ¶ 11. "Related Actions," in turn, are "actions . . . that involve the same subject matter" as this MDL (not including shareholder derivative suits and securities class actions), whether filed in state or in federal courts. *Id.* ¶ 1; *see also* ECF No. 315 ("Order No. 15"), at 1. "Participating Counsel" is defined to include Lead Counsel and others, including "counsel who have been specifically approved by this Court as Participating Counsel." Order No. 42, ¶ 4; ECF No. 304 ("Order No. 13"), at 7. In Order No. 42, the Court approved as Participating Counsel all attorneys representing plaintiffs in Common Benefit Actions. Order No. 42, ¶ 15.

More than four and a half years have passed since Order No. 42 was issued, and in that time, Lead Counsel has performed a remarkable amount of work on behalf of plaintiffs in

3

Common Benefit Actions. As Lead Counsel notes, over the course of these proceedings, Lead Counsel has conducted more than one hundred depositions of GM employees (and hundreds of other case-specific depositions), reviewed more than twenty million pages of documents produced by New GM, generated thirty expert reports, briefed dozens of discovery disputes, and led pretrial and/or trial proceedings for thirteen bellwether trials, with extensive briefing on a wide range of issues. *See* Opp'n 2. These contributions have been tremendously valuable to individuals with claims against GM. Indeed, no doubt as a result in part of these efforts, the vast majority of claims against New GM have been settled. As of October 31, 2019, for example, New GM had resolved more than 3,500 separate claims (some of which were brought jointly in a single case), mostly through settlements, and only 169 personal injury or wrongful death claims — most of which were filed in the last year or so — were pending. ECF No. 7350, at 2-3.

L&E represents clients who have claims against New GM relating to the allegedly defective ignition switches. Some of their claims have not been filed in any court; others have been asserted in state courts in Missouri, Texas, and Mexico; and, more recently, many have been filed in federal court and consolidated in this MDL. On April 23, 2015, before L&E first entered this MDL, L&E received access to MDL discovery materials. *See* ECF No. 3313-2, at 1; ECF No. 3313-3, at 8.[1] Additionally, between May and November of 2015 — also before L&E first entered the MDL — L&E attorneys attended more than a dozen MDL depositions of GM employees. *See* ECF Nos. 7272-1 – 7272-15. L&E first appeared in the MDL in November

---

[1] In particular, New GM appears to have provided access to MDL discovery in response to discovery requests made by state-court plaintiffs represented by L&E. L&E objected, and instead requested that New GM respond to their state-court clients' individual requests. *See* ECF No. 3313-2, at 1-2. For reasons explained below, L&E's objection and the extent to which the firm utilized the depository have no bearing on the Court's analysis or conclusion.

4

2017, and, since then, the firm has filed nearly 250 cases in the MDL while continuing to press other clients' claims in state-court actions and outside of court altogether.

On February 28, 2019, New GM and L&E jointly announced that they had reached a settlement agreement resolving more than one hundred pre-closing personal injury and wrongful death claims, more than forty of which were not pending in this MDL. *See* ECF No. 6519. Shortly thereafter, New GM and L&E jointly moved the Court to appoint, pursuant to Rule 53(a)(1)(A) of the Federal Rules of Civil Procedure, a Special Master who would, among other things, "create a Settlement Framework that identifies the criteria relevant to evaluation of claims under" the settlement agreement, "evaluate claims pursuant to the terms of" the settlement agreement and framework, and "allocate dollar values to" the various claims. ECF No. 6596, ¶ 3. New GM and L&E also moved the Court for an order approving the creation of a settlement trust fund and retaining the Court's "continuing jurisdiction and supervision over the Trust." ECF No. 6597, at 1. The Court granted both motions. ECF Nos. 6607, 6608. On April 17, 2019, New GM and L&E reached settlement on additional claims. *See* ECF No. 6739. New GM and L&E later filed requests to appoint a Special Master and approve the creation of a settlement trust fund that were, in all material respects, identical to the requests filed previously. *See* ECF Nos. 6739, 6740. On May 7, 2019, Court again granted both motions. ECF Nos. 6746, 6747.

L&E filed the present motion on September 27, 2019.

## DISCUSSION

L&E and Lead Counsel dispute whether settlements reached by L&E's clients in certain cases — namely, cases (1) filed in state court or not filed at all (2) in which Common Benefit Work Product was (at least according to L&E) not used and neither a Participation Agreement nor a Joint Coordination Order were entered — are subject to assessment pursuant to Order No.

