**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>GENERAL MOTORS LLC IGNITION SWITCH LITIGATION<br><br>This Document Relates to:<br><br>*ALL ECONOMIC LOSS ACTIONS* | No. 14-MD-2543 (JMF) |

**DECLARATION OF ELIZABETH J. CABRASER IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF CLASS FOR PURPOSES OF SETTLEMENT, APPROVAL OF NOTICE PROCEDURES, AND APPOINTMENT OF CLASS COUNSEL &
<u>CLASS REPRESENTATIVES</u>**

I, Elizabeth J. Cabraser, declare under penalty of perjury as follows: [1]

1. I am a partner at Lieff, Cabraser, Heimann & Bernstein, LLP ("Lieff Cabraser"). I respectfully submit this declaration in support of the Parties' *Joint Motion for Preliminary Approval of Class Settlement, Approval of Notice Procedures, and Appointment of Class Counsel & Class Representatives* (the "Motion"). Based on personal knowledge or discussions with counsel in my firm of the matters stated herein, if called upon, I could and would competently testify thereto.

2. Pursuant to Order No. 8, *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 14-md-02543-JMF (S.D.N.Y. 2014), I serve as Plaintiffs' Co-Lead Counsel with particular responsibility for the Economic Loss part of the MDL Action along with Steve W. Berman, of Hagens Berman Sobol Shapiro LLP ("Hagens Berman").

3. Lieff Cabraser Heimann & Bernstein LLP is a national law firm with offices in Nashville, New York, and San Francisco. Our practice focuses on complex and class action litigation involving product liability, consumer, employment, financial, securities, environmental, and personal injury matters. I have attached a copy of Lieff Cabraser's current firm resume, which shows some of the firm's experience in complex and class action litigation and gives biographical information about Lieff Cabraser's partners and associates. *See* Ex. A.

4. Lieff Cabraser is one of the oldest, largest, most respected, and most successful law firms in the country that represents plaintiffs exclusively, in class actions and mass tort litigation. Lieff Cabraser is frequently recognized as one of the top plaintiffs' law firms in the country. For example:

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning assigned to such terms in the Settlement Agreement.

a. In 2020, Benchmark Litigation named Lieff Cabraser "California Plaintiffs Firm of the Year." Last year, Benchmark Litigation named Lieff Cabraser to its "Top 10 Plaintiff Firms in America" list, the National Law Journal chose our firm as one of nine "Elite Trial Lawyers" nationwide, and Law360 selected Lieff Cabraser as one of the "Top 50 Law Firms Nationwide for Litigation," highlighting our firm's "laser focus" and noting that Lieff Cabraser routinely finds itself "facing off against some of the largest and strongest defense law firms in the world."

b. For the past six years, U.S. News and Best Lawyers selected Lieff Cabraser as a national "Law Firm of the Year." In every year other than 2013, we were recognized in the category of Mass Torts Litigation/Class Actions – Plaintiffs. Only one law firm in each practice area receives the "Law Firm of the Year" designation.

c. For the past fourteen years, The National Law Journal recognized Lieff Cabraser as one of the nation's top plaintiffs' law firms, and we are members of their Plaintiffs' Hot List Hall of Fame.

d. The firm has received a number of other recent honors, awards, and recognition, including the National Law Journal's "2017 Elite Trial Lawyers," Law360's "Most Feared Plaintiffs' Firms," and Benchmark Litigation's "Top 10 Plaintiffs Firms in America."

5. I have represented individual plaintiffs and plaintiff classes in financial, consumer, employment, civil rights, human rights, and tort cases since my admission to the bar in 1978. I have served as court-appointed counsel in multidistrict litigation ("MDLs") since 1981. Over the last two decades, I have been appointed to a lead role in eight significant nationwide automobile defect/consumer fraud class actions, including *In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2672 (N.D. Cal.), *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:17-md-2777-EMC (N.D. Cal.), and *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (2d Cir. 1998). As a lead counsel in automotive-related cases, I negotiated and achieved settlements in *Chrysler-Dodge-Jeep EcoDiesel, Volkswagen "Clean Diesel," Bridgestone/Firestone, Toyota Unintended Acceleration, Ford Explorer, GM Pickups, Sears Auto Center*, and *Hanlon v. Chrysler*, among others.

6. I have served as lead counsel, as class counsel, on plaintiffs' executive committees, or on plaintiffs' steering committees in over 50 MDLs and coordinated or consolidated proceedings. In March 2018, I was inducted into the National Trial Lawyers Association's Trial Lawyer Hall of Fame, and in 2017 I received the *National Law Journals* Lifetime Achievement Award. In 2018, I also received the Public Justice "Champion of Justice" award for my work in consumer rights. I have had a career-long interest in promoting the integrity and effectiveness of our civil justice system, and have devoted substantial time to the work of the American Law Institute, on whose Council I serve; to service as a member of the Advisory Committee for Federal Civil Rules; to teaching complex litigation, class actions, and consumer law as an adjunct professor at Columbia and Berkeley Law Schools, and as an active member of the American Academy of Arts and Sciences. I serve as Executive Editor of the American Bar Association Class Actions & Derivative Suits Committee's annual "Fifty-State Survey: The Law of Class Action."

