UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>GENERAL MOTORS LLC IGNITION SWITCH LITIGATION<br><br>*This Document Relates to:*<br><br>*ALL ECONOMIC LOSS ACTIONS* | No. 14-MD-2543 (JMF) |

**DECLARATION OF COURT-APPOINTED ECONOMIC LOSS MEDIATOR, LAYN R. PHILLIPS, IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

I, LAYN R. PHILLIPS, declare under penalty of perjury as follows:

1. I submit this Declaration in my capacity as the MDL Court-Appointed Economic Loss Settlement Mediator in the above-captioned matter and in connection with the Joint Motion for Preliminary Approval of Class Settlement, by Plaintiffs, New GM, and the GUC Trust, pursuant to Federal Rule of Civil Procedure 23.[1]

2. Pursuant to a court order entered on September 11, 2017 (Docket No. 292), the MDL Court selected me to serve as mediator to facilitate and supervise confidential settlement discussions pertaining to the economic loss claims asserted in MDL 2543. All participants agreed that the entire mediation process was to be regarded as settlement negotiations under Rule 408 of the Federal Rules of Evidence, protecting disclosure made during such process from later discovery, dissemination, publication and/or use in evidence. By making this declaration, neither the Parties nor I waive in any way the provisions of this confidentiality agreement or the protections of Rule 408. While I cannot disclose the contents of the mediation negotiations, the Parties have authorized me to inform the Court of the procedural and substantive matters set forth below to be used in support of their Joint Motion for Preliminary Approval of Class Settlement. Thus, without in any way waiving the mediation privilege, I make this declaration based on personal knowledge.

**I. BACKGROUND AND QUALIFICATIONS**

3. I have served as a United States District Judge, a United States Attorney, and I was a litigation partner with the firm of Irell & Manella LLP. Presently, I am a mediator and arbitrator with my own alternative dispute resolution company, Phillips ADR Enterprises ("PADRE"), based in Corona Del Mar, California. I am a member of the bars of Oklahoma, Texas, California, and the District of Columbia, as well as the U.S. Courts of Appeals for the Ninth and Tenth Circuits and the Federal Circuit.

---

[1] Capitalized terms not defined herein have the definitions set forth in the Parties' Settlement Agreement.

4. I earned my J.D., as well as my Bachelor of Science Degree in Economics, from the University of Tulsa. I completed two years of L.L.M. work at Georgetown University Law Center in the area of economic regulation of industry.

5. After serving as an antitrust prosecutor and an Assistant United States Attorney in Los Angeles, California, I was appointed by President Reagan to serve as United States Attorney for the Northern District of Oklahoma, where I served for approximately four years. I was then appointed by President Reagan to serve as a United States District Judge for the Western District of Oklahoma. While on the bench, I presided over more than 140 federal trials and sat by designation on the United States Court of Appeals for the Tenth Circuit. I also presided over federal cases in Texas, New Mexico, and Colorado.

6. I left the federal bench in 1991 and joined Irell & Manella, specializing in alternative dispute resolution, complex civil litigation, and internal investigations. In 2014, I left Irell & Manella to found PADRE where I focus exclusively on providing mediation and other alternative dispute resolution services.

7. Over the past 29 years, while at Irell & Manella and since then at PADRE, I have served as a mediator and arbitrator in connection with large, complex cases, including numerous consumer class action lawsuits such as this one.

## II. THE ARM'S-LENGTH SETTLEMENT NEGOTIATIONS

8. As noted above, I was appointed by the Court on September 11, 2017 to serve as mediator to facilitate discussions among the parties to resolve Plaintiffs' economic loss claims, which they sought to assert on behalf of the Class in the MDL. I understand from counsel for New GM and Plaintiffs' Class Counsel that a settlement demand to New GM from Plaintiffs' Class Counsel in March 2016 was unsuccessful, as was another settlement demand from Plaintiffs' Class Counsel to New GM in March 2017. Later that year, on August 11, 2017, the Court ordered New GM and Plaintiffs' Class Counsel to propose a procedure for appointing a mediator for economic loss claims, and the Court selected me pursuant to the process proposed by counsel for New GM and Plaintiffs.

9. On October 10, 2017, my office confirmed with Plaintiffs' Class Counsel and New GM's Counsel a mediation date for December 1, 2017. On November 7, 2017, Plaintiffs' Class Counsel and New GM's Counsel submitted opening mediation briefs to PADRE, and both parties submitted reply briefs on November 21, 2017. Their submissions included multiple exhibits, as did other of their later submissions, including various motions and other pleadings filed in the MDL and Bankruptcy proceedings, as well as hearing transcripts and excerpts of proceedings in both courts.

10. Plaintiffs' Class Counsel and New GM met with me for the December 1, 2017 mediation session at my PADRE office in Corona del Mar, California. Both sides made adversarial presentations to me, in which they vigorously sought to maximize the benefits to their respective clients. After a full-day mediation session, no settlement had been reached. I concluded that further litigation developments would need to occur before the next mediation session, including dispositive motion practice and an opportunity for New GM to respond to Plaintiffs' expert reports. I proposed tentatively reconvening the mediation in April 2018. Ultimately, counsel for Plaintiffs and New GM informed me that an April 2018 mediation session would be premature and

unproductive, so no mediation session occurred at that time.

