```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IN RE:                                                                      14-MD-2543 (JMF)
                                                                            14-MC-2543 (JMF)
GENERAL MOTORS LLC IGNITION SWITCH LITIGATION
                                                                            OPINION AND ORDER
------------------------------------------------------------------------x
```

**[Relating to the Allocation of Economic Loss Counsel's Fees and Expenses]**

JESSE M. FURMAN, United States District Judge:

In December 2020, the Court granted final approval to the class action settlement of economic loss claims in this long-running multidistrict litigation ("MDL") arising out of defects in, and the recall of, millions of General Motors vehicles. The Court also awarded Plaintiffs' counsel more than $24 million in attorneys' fees and nearly $10 million for expenses, but deferred the question of how to allocate these funds among the many law firms involved in litigating the class members' claims pending a proposal from Class Counsel. Now pending is Class Counsel's request for approval of a proposed allocation that assigns the fifty-three relevant law firms to one of three tiers and awards the firms in each tier a specified percentage of its "lodestar." Notably, of the fifty-three law firms that would receive fees or costs under Class Counsel's proposed allocation, only three object. For the reasons that follow, the Court overrules the principal objections of these three law firms, but reserves judgment on final approval pending some additional information needed to evaluate the proposal.

## BACKGROUND

The procedural history of this complex litigation has been recounted in a host of prior opinions and orders, familiarity with which is assumed. In February 2014, General Motors LLC ("New GM") announced the recall of certain General Motors vehicles that had been manufactured with a defective ignition switch that moved too easily from the "run" position to the "accessory" and "off" positions, causing moving stalls and disabling critical safety systems. In the months that followed, New GM recalled millions of other vehicles, some for reasons relating to the ignition switch and some for other

reasons. Not surprisingly, litigation followed, in both state and federal courts. The federal cases were ultimately consolidated in this Court by the Judicial Panel on Multidistrict Litigation.

**A. MDL Order Nos. 8 and 13**

At the outset of the litigation, the Court entered several case management orders relevant here. First, in MDL Order No. 8, the Court appointed Steve W. Berman, Elizabeth J. Cabraser, and Robert C. Hilliard as Lead Counsel for Plaintiffs and appointed ten other attorneys to serve as a Plaintiffs' Executive Committee. *See* ECF No. 249 ("MDL Order No. 8"), at 3.[1] Second, the Court entered MDL Order No. 13, which, "define[d] the authority, duties, and responsibilities" of the Plaintiffs' leadership and "set specific guidelines and rules for staffing, fees, expenses, and billing records." ECF No. 304 ("MDL Order No. 13"), at 1. The Court explained that "Lead Counsel will be responsible for prosecuting any potential common benefit claims, as well as coordinating the pretrial proceedings conducted by counsel for the individual Plaintiffs." *Id.* at 1-2. The Order then listed nineteen specific tasks and duties with which Lead Counsel was entrusted, including "determin[ing] . . . and present[ing] . . . to the Court and opposing parties the position of the Plaintiffs on matters arising during the coordinated pretrial proceedings"; "coordinat[ing] the initiation and conduct of discovery on behalf of the Plaintiffs"; "delegat[ing] specific tasks to other counsel"; "organiz[ing] themselves and agree[ing] on a plan for conducting the MDL on behalf of all Plaintiffs"; "brief[ing] and argu[ing] motions for the Plaintiffs and fil[ing] opposing briefs and argu[ing] motions and proceedings initiated by other parties (except as to matters specifically directed to individual Plaintiffs and their counsel)"; "maintain[ing] time and expense records for work performed, costs incurred and other disbursements made for any potential common benefit claim"; and "monitor[ing] work performed by the Executive Committee, Liaison Counsel, and Federal/State Liaison Counsel and those whose work it has specifically

---

[1] Unless otherwise noted, all docket references are to 14-MD-2543.

authorized." *Id.* at 2-3. The Court clarified that "Mr. Berman and Ms. Cabraser w[ould] focus on economic class claims and Mr. Hilliard w[ould] focus on individual Plaintiffs." *Id.* at 4.