5

42. *See* L&E Mem. 1; ECF No. 7301 ("Reply"), at 9. More specifically, they disagree with respect to two subsidiary issues: first, whether Order No. 42, by its terms, subjects those cases to assessment, *compare* L&E Mem. 2-4, *with* Opp'n 17-18; and second, whether the Court has jurisdiction and authority to subject such cases to assessment "absent voluntary agreement or a concurrent state order," L&E Mem. 5; *see also id*. at 6-8; Opp'n 22-25.

Many of the arguments raised by L&E and Lead Counsel can await another day.[2] That is because all of the state-court and unfiled cases settled by L&E appear to be included in master settlement agreements, which are to be paid out of trusts approved by this Court (at L&E's request) and administered by a Special Master who was appointed by this Court (also at L&E's request) pursuant to Rule 53 of the Federal Rules of Civil Procedure. *See* Opp'n 23-24; Reply 4-5 (acknowledging that L&E "agree[d] to have its settlements with GM overseen by this Court"); ECF Nos. 6596, 6597, 6607, 6608, 6739, 6740, 6746, 6747. Put another way, L&E's clients did voluntarily bring their claims before this Court, and — for that reason — their claims can and should be deemed to have been "filed in" or "removed to this Court and included as part of the MDL." Order No. 42, ¶ 11.[3] It follows that the claims at issue are "Common Benefit Actions" subject to assessment pursuant to Order No. 42. *Id.* ¶¶ 4, 32.

For similar reasons, the Court also concludes that it has jurisdiction to order such assessments. L&E's sole argument to the contrary is that state-court and unfiled claimants have

---

[2] That day, however, may be imminent: On November 6, 2019, Bailey Cowan Heckaman PLLC ("BCH") filed a motion for a declaratory judgment with respect to its own unfiled cases and cases filed in Missouri state court. ECF No. 7368. That motion will be fully briefed on November 26, 2019. ECF No. 7474.

[3] That is true even though, in their motions to appoint a Special Master, L&E, other claimants' counsel, and New GM identified themselves as "the Parties." ECF Nos. 6596, 6739. Regardless of the labels used in that joint motion, L&E is not, of course, a party in this litigation, and it acted on its clients' behalf when filing the joint motion.

neither chosen to appear in federal court nor been brought into federal court by process. *See* L&E Mem. 7-8; Reply 7. But, as Lead Counsel notes, L&E clients have, in fact, chosen to invoke this Court's jurisdiction. Those claimants asked this Court to approve qualified settlement trusts, *see* ECF Nos. 6597, 6740, which are "established to resolve or satisfy one or more . . . claims . . . [a]rising out of a tort, breach of contract or violation of law," Treas. Reg. § 1.468B-1(c)(2)(ii). And the claimants expressly requested that those trusts be subject to the Court's "continuing jurisdiction and supervision." ECF No. 6597, ¶ 6; ECF No. 6740, ¶ 6. The Court granted the claimants' motions, and explicitly stated that it would retain jurisdiction over the funds. ECF No. 6607, ¶ 1; ECF No. 6746, ¶ 1.

The claimants also requested that the Court appoint a Special Master pursuant to Rule 53(a)(1)(A), which empowers a court to appoint a special master to "perform duties *consented to by the parties*." Fed. R. Civ. P. 53(a)(1)(A) (emphasis added); ECF No. 6596, ¶ 3; ECF No. 6739, ¶ 3. The state-court plaintiffs and unfiled claimants presented themselves to the Court as parties in order to obtain certain benefits, and they cannot now evade concomitant burdens by disclaiming their involvement in these proceedings. Furthermore, L&E requested the appointment of the Special Master to perform duties that have a critical impact on each client's recovery, such as "creat[ing] a Settlement Framework that identifies the criteria relevant to evaluation of claims under" the master settlement agreement, "evaluat[ing] claims pursuant to" the master settlement agreement and settlement framework, and "assign[ing] points and allocat[ing] dollar values to claims that are to be settled pursuant to" the master settlement agreement and settlement framework. ECF No. 6596, ¶ 3; ECF No. 6739, ¶ 3.