7. In addition to my own experience as a class-action litigator in vehicle-related cases, the partners and associates in my firm working on this matter also have extensive experience in class-action and/or vehicle-related litigation. This team includes partner Rachel Geman, who has represented plaintiffs in MDL consumer litigation as Co-Lead Class Counsel and/or on Plaintiffs' Steering Committee, and who is an AV-Preeminent rated attorney recognized by *Best Lawyers* (2012-2017, 2019) and *Super Lawyers* (2011, 2013-2019). The Lieff Cabraser partners, associates, and staff who have contributed time to this MDL have, collectively, worked on all matters and were specifically staffed to handle aspects of the case with which they had experience, whether trial preparation/trial, expert work, key depositions, legal analysis, and other responsibilities.

8. Lieff Cabraser has a decades-long history of serving as court-appointed lead class counsel in large vehicle-related class and complex MDL and other actions. In addition to serving as Court-appointed Co-Lead Counsel in this litigation, Lieff Cabraser has served as lead counsel in *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 (N.D. Cal.), lead counsel in *In re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales, Practices & Products Liability Litigation*, MDL No. 2777 (N.D. Cal.), one of three court-appointed lead counsel *In re Navistar Maxxforce Engines Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2590 (N.D. Ill.) and one of five Court-appointed lead counsel in *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, No. 10-ML-02151 (C.D. Cal.). Other examples of large, complex class actions in which Lieff Cabraser served as one of the court-appointed lead counsel include *In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, MDL No. 1373 (S.D. Ind.); *In re Mercedes-Benz Tele Aid Contract Litigation*, MDL No. 1914 (D.N.J.); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998); and *In re Whirlpool Corporation Front-Loading Washer Products Liability Litigation*, 678 F.3d 409 (6th Cir. 2012), *reh'g en banc denied*, 2012 U.S. App. LEXIS 12560 (June 18, 2012), *vacated*, 133 S. Ct. 1722 (2013), *reinstated*, 722 F.3d 838 (6th Cir. 2013); *see also Butler v. Sears, Roebuck and Co.*, 2012 U.S. App. LEXIS 23284 (7th Cir. Nov. 13, 2012), *reh'g en banc denied*, 2012 U.S. App. LEXIS 26202 (Dec. 19, 2012), *vacated*, 133 S. Ct. 2768 (2013), *reinstated*, 2013 U.S. App. LEXIS 17748 (7th Cir. Aug. 22, 2013), *cert. denied*, 2014 U.S. LEXIS 1507 (U.S. Feb. 24, 2014).

A. **The Litigation**

9. Lieff Cabraser has represented the Economic Loss Plaintiffs in this litigation and the Bankruptcy Action for over five years. Lieff Cabraser filed one of the first consumer class

actions regarding the Ignition Switch Defect, *Esperanza Ramirez, et al v. General Motors,* and took a leading role in coordinating the litigation with other counsel across the country during the MDL petition phase, culminating in the centralization of these proceedings. On June 24, 2014, I was appointed one of the Temporary Co-Lead Economic Loss Plaintiffs' Counsel in the MDL Action, and on August 15, 2014, I was appointed Co-Lead Plaintiffs' Counsel for Economic Loss claims in the MDL Action.

10. Each Co-Lead Plaintiffs' Counsel participated in a competitive leadership application process in the MDL Action during which we established, and the MDL Court recognized, our qualifications, experience, and commitment to the litigation. Indeed, the criteria the MDL Court considered in appointing Co-Lead Counsel was substantially similar to the considerations set forth in Rule 23(g). *Compare* Order Nos. 5 & 8, *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 14-md-02543-JMF (S.D.N.Y. 2014), *with Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 130-31 (S.D.N.Y. 2011) (quoting Fed. R. Civ. P. 23(g)).

11. As Co-Lead Plaintiffs' Counsel, the Lieff Cabraser team and I have been involved in all aspects of case prosecution and management in this litigation and the MDL Action. These efforts include, among other things: the investigation, preparation, and filing of the more than 1600 page Fifth Amended Consolidated Complaint; development of an extensive factual record from New GM and third parties through review of more than 23 million pages of documents and deposition of hundreds of witnesses; ongoing coordination with designated counsel in the Bankruptcy Court; litigation of a number of dispositive and non-dispositive issues in the MDL Court and in the Bankruptcy Court, including appeals of same; multiple rounds of briefing on motions to dismiss, summary judgment, class certification, and discovery issues; trial preparation

work; extensive work on expert and damage valuation matters; and negotiation of the Settlement Agreement.