11. On August 22, 2018, my office confirmed with Plaintiffs' Class Counsel and New GM's counsel a two-day mediation session for October 19 and October 26 at PADRE's Corona del Mar office. On October 11, 2018, I received supplemental adversarial materials along with status reports on developments regarding the economic loss claims in both MDL 2543 and the Bankruptcy Court. The parties' perspectives reflected very different assessments of the litigation proceedings in the courts, with each side advocating vigorously for their view of possible litigation outcomes.

12. On October 19, 2018, counsel for Plaintiffs and New GM participated in a full-day mediation session. In independent caucus sessions with me and then in joint sessions facilitated by me, over the course of the day, the Parties negotiated various non-monetary, structural aspects of a potential resolution.

13. On October 26, 2018, counsel for Plaintiffs and New GM convened at my offices for a third full day of mediation. In independent caucus sessions with me and then in joint sessions facilitated by me, over the course of the day, the Parties' negotiations focused upon a potential Common Fund payment by New GM for the benefit of the Class.

14. Negotiations over the two-day session on October 19 and October 26 were hard fought and concluded with a final demand from Plaintiffs' Class Counsel to New GM. On November 1, 2018, New GM's counsel informed me that New GM rejected the final demand by Plaintiffs' Class Counsel.

15. Nine months later, on August 6, 2019, Judge Furman issued an order granting New GM's motion for summary judgment on named Plaintiffs' economic loss benefit-of-the-bargain damages claims for the bellwether states of California, Missouri, and Texas, and noting that "given that changed landscape, it may well make sense for the parties to revisit the issue of settlement." (*Id.* at 43.) (Dkt. 7019). The Court subsequently denied Plaintiffs' motion for reconsideration but granted their request to certify the Court's ruling for interlocutory review. (Dkt. 7616)

16. The next day, on August 7, 2019, Plaintiffs' Class Counsel shared the Court's opinion with me and inquired as to my availability to facilitate an in-person mediation session.

17. Two new participants who were not involved in the prior mediations, the Motors Liquidation Company GUC Trust (the "GUC Trust") and counsel for the Participating Unitholders (as defined in the Settlement Agreement, they are "certain unaffiliated holders in excess of 65% of the beneficial units of the GUC Trust" represented by Akin Gump Strauss Hauer & Feld LLP) voluntarily agreed to participate in the new mediation. I understand from the Parties' submissions to me at various of the mediation sessions, including Bankruptcy Court filings, that the GUC Trust and Plaintiffs had for years been vigorously litigating in the Bankruptcy Case before Judge Glenn and had made several prior attempts to settle their disputes. I received the hearing transcript of a conference on August 12, 2019, where Judge Glenn noted that Judge Furman's summary judgment opinion had implications for Plaintiffs' related motions to assert economic loss claims in the Bankruptcy Court against the GUC Trust which overlap with their claims asserted against New GM in MDL 2543.

18. On August 19, 2019, my office confirmed with all counsel – for Plaintiffs, New GM, the GUC Trust and Participating Unitholders – a mediation session for September 11, 2019

to occur at PADRE's Corona del Mar office.

19. Prior to the session, counsel for the Parties each submitted mediation statements per my request. My office distributed the submissions to all Parties so that each knew of the others' respective adversarial positions ahead of our in-person mediation session.

20. On September 11, 2019, counsel for Plaintiffs, New GM, the GUC Trust and Participating Unitholders convened at PADRE's office for a full-day mediation. In break-out sessions with one or more of the participants, the Parties negotiated in a manner always seeking to maximize the benefits to their respective clients.

21. I am informed that on September 26, 2019, counsel for the Participating Unitholders informed Plaintiffs' Class Counsel and counsel to New GM that the GUC Trust / Participating Unitholders were rejecting a joint demand advanced by Plaintiffs' Class Counsel and New GM to the GUC Trust and counsel to the Participating Unitholders at the September 11 mediation. Arm's-length negotiations subsequently continued, with demands and counter-offers facilitated through me.

22. On October 10, 2019, counsel for the GUC Trust, with the full support of counsel for the Participating Unitholders, conveyed a settlement proposal to counsel for New GM and Plaintiffs, copying me on the proposal.

23. The next day, on October 11, 2019, I conveyed a new demand from Plaintiffs' Class Counsel to New GM.

24. On November 1, 2019, New GM's counsel sent me a proposed term sheet and authorized me to share it with counsel for Plaintiffs, the GUC Trust and Participating Unitholders, which I did. A week later, on November 8, 2019, I reported to New GM's counsel that Plaintiffs' Class Counsel rejected New GM's proposal, and I conveyed Plaintiffs' Class Counsel's new demand.

25. On November 20, 2019, counsel for Participating Unitholders proposed an in-person mediation session to be held in New York in December.