MDL Order No. 13 further explained that "[t]he recovery of common benefit attorneys' fees and cost reimbursements will be limited to 'Participating Counsel'" — defined as "the Lead Counsel, Liaison Counsel, and State/Federal Liaison Counsel, the members of the Executive Committee (along with members and staff of their respective firms), any other counsel authorized by Lead Counsel who desire to be considered for common benefit compensation, or counsel who have been specifically approved by this Court as Participating Counsel prior to incurring any such cost or expense." *Id.* at 7. The Order provided that Participating Counsel would be "eligible to receive common benefit attorneys' fees and reimbursement of costs and expenses only if the time expended, costs incurred, and activity in question were (a) for the common benefit of Plaintiffs; (b) appropriately authorized by Lead Counsel; (c) timely submitted; (d) reasonable; and (e) approved by this Court." *Id.* It also explained that, "[u]nless specifically and explicitly authorized in writing, no time spent on developing or processing individual issues in any case for an individual client (claimant), and no time spent on any unauthorized work, will be considered or should be submitted." *Id.* at 8.

Counsel were warned "that no application for approval to incur common benefit fees, costs, or expenses will be considered by this Court unless counsel have first obtained approval from Lead Counsel." *Id.* at 7. The Order required "Participating Counsel who seek to recover Court-awarded common benefit attorneys' fees, costs, and expenses in connection with this litigation" to "keep a daily, contemporaneous record of their time and expenses, noting with specificity the amount of time, billing rate, and particular activity, along with a brief note indicating the source of authorization for the activity in question." *Id.* at 7-8. Participating Counsel were required to make "[t]ime submissions . . . to Lead Counsel on a monthly basis, by deadlines to be set by Lead Counsel, in accordance with the guidelines set forth" in MDL Order No. 13. *Id.* at 11. "The failure to secure authorization from Lead Counsel to incur Common Benefit time and expenses, or to maintain and timely provide such records

3

or to provide a sufficient description of the activity, will be grounds for denying the recovery of attorneys' fees or expenses in whole or in part." *Id.* at 12.

## B. The Class Action Settlement and Attorney's Fees and Costs Award

On April 27 and May 4, 2020, the Court preliminarily approved a class action settlement resolving Plaintiffs' economic loss claims. *See* ECF Nos. 7877, 7892. On December 18, 2020, following a fairness hearing conducted on the record remotely by telephone, the Court granted final approval of the settlement and confirmed the appointment of Berman and Cabraser as "Class Counsel" for settlement purposes under Rule 23(g)(3) of the Federal Rules of Civil Procedure. *See In re Gen. Motors LLC Ignition Switch Litig.*, Nos. 14-MD-2543 (JMF) et al., 2020 WL 7480323, at *4 (S.D.N.Y. Dec. 18, 2020) (ECF No. 8306). By separate Order entered the same day, the Court granted Class Counsel's motion, pursuant to Rule 23(h), for attorney's fees and expenses, and awarded "Plaintiffs' counsel (i) $24,585,272.06 in attorneys' fees and (ii) $9,914,727.94 to reimburse expenses incurred in connection with this litigation (and that have not been previously reimbursed from the Common Benefit Fund)." *In re Gen. Motors LLC Ignition Switch Litig.* ("*Rule 23(h) Order*"), Nos. 14-MD-2543 (JMF) et al., 2020 WL 7481292, at *4 (S.D.N.Y. Dec. 18, 2020) (ECF No. 8307). Applying the factors set forth in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000), the Court determined that the aggregate $24.6 million fee award was reasonable. *See Rule 23(h) Order*, 2020 WL 7481292, at *2-3. In doing so, the Court observed that "[t]he requested $24,585,272.06 for Economic Loss Class fees results in a multiplier of negative .31 of the total lodestar reported by Economic Loss Plaintiffs' Counsel ($78,148,898.77)" — thus, "Economic Loss Plaintiffs' Counsel will fall far short of being reimbursed their collective lodestar." *Id.* at *3.