In short, L&E invoked the Court's power to administer its clients' settlements and resolve its clients' claims, and the Court exercises that power to spread the costs of Common Benefit

Work Product to all who benefited from it. *Cf. In re Genetically Modified Rice Litig. (Rice II)*, 835 F.3d 822, 828-29, 832 (8th Cir. 2016) (holding that the MDL court had jurisdiction to order an assessment on a settlement that resolved (1) claims pressed successfully in state court and appealed with respect to the punitive damages award and (2) "worthless" federal claims that were "never litigated" and would have been dismissed as precluded had only the state-court claims been settled). L&E and its clients cannot claim that they did not consent to the Court's jurisdiction merely because they oppose the manner in which the Court exercises it.

In arguing otherwise, L&E contends that the Court's oversight of the settlements "does not require any work of MDL Leadership." Reply 4. But this argument misses the mark. The relevant question is not whether Lead Counsel is involved, but whether L&E and its clients accepted the Court's jurisdiction. Put differently, whether a claim is subject to a common benefit fund assessment does not turn on whether and to what extent Lead Counsel contributed to that particular claim. *See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2012 WL 1448135, at *4 (E.D. La. Apr. 25, 2012) ("The benefit created by common labor and compensated by joint assessments is sometimes intangible and difficult to quantify in individual cases. . . . The Court is not aware of any authority recommending or authorizing that common benefit assessments in complex multidistrict litigation be subject to case-by-case review for whether any particular claimant has actually benefitted from common benefit work."). Even plaintiffs and claimants who have not used or accessed Common Benefit Work Product benefit from it. *See In re Diet Drugs*, 582 F.3d 524, 548 (3d Cir. 2009) ("The mere availability of the discovery . . . substantially influence[s] [the defendant's] evaluation of *every* plaintiff[']s case." (internal quotation marks omitted)). At a minimum, it is indisputable that New GM's and L&E's

experience litigating claims in the MDL enables more efficient valuation of claims outside of the MDL. L&E's clients certainly benefited from such efficiencies.

L&E also argues that the Court lacks jurisdiction to levy an assessment because the scope of the Court's oversight is "limited to the Trust," and the establishment of that trust "does not otherwise confer authority to this Court to determine the merits of any particular plaintiff or claimant's claims." Reply 5. L&E does not dispute, however, that the Court has jurisdiction over the administration of the settlements through the trusts, and it is within the scope of that jurisdiction that the Court imposes an assessment. The Court's jurisdiction in that regard is not merely ministerial, as the Special Master's determinations will affect the size of each claimant's recovery. ECF No. 6596, ¶ 3; ECF No. 6739, ¶ 3. In any event, the Court may issue collateral orders even if, absent the settlements, the Court could not have reached the merits of the claims. *See In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 119, 125-26 (2d Cir. 2010) (stating that the panel, although it was unnecessary to reach the issue, was "in sympathy" with the concurring opinion that district courts may levy assessments on settlements of cases in which there are pending motions to remand for lack of subject-matter jurisdiction).

## CONCLUSION

For the foregoing reasons, the Court holds that Order No. 42 applies to all settlements resolving claims asserted by L&E's clients that were part of the master settlement agreements submitted to this Court, without regard for whether those claims were pending in state court or no court at all. Accordingly, L&E's motion for a declaratory judgment is DENIED.[4]

---

[4] The denial is without prejudice to renewal if it turns out that not all of the claims at issue were submitted to the Court as part of the master settlement agreement. If that is the case, L&E and Lead Counsel should confer and, within two weeks of this Memorandum Opinion and Order, submit a joint letter to the Court proposing how to proceed.

That said, the dispute between L&E and Lead Counsel and the new motion filed by BCH, *see supra* note 2, raise the question of whether Order No. 42 should be clarified or otherwise modified (for example, to expand its application, if appropriate, to the full extent of the Court's jurisdiction and authority to impose common benefit fund assessments). The Court did not need to resolve the disagreements between L&E and Lead Counsel over the interpretation and scope of Order No. 42 only because L&E's clients invoked the Court's jurisdiction by voluntarily submitting their settlements to the Court. In the next dispute (perhaps BCH's), the Court may have to confront those issues — and, in any event, counsel and parties negotiating settlements should understand whether those settlements will be subjected to a common benefit fund assessment under Order No. 42. Counsel — including L&E and BCH — should confer and, **within two weeks of this Memorandum Opinion and Order**, submit a joint letter to the Court with respect to whether Order No. 42 should be clarified or modified and, in the event of disagreement, proposing a procedure to resolve the issue.

The Clerk of Court is directed to terminate ECF No. 7204.

SO ORDERED.

Dated: November 8, 2019
New York, New York

JESSE M. FURMAN
United States District Judge