12. Lieff Cabraser remains fully committed to dedicating the necessary resources and collaborating with Co-Lead Plaintiffs' Counsel for the benefit of the Class and Subclasses. To date, Lieff Cabraser has contributed $3,500,000 to the common benefit assessment fund ($665,000 of which has been reimbursed pursuant to Court orders), and an additional $688,897.78 in unreimbursed held costs. Lieff Cabraser's total net expenses to date are $3,523,897.78. Lieff Cabraser has also dedicated more than 38,636 hours to this MDL Action.

13. The Settlement Agreement was negotiated by counsel for the Plaintiffs, New GM, and the Motors Liquidation Company General Unsecured Creditors Trust (the "GUC Trust") in good faith and at arm's length. The Settlement Agreement resulted from extensive negotiations between and among experienced counsel for the Parties, under the auspices of a respected and experienced Court-ordered mediator, former federal judge Hon. Layn Phillips. At multiple in-person mediation sessions, the Parties extensively, and at times contentiously, discussed the merits of the claims and defenses and the relief available to the Class. These discussions were followed by lengthy telephone conferences, as well as exchanges of multiple drafts and related materials.

14. In light of the inherent risks and costs associated with litigation, the Settlement Agreement is fair, reasonable, and adequate, and clearly falls above the lowest rung in the range of reasonableness. This litigation has been ongoing for years, consuming large sums of money and countless hours of labor for the Parties and this Court. In the absence of settlement, there is a high likelihood of even more expensive, protracted litigation that will expose the Plaintiffs to significant risk and uncertainty. For a successful path forward, in the MDL, Plaintiffs

realistically would first need to prevail on an appeal in the Second Circuit. Especially to the extent the appeals implicates issues of California state law, this could also involve litigation in the California Supreme Court. This will be a lengthy and uncertain process. If the Second Circuit declines to take the appeal, Plaintiffs and GM will have to litigate, among other things, the propriety and admissibility of revised economic loss damage models. Further, even if Plaintiffs were to succeed on appeal, they would immediately face a number of serious and costly challenges, including pending class certification and renewed summary judgment motions. Even if, in the best case scenario, the many pending motions were resolved in Plaintiffs' favor, in the absence of settlement the Plaintiffs would still face a long road to recovery, including trial, post-trial motions, and an almost inevitable appeal, with no guarantee of success. Additionally, as a matter of economic reality and proportionality, this litigation involves older vehicles, which continue to depreciate and reach the end of their useful lives in the normal course. Already, many have gone out of service and will continue to do so as the litigation proceeds. Continuing litigation will take time, and that time impacts the damages models, and decreases the value and utility of economic remedies to the class.

15. In my opinion, and that of Mr. Berman, the Settlement provides adequate relief to Class Members that substantially reduces costs and the expenditure of resources, while eliminating the risk of uncertain litigation outcomes. The proposed Settlement Class would receive a meaningful and tangible present recovery— $120 million in monetary relief—to be distributed in a reasonable time period. The relief for economic loss is in addition to the substantial benefits that have been paid to those who suffered personal injury or death; a $595 million voluntary personal injury/wrongful death fund; and a $900 million penalty GM has paid in connection with federal probes. In its structure, the Settlement also incentivizes Class

Members who still possess Subject Vehicles to make the necessary repairs, thereby serving an important public safety interest.

16. The settlements, compromises, releases and transfers contemplated in the Settlement Agreement are fair, reasonable and given in exchange for valuable and reasonably equivalent consideration.

17. The Settlement Agreement treats Class members equitably relative to each other. The proposed allocation was issued after presentations made by Allocation Counsel representing each of the five Settlement Subclasses to the Hon. Layn R. Phillips. The Allocation Decision issued by Judge Phillips provides a crucial component for a straightforward and effective means of distributing the Common Fund to the Settlement Class, and treats Settlement Class Members equitably relative to each other.

18. Further, based on my significant experience in complex consumer class action litigation and my observations during the course of this case, it is my professional opinion that the named Plaintiffs/proposed Settlement class and Subclass Representatives willingly, constructively, and effectively contributed to the prosecution of the claims on behalf of the Class. All Plaintiffs have actively participated in the litigation by producing extensive fact sheets, participating in discovery where requested, and communicating with counsel. Plaintiffs in the bellwether states also sat for all-day deposition. Plaintiffs have demonstrated an understanding of the nature of their claims and their duties as class representatives over the course of this hard-fought and longstanding litigation involving claims in two courts.

I declare under penalty of perjury that the forgoing is true and correct.

Executed in San Francisco, California, this 27th day of March 2020.

*/s/ Elizabeth J. Cabraser*_____
Elizabeth J. Cabraser

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on March 27, 2020, which will send notification of such filing to the e-mail addresses registered.

                                                    */s/ Steve W. Berman*
                                                    Steve W. Berman