26. On November 27, 2019, New GM's counsel sent me a counter-offer to Plaintiffs' November 8 settlement demand, which I shared with counsel for Plaintiffs, the GUC Trust and Participating Unitholders. New GM also agreed to meet in December for another in-person mediation session.

27. On December 10, 2019, I conducted a mediation session with the Parties in New York. Per my recommendation, Plaintiffs' Class Counsel and New GM engaged in hard-fought bilateral negotiations resulting in a global proposal that I conveyed to the GUC Trust. The GUC Trust rejected the proposal, and the mediation session ended.

28. Counsel for Plaintiffs and New GM then asked me to facilitate an in-person mediation session to include counsel for the GUC Trust and Participating Unitholders in early January 2020.

29. On January 8, 2020, I facilitated an in-person mediation session with counsel for Plaintiffs, New GM, the GUC Trust and counsel for the Participating Unitholders. After much

arm's-length negotiation, in separate break-out sessions with me and in some joint sessions that I facilitated, the Parties reached a tentative agreement as to certain key settlement terms that were memorialized over the next week. Those terms were contingent upon (i) the Parties negotiating and reaching a final, definitive, mutually acceptable and binding Settlement Agreement; (ii) Plaintiffs' Class Counsel and New GM reaching agreement on proposed Attorneys' Fees and Expenses to be negotiated and agreed under my supervision, and (iii) Court approval.

30. On each of the next three days, on January 9, 10, and 11, 2020, I conducted multiple, separate phone calls with counsel for Plaintiffs and counsel for New GM in which each Party conveyed to me their respective demands and counter-offers regarding a maximum amount of proposed Attorneys' Fees and Expenses. Counsel for Plaintiffs and New GM did not speak directly with one another; rather, all negotiations regarding proposed Attorneys' Fees and Expenses occurred with each side conveying their positions to me and I, in turn, relating that position to opposing counsel.

31. On the afternoon of January 11, 2020, I informed counsel for Plaintiffs, New GM, the GUC Trust and Participating Unitholders that the dispute between Plaintiffs' Class Counsel and New GM over proposed Attorneys' Fees and Expenses was resolved, and I encouraged the parties to move forward to negotiate and draft the settlement documents.

32. I received the hearing transcript of the February 5, 2020 Case Management Conference in Bankruptcy Court, where the Motors Liquidation Company Avoidance Action Trust ("AAT") stated to Judge Glenn that it considered itself ordered to mediation. The mediation between the Class Action Plaintiffs' Counsel, New GM and AAT went forward on February 14, 2020. All sides made adversarial presentations to me, in which they vigorously sought to maximize the benefits to their respective clients. After a full-day mediation session, no settlement had been reached.

33. On or around February 14, 2020, Plaintiffs' Class Counsel informed me that they had solicited volunteers from members of the Executive Committee to serve as Allocation Counsel—*i.e.*, separate counsel representing five Subclasses for the purpose of advocating allocation of the Net Common Fund to members of each Subclass—following which Allocation Counsel were established. Plaintiffs' Class Counsel asked if I would conduct a process whereby I would issue an Allocation Decision after advocacy by the Allocation Counsel. I agreed to do so.

34. On February 21, 2020, I held a mediation session where I heard from each Allocation Counsel in which they advocated for their own Subclass. I had subsequent mediation submissions from, and follow-up communications with, all of the Allocation mediation participants.

35. My Allocation Decision, which I understand will be an Exhibit to the Settlement Agreement, describes the materials I considered and the process by which I reached my decision on allocation of the Net Common Fund.

36. From time to time up through the date of this Declaration, counsel for various of the Parties informed my staff and me of their work negotiating the terms of and drafting a Settlement Agreement and other related documents and motions to be filed in the MDL 2543 Court and the Bankruptcy Court.

37. The two-and-a-half-years-mediation process was an extremely hard-fought and

lengthy negotiation from beginning to end. Although I cannot disclose specifics regarding the Parties' positions, there were many complex issues that required significant thought and practical solutions. Throughout the mediation process, the negotiations between the Parties were vigorous and conducted at arm's length and in good faith. I was in a position to evaluate the substance of the proposals made by counsel, and there was no indication of collusion at any point. At each step of the way, over the course of several years, counsel for the Parties advocated zealously on behalf of their clients working to maximize the settlement outcome to the benefit of their respective clients in a highly adversarial set of mediations.

### III.  CONCLUSION

38.  I strongly support the Court's approval of the Settlement in all respects. Based on my experience as a litigator, a former United States District Judge and a mediator, I believe that the Settlement represents a recovery and outcome that is reasonable, adequate and fair for the Class and Subclasses and all Parties involved.

39.  I further believe the Settlement is in the best interests of the Parties, allowing each to avoid the burdens and risks associated with litigating claims of this complexity to trial.

I declare under penalty of perjury that the foregoing facts are true and correct and that this declaration was executed this 26th day of March, 2020.

_____
LAYN R. PHILLIPS
Former U.S. District Judge

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on March 27, 2020, which will send notification of such filing to the e-mail addresses registered.

*/s/ Steve W. Berman*
Steve W. Berman