The Court directed Class Counsel "to allocate the fees and costs among eligible Plaintiffs' counsel in a manner that Class Counsel believe, in good faith, reflects the contributions of counsel to the prosecution and settlement of this Action." *Id.* at *4. "The allocation among Plaintiffs' counsel shall require approval by th[e] Court, after which Class Counsel shall distribute the fee and expense

award as directed by the Court." *Id.* Pursuant to the briefing schedule adopted by the Court, ECF No. 8330, Class Counsel first circulated an initial proposed allocation to Participating Counsel on February 5, 2021, soliciting feedback and making revisions as appropriate, ECF No. 8417 ("Cabraser Decl."), ¶¶ 3-4. Class Counsel then submitted its proposed allocations of attorney's fees and costs and expenses among Participating Counsel to the Court on March 5, 2021. ECF No. 8415. The proposal submitted to the Court "provides for greater expense recovery than originally communicated to all counsel, while fee recovery is identical for most counsel (and more favorable for some based on minor adjustments). Only Co-Lead Counsel's overall recovery has been reduced; the overall recovery of all other counsel has increased." Cabraser Decl. ¶ 4.

**C. The Proposed Allocation**

Class Counsel proposes a tiered structure for allocating the $24.6 million in attorney's fees, pursuant to which each firm would be reimbursed a specified percentage of its "adjusted reported lodestar" depending on the tier. ECF No. 8416 ("Class Counsel Mem."), at 3-4. The two Co-Lead Counsel firms would make up "Tier 1"; "Tier 2" would consist of the members of the Executive Committee, Liaison Counsel, and Bankruptcy Counsel; and all remaining Participating Counsel would constitute "Tier 3." *Id.* at 3. Tier 1, Tier 2, and Tier 3 firms would collectively be awarded $15,410,185.92, $8,920,490.47, and $254,595.67, respectively, and, subject to one exception, each Tier 1 firm would receive approximately 35% of its relevant lodestar; each Tier 2 firm would receive approximately 19.3%; and each Tier 3 firm would receive the greater of $1,000 or approximately 7.85% of its relevant lodestar. *Id.* at 3-4.[2] The one exception is Brown Rudnick, which would receive 23.362% of relevant lodestar, despite being a Tier 2 firm, given its "contribution, (as reflected in its

---

[2] This allocation "*excludes* lodestar and expenses (including the two Co-Leads') specifically reported in association with the personal injury/wrongful death ('PI/WD') trials." Cabraser Decl. ¶ 10. Class Counsel "anticipate[s] making an application on behalf of all Economic Loss Counsel for compensation in some amount from the Common Benefit Fund for lodestar and expenses specifically reported in association with the PI/WD trials." *Id.*

lodestar, which is substantially higher than other firms in its tier) as lead bankruptcy counsel, and given the intensive proceedings in the Bankruptcy Court." *Id.* The proposed allocation of the $9.9 million in costs and expenses is more straightforward: Participating Counsel would "receive most of their unreimbursed costs back, and each firm will be reimbursed the same *pro rata* share of expenses." Cabraser Decl. ¶ 9. In total, Class Counsel propose to allocate the fee award among fifty-three firms and the costs and expenses award among forty-three firms. *See* ECF No. 8418-1 ("Proposed Fee Allocation"); ECF No. 8240-1 ("Proposed Expense Allocation").[3]

Class Counsel explain that they "recogniz[ed] that the award [of attorney's fees i]s substantially less than the total time reported under Orders 8 and 13 for work relating to the economic loss class claims." Class Counsel Reply 1. "More specifically, the fee award for all Economic Loss Counsel is approximately 26 percent of the relevant, reported total lodestar of almost $93 million." Cabraser Decl. ¶ 5. Thus, in crafting the proposed allocations, Class Counsel determined that "fairness to all meant adherence to the two primary principles embodied in Order 13: the work must have been done for the common benefit of the class, and the work must have been appropriately reported to, and authorized by, Lead Counsel." Class Counsel Reply 1. They contend that the proposed allocations are "equitable given the relative quantity and quality of effort and investments in responsibilities, time, and costs (and hence ongoing risk) made by the firms in each tier, including the overall contribution to the ultimate outcome and ongoing responsibilities to finalize, administer, and enforce the Settlement on the part of the Co-Lead firms." Class Counsel Mem. 4. As examples of "touchstones" reflecting this equitable distribution, Class Counsel note that "the two Co-Lead firms' accumulated lodestar of close to $44 million is nearly equal to the collective lodestar of all Tier 2 firms combined" and "the two Co-Lead firms continued to pay cost assessments after July 2017 when Executive Committee firms were

---

[3] Class Counsel's reply states that "43 law firms" are "impacted by the proposal." ECF No. 8441 ("Class Counsel Reply"), at 1. Although that is the number of law firms listed in the Proposed Expense Allocation, ECF No. 8420-1, the Proposed Fee Allocation lists 53 firms, ECF No. 8418-1.

no longer assessed, and the two Co-Lead firms still have over $8.5 million in unreimbursed expenses outstanding." Class Counsel Mem. 4. Similarly, "[t]he collective, relevant lodestar of all non-designated firms in Tier 3 was $3,133,442, or just 7.1% of Lead Counsel's lodestar. . . . Lead Counsel have unreimbursed, relevant expenses of $8,605,959, whereas the Tier 3 firms have unreimbursed, relevant expenses of $380,672, or 4.4% of Lead Counsel's unreimbursed expenses." ECF No. 8442 ("Second Cabraser Decl."), ¶ 9.

**D. The Objections**

Notably, only three firms filed objections to Class Counsel's proposed allocation by the March 12, 2021 deadline: (1) Golenbock Eiseman Assor Bell & Peskoe LLP ("Golenbock"), *see* ECF No. 8432 ("Golenbock Opp'n"); (2) Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf"), *see* ECF No. 8435 ("Wolf Opp'n"); and the "Peller Group" (defined as "counsel who worked in conjunction with Gary Peller, who coordinated their work and reviewed and submitted hours on their behalf"). ECF No. 8436 ("Peller Opp'n"), at 1 n.1. All three objectors (together, the "Objectors") are categorized as Tier 3 firms under Class Counsel's proposal. Under that proposal, Golenbock, Wolf, and the Peller Group would be awarded $10,709.17, $50,087.68, and $26,614.14 in fees, respectively, *see* Proposed Fee Allocation, and $1,146.31, $18,474.39, and $9,327.92 in costs and expenses, respectively, *see* Proposed Expense Allocation.

Notably, the Objectors do not take issue with Class Counsel's proposal to use a tiered approach to allocation of the awards. Instead, they raise three complaints with respect to their fate under the proposed plan. *First*, the Peller Group contends that "the proposed discount rate of 7.85% applied to the work of non-Lead Counsel [in Tier 3] is so steep in comparison to the 35% discount rate of Lead Counsel that it fails to fairly compensate all non-Lead counsel in the proposed tier three and threatens to produce negative incentive consequences for the MDL consolidation process more generally." Peller Opp'n 6. It proposes as an alternative using a 12.5% discount rate for Tier 3 firms as "a more reasonable discount rate that reflects both that the unsupervised pre-consolidation tasks performed by

7

non-Lead Counsel should be compensated at a lower rate, but not one so low in relation to leadership's fees as to have deleterious policy consequences for the willingness of counsel to undertake representation of victims of mass torts and consumer fraud, or one so low as to create a disincentive for counsel to cooperate with MDL proceedings at all." *Id.* at 8. Under the Peller Group's proposal, the fee allocation to Tier 1 firms would be reduced correspondingly. Peller Opp'n 10-11.

*Second*, all three Objectors argue that they were assigned to the wrong tier, in whole or in part. Golenbock and Wolf — which served as co-counsel (with one another) in proceedings in the Bankruptcy Court — essentially argue that they were on equal footing with Bankruptcy Counsel during the early stages of the MDL. Golenbock contends that "it should be treated similarly to Brown Rudnick" — i.e., receive 23.362%, rather than 7.85%, of lodestar — "or at worst, [be categorized] in Tier 2" and receive 19.3% of lodestar. Golenbock Opp'n ¶ 22. Wolf similarly argues that it should not be treated any differently from Bankruptcy Counsel, which are assigned to Tier 2. *See* Wolf Opp'n 6-7. The Peller Group argues that while some of its work (through October 2014) is appropriately assigned to Tier 3, it (and its clients) assumed "special risks" and, accordingly, should be compensated at the Tier 2 level for a significant amount of common benefit work it allegedly performed between July 2014 and February 2018. Peller Opp'n 10.

*Third*, all three Objectors claim that the proposed allocation fails to credit them for many hours of compensable work without adequate explanation. In particular:

- Golenbock argues that "it appears that [its proposed] allocation is only based upon fees and expenses incurred between October 20, 2014 and February 29, 2016" and that fees and expenses it incurred for common benefit work between April 7 and September 30, 2014, were improperly excluded. Golenbock Opp'n ¶¶ 23-26. Thus, Golenbock contends that "the allocation to it should be based upon fees in the amount of $749,279.06 and expenses in the amount of $19,314.31," and that, using these figures, Class Counsel's proposed allocation awards Golenbock only 1.43% of its lodestar, not the 7.85% to which it would be entitled as a Tier 3 firm. *Id.* ¶¶ 14, 27.

- Wolf similarly argues "that the time spent by Wolf performing Common Benefit Work prior to August, 2014 . . . was excluded in its entirety by Economic Loss Class Counsel for no disclosed reason." Wolf Opp'n 3-4. Wolf contends that its lodestar should actually be $1,341,343.50, meaning that Class Counsel's proposed allocation amounts to less than 4% of lodestar. *Id.* at 8.

8

- The Peller Group notes that the "proposed allocation would compensate the Peller Group's work from June 2014 to February 2015 as submitted," but "reflects a categorical refusal to recommend compensation for any work the Peller Group did after February 2015." Peller Opp'n 6 & n.14. The Peller Group contends that it continued to perform compensable work through February 2018 and that its "monthly submissions reflect a total lodestar of $814,760.00 for work done in furtherance of the claims being settled in this litigation" for which it should be compensated. *Id.* at 1.

Class Counsel filed a reply on March 19, 2021. Class Counsel Reply. After obtaining leave to do so, ECF No. 8452, the Peller Group filed a sur-reply, ECF No. 8457, and Class Counsel filed a sur-sur-reply, ECF No. 8461 ("Class Counsel Sur-Sur-Reply"), shortly thereafter.

## DISCUSSION

Interestingly, "there is very little case law concerning the allocation of attorneys' fees among co-counsel." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1224 (S.D. Fla. 2006) (quoting *Hayes v. Haushalter* (*In re FPI/Agretech Sec. Litig.*), 105 F.3d 469, 473 (9th Cir. 1997)). That said, it is generally accepted that, "[o]nce a class action settlement and aggregate award of attorneys' fees have been approved, district courts have discretion to appoint a committee of plaintiffs' counsel to recommend how to divide the aggregate fee to award 'reasonable' attorneys' fees." *In re Initial Pub. Offering Sec. Litig.*, No. 21-MC-92 (SAS), 2011 WL 2732563, at *7 (S.D.N.Y. July 8, 2011) (citing *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 87 (2d Cir. 2010)). "District courts routinely give lead counsel the initial responsibility of devising a fee allocation proposal 'as they deem appropriate, based on their assessments of class counsel's relative contributions.'" *Id.* (quoting *In re Vitamins Antitrust Litig.*, 398 F. Supp. 2d 209, 224 (D.D.C. 2005)). Lead counsel's proposals "are often afforded substantial deference." *Id.*; *see Brown v. Am. Home Prods. Corp.* (*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*), No. CIV. A. 99-20593, 2003 WL 21641958, at *6 (E.D. Pa. May 15, 2003). That is because "lead counsel is typically well-positioned to weigh the relative merit of other counsel's contributions." *Victor*, 623 F.3d at 90; *see also In re Vitamins Antitrust Litig.*, 398 F. Supp. 2d at 231 ("Because Co-Lead Counsel had first-hand knowledge regarding each firm's relative contribution to the case, it is

9

Co-Lead Counsel, not the court, that is 'better able to describe the weight and merit of each [counsel's] contribution.'" (quoting *In re Linerboard Antitrust Litig.*, Nos. MDL 1261 et al., 2004 WL 1221350, at *18 (E.D. Pa. June 2, 2004), *amended*, Nos. MDL 1261 et al., 2004 WL 1240775 (E.D. Pa. June 4, 2004))). At the same time, the Court must still "engage[] in a reasonable analysis" of the fee request, mindful of the fact that "lead counsel has an incentive to undercompensate non-lead counsel, as such compensation typically decreases lead counsel's own recovery." *Victor*, 623 F.3d at 89-90. In this Circuit, such analysis is usually guided by the *Goldberger* factors, except that in this context, the "determination of a reasonable and fair allocation of the aggregate award requires a focus on the *relative* contributions of each firm." *In re Initial Pub. Offering Sec. Litig.*, 2011 WL 2732563, at *7-8 (emphasis added).

Applying these standards, the Court finds that the Objectors' first two objections — regarding (1) the discount rates for each tier and (2) the Objectors' tier assignments — are without merit. With respect to the former, the Court finds that there is no basis to second guess Class Counsel's proposed discount rates. Indeed, the treatment of Tier 3 firms — to which the Peller Group primarily objects — is arguably more generous than it needed to be. The 7.85% discount rate is greater than the Tier 3 firms' share of lodestar relative to Lead Counsel (7.1%). Second Cabraser Decl. ¶ 9. And, under Class Counsel's proposal, all Tier 3 firms would receive a minimum of $1,000. If anything, it is the Peller Group's proposal — that Tier 3 firms receive 12.5% of lodestar — that is arbitrary; he himself provides no argument for that number beyond the conclusory statement that it "is a more reasonable discount rate." Peller Opp'n 10. Given Class Counsel's superior knowledge, and the corresponding deference owed to its allocation proposal, that is not enough. To the extent that that result leaves the Peller Group (or any other firm) disappointed, that disappointment is more a function of the overall fee award than it is a function of Class Counsel's allocation. Accordingly, the first objection is overruled.

Nor is there any basis to second guess Class Counsel's assignment of the Objectors to Tier 3 rather than Tier 2. To be sure, each firm did its fair share of work in the early days of the MDL, either

as part of the related bankruptcy proceedings or in this Court. And there is little doubt that that work provided some benefits to the class. For those reasons, the Court would probably have overruled Class Counsel had they sought to exclude the Objectors from the fee allocation altogether, as Class Counsel argues they could have done. *See* Class Counsel Reply 7, 9. As Class Counsel note, however, the primary intended beneficiaries of the Objectors' work were not the class members generally, but their individual clients. *See id.* at 6-7, 9-10. In fact, some of the Objectors' work was arguably counterproductive to the class as a whole. *See id.* at 7, 10-13; Class Counsel Sur-Sur-Reply 1-3. And in any event, the amount of work done by the Objectors that benefited the class pales in comparison to the work done by the firms that Class Counsel has assigned to Tier 2 and to Brown Rudnick, as designated lead bankruptcy counsel. *See* Proposed Fee Allocation; *see also* Golenbock Opp'n 7 n.2 (conceding "that it is likely that the time and expenses it spent are a mere fraction of the time and expenses spent by Bankruptcy Counsel to Lead Counsel"). Class counsel reasonably took account of these disparities in the time, effort, and risks incurred by counsel and of the leadership roles in the MDL. *See In re Initial Pub. Offering Sec. Litig.*, 2011 WL 2732563, at *8-10; *In re Vitamins Antitrust Litig.*, 398 F. Supp. 2d at 236 & n.15; *cf. Allapattah Servs.*, 454 F. Supp. 2d at 1225 ("[T]he distribution of fees in a fee allocation agreement must be in proportion to the services rendered . . . ." (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir. 1987)). Accordingly, the Court concludes that Class Counsel reasonably assigned the Objectors to Tier 3.

On the present record, however, the Court cannot resolve the Objectors' third set of objections — that Class Counsel failed to credit them for all the compensable work they performed. Class Counsel explains that, "[w]ithin each tier, fees are allocated *pro rata* based on adjusted reported lodestar." Class Counsel Mem. 3. But Class Counsel does not explain how it arrived at the "adjusted reported lodestar" figures and whether or to what extent these figures differ from the lodestar figures that Participating Counsel submitted to Class Counsel. Nor does Class Counsel explain the basis for their decision to credit the Objectors for work performed only within particular date ranges — namely,

11

"all time submitted by the [sic] Golenbock in the ordinary course since June 12, 2014"; "all time submitted by Wolf in the ordinary course since October 2014"; and "all of Mr. Peller's time for 2014 and early 2015 (through February 24, 2015) and all expenses." Class Counsel Reply 7, 16. It does not suffice for Class Counsel to say, as they do, that none of the Objectors' work is technically compensable under MDL Order No. 13 because it was not authorized, *see id.* at 6, 14-15, and that their proposal is "made in good faith as a means of avoiding further delay in distributing fees and costs for work done and expenses incurred by all participating counsel long ago," *id.* at 7, 9, 16. Having proposed an allocation that credits the Objectors for some, but not all, of their work, it is incumbent on Class Counsel to explain and justify the criteria they used to make these determinations.

Accordingly, **no later than June 2, 2021**, Class Counsel shall file a document, not to exceed fifteen pages, (1) listing the total reported lodestar submitted by each Participating Counsel; (2) listing the "adjusted reported lodestar" Class Counsel used to calculate the fee awards for each Participating Counsel in the Proposed Fee Allocation; (3) listing the total costs and expenses submitted by each Participating Counsel; (4) listing the total costs and expenses considered by Class Counsel in calculating each Participating Counsel's "*pro rata* share of expenses"; and (5) to the extent those figures differ, providing an explanation of the criteria used to determine which hours and expenses were deemed compensable and which hours and expenses were not, with particular reference to the Objectors. To be clear, Class Counsel need not submit detailed time and billing records. But their submission should provide enough for the Court to exercise its "ultimate power to review applications and allocations and to adjust them where appropriate" and engage in a "reasonable analysis" of the proposed allocations in light the objections that have been raised. Class Counsel Reply 19 (quoting *Victor*, 623 F.3d at 90). The Objectors are granted leave to file responses, not to exceed seven pages each, **no later than June 9, 2021**.

## CONCLUSION

For the reasons stated above, the first two sets of objections from the Objectors are overruled, but the Court reserves judgment on their third set of objections and, by extension, on Class Counsel's motion for approval of their proposed allocations of fees and costs pending the additional submissions described above.

SO ORDERED.

Dated: May 19, 2021
       New York, New York

                                            JESSE M. FURMAN
                                        United States District